UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                       Plaintiff,<br><br>  v.<br><br>SEAN COMBS, DADDY'S HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a COMBS ENTERPRISES, LLC, BAD BOY ENTERTAINMENT HOLDINGS, INC., BAD BOY PRODUCTIONS HOLDINGS, INC., BAD BOY BOOKS HOLDINGS, INC., BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT LLC, BAD BOY PRODUCTIONS LLC, ORGANIZATIONAL DOES 1-10, INDIVIDUAL DOES 1-10, AND SHAWN CARTER,<br><br>                       Defendants. | Civil Action No.   1:24-cv-07975-AT |

**DEFENDANT SHAWN CARTER'S MEMORANDUM OF LAW
IN SUPPORT OF HIS EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE
AND AN ORDER FOR THE PRESERVATION OF EVIDENCE AND TO STRIKE
THE COMPLAINT AND DISMISS MR. CARTER FROM THIS ACTION
PURSUANT TO FED. R. CIV. P. 12(f)**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

    A.    Buzbee's Misconduct In This Lawsuit ..................................................................3

    B.    Buzbee's Misconduct In Other Lawsuits ..............................................................6

LEGAL STANDARD...............................................................................................................8

ARGUMENT ..........................................................................................................................10

I.    AN IMMEDIATE PRESERVATION ORDER IS WARRANTED BECAUSE THERE IS A SUBSTANTIAL RISK THAT KEY EVIDENCE WILL NOT BE PRESERVED.................................................................................................................10

    A.    Mr. Carter Faces A Significant Risk That Buzbee Will Destroy Relevant Evidence...............................................................................................................10

    B.    Absent A Preservation Order, Mr. Carter's Right To Conduct Full Discovery Will Be Irreparably Harmed ..................................................................13

    C.    The Burden On Buzbee To Preserve Evidence Is Negligible...............................13

II.    THE COURT SHOULD STRIKE THE COMPLAINT AS AGAINST MR. CARTER PURSUANT TO RULE 12(F)...........................................................................14

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arzuaga v. Quiros*,
   2011 WL 13079779 (D. Conn. Mar. 22, 2011) ........................................................................9

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991).............................................................................................................10

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*,
   220 F.R.D. 429 (W.D. Pa. 2004) ........................................................................................7, 8

*Eng v. Casey*,
   2014 WL 5824640 (S.D.N.Y. Nov. 7, 2014).....................................................................9, 14

*Haywood v. Univ. of Pittsburgh*,
   2012 WL 6604646 (W.D. Pa. Dec. 18, 2012).................................................................6, 10

*Houston v. Coveny*,
   2017 WL 972124 (W.D.N.Y. Mar. 13, 2017)..............................................................7, 10, 11

*Hughes v. City of New York*,
   2021 WL 4295209 (S.D.N.Y. Sept. 21, 2021).......................................................................7

*John Doe v. The Buzbee Law Firm*,
   Case No. 24SMCV05637 (Cal. Sup. Ct, 2024) ...................................................................11

*In re Lowe's Home Ctrs., LLC*,
   531 S.W.3d 861 (Tex. App. 2017).........................................................................................6

*Micolo v. Fuller*,
   2016 WL 158591 (W.D.N.Y. Jan. 13, 2016).........................................................................9

*Pueblo of Laguna v. United States*,
   60 Fed. Cl. 133 (2004) ..........................................................................................................9

*Toussie v. Allstate Ins. Co.*,
   2017 WL 4773374 (E.D.N.Y. Oct. 20, 2017)...............................................................7, 8, 12

*Toussie v. Allstate Ins. Co.*,
   2018 WL 11451597 (E.D.N.Y. Aug. 15, 2018)...................................................................12

*Treppel v. Biovail Corp.*,
   233 F.R.D. 363 (S.D.N.Y. 2006) ...............................................................................7, 8, 9, 12

*W. E. Booton, Ltd. v. Scott & Williams, Inc.*,
   45 F.R.D. 108 (S.D.N.Y. 1968) ..................................................................................9

*Wermann v. Excel Dentistry, P.C.*,
   2014 WL 846723 (S.D.N.Y. Feb.25, 2014)................................................................9

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................7

**Rules**

Fed. R. Civ. P. 12(f)................................................................................................ 9, 14-15

Fed. R. Civ. P. 37.................................................................................................................11

New York Rules of Professional Conduct Rule 3.4(e) .......................................................5

**Other Authorities**

https://www.courthousenews.com/trial-of-rebecca-grossman-wealthy-woman-
   accused-of-killing-two-boys-with-her-car-gets-underway/ .......................................11

Defendant Shawn Carter respectfully submits this memorandum of law in support of his emergency motion for an order to show cause and an order for the preservation of evidence and to strike Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(f)(1).

## PRELIMINARY STATEMENT

Admissions by the Plaintiff and damning admissions by her own father in a December 13 revelatory NBC interview cast yet further doubt on a claim that was obviously false from the start. The timeline, location, and occurrence of events alleged in Plaintiff's complaint are rendered impossible by these admissions. She claims her father picked her up after the assault—he ever taking that five-hour trip. She claims she spoke with musician Benji Madden that night—he was not even in New York. She claims the assault took place at an afterparty hosted in a private residence—photos show Mr. Carter at an afterparty at a nightclub. When pressed by NBC, Plaintiff was forced to admit "I have made some mistakes," "I may have made a mistake in identifying," "Not all the faces there are as clear," and even that she was "guessing" about key details, including the time it took to reach the venue. What is more, she admits she does not have *a single* corroborating witness over the last 24 years.

Plaintiff's unsupported allegations crumble under scrutiny, as the evidence—and lack thereof—reveals glaring inconsistencies and outright impossibilities in her story. Her account describes a Jumbotron at the scene of the Video Music Awards, but according to NYPD sources and MTV producers, no such Jumbotron existed. MTV applied for a permit to install one but was denied. She references a house that supposedly fits the description of the location of the alleged assault, but no such house exists. And Plaintiff's allegations become even more dubious when considering the nightclub evidence. Photos from the night in question show Mr. Combs and Ms.

Jennifer Lopez at both Lotus and Twirl, clubs in New York.[1]  NBC reported that photos separately show that Mr. Carter was at Lotus following the VMAs.  Taken together, the factual inconsistencies, timeline impossibilities, and the lack of corroborating evidence make Plaintiff's allegations in the FAC wholly unreliable.

Not only do these extraordinary inconsistencies undermine Plaintiff's case, they highlight severe misconduct by her counsel, Anthony Buzbee and The Buzbee Law Firm.  Unable to escape the foundational cracks in Plaintiff's story laid bare by the NBC interview, Buzbee was forced to backpedal, repudiating the very allegations he signed his name to.  In an attempt to deflect from his own failures, he foists blame on another law firm, claiming the case was "vetted" before it was sent to his firm.  And so concerned is Buzbee that he is now having his client sit for a polygraph.  The takeaway is obvious:  Buzbee failed to undertake a reasonable inquiry into the facts before filing the complaint—and then amending it to assert a claim against Mr. Carter—despite an affirmative duty to do so under Rule 11.  But that was just one step in his cavalcade of misconduct.  Though he has signed his named to pleadings and other documents filed in this case, Buzbee has declined to seek admission to this Court, apparently seeking to circumvent this Court's authority to enforce Rule 11.

Buzbee's rule-breaking also extends beyond this action.  He has a long history of abusing the legal process and shirking ethical responsibilities.  In a case in California Superior Court, for instance, Buzbee was admonished by the Judge for violating pretrial rulings.  And a federal court in Texas rejected a fee arrangement orchestrated by Buzbee and his firm because it violated public policy.

---

[1]  Though photos show Ms. Lopez in a different outfit at the nightclubs than what she wore to the VMAs, it is clear those photos were taken on the same evening because her jewelry and accessories appear unchanged.

2

The fundamental inconsistencies in Plaintiff's case revealed in the NBC interview, coupled with Buzbee's chronic inability to follow the rules in this case and others, creates a substantial risk that Buzbee will destroy evidence damaging to Plaintiff's case, including evidence of his own misconduct, impairing the integrity of the judicial process. An order immediately mandating the preservation of all evidence relevant to this case is necessary to ensure that Mr. Carter has a full and fair opportunity to present his defense against Plaintiff's fictitious claims. That Buzbee is not admitted to this Court—and thus is apparently attempting to avoid its disciplinary authority—only underscores the pressing need for such an order. For the same reasons, all of Plaintiff's allegations about Mr. Carter are scandalous, warranting striking them from the FAC under Fed. R. Civ. P. 12(f).

## FACTUAL BACKGROUND

### A. Buzbee's Misconduct In This Lawsuit

Buzbee filed this lawsuit on October 20, 2024 against Mr. Combs and his associated businesses on behalf of an anonymous Jane Doe plaintiff. The initial complaint alleged that Mr. Combs, along with another unnamed male celebrity, raped Plaintiff at an afterparty held at Mr. Comb's home following the Video Music Awards (the "VMAs"). (Dkt. No. 1 ("Compl.") ¶¶ 1, 14, 48–57.)

Rather than name Mr. Carter as a defendant when the original complaint was filed, Buzbee resorted to a campaign of extortion, seeking to extract an exorbitant sum in private mediation and threatening to go public with false and outrageous allegations that Mr. Carter raped multiple minors unless Mr. Carter acquiesced. Mr. Carter refused. It was only after this attempt to squeeze Mr. Carter that Buzbee filed the FAC, adding Mr. Carter as a defendant and alleging that he was the previously unnamed male celebrity. (Dkt. No. 29 ("FAC") ¶¶ 17, 55–58.)

3

The FAC alleges that on or around September 7, 2000, Plaintiff attended an afterparty in New York City, purportedly hosted by Mr. Combs at a "large white residence with a gated U-shaped driveway" and "a large living room or foyer[.]" (FAC ¶¶ 44, 46.) At the afterparty, the FAC alleges, Plaintiff "recognized many celebrities" (*Id.* ¶ 46), which included people like Fred Durst, Benji Madden, and others. The FAC then alleges that she was drugged and then sexually assaulted by Mr. Combs. (*Id.* ¶¶ 1, 49–50, 52–57.) The FAC also alleges that Mr. Carter was the previously unnamed male Celebrity B who also purportedly sexually assaulted Plaintiff. (*Id.*) After the incident, Plaintiff allegedly left the party and went to a gas station, where she "called her father, admitted that she had lied about her whereabouts, and asked him to pick her up." (*Id.* ¶ 60.) Plaintiff's father then purportedly "arrived to pick her up shortly before dawn." (*Id.*)

Just *five* days after Buzbee filed the FAC containing these scandalous allegations, NBC News published a story containing excerpts of interviews that its reporters held with Plaintiff and her father and presenting other information that severely undermines the merits of this lawsuit. For example, NBC reported that photos of Mr. Carter from the night of the purported assault show him at a *nightclub* in New York called Lotus, which has no resemblance to the white residence with a U-shaped driveway and a large living room described in Plaintiff's FAC. (Dkt. No. 46 ("NBC Article") at 7.)[2] Photos from that night also show that Mr. Combs and Ms. Lopez attended parties at two night clubs on the night in question—Lotus and Twirl.[3] Further, despite being sure she talked to Benji Madden at the afterparty "about his tattoo, … [of] 'The Last Supper,'" because she has a "religious background so it was something to talk about," Mr. Madden was never there.

---

[2] Citations to Dkt. No. 46 refer to the ECF pagination located at the top of the page.
[3] Though photos show Ms. Lopez in a different outfit at the nightclubs than what she wore to the VMAs, it is clear those photos were taken on the same evening because her jewelry and accessories appear unchanged.

4

*Id.* He did not attend the VMAs, did not attend the purported afterparty, and was not even *in New York* at the time. Instead, he was halfway across the country in the Midwest on tour with his band Good Charlotte. (*Id.*) Finally, though the FAC alleges that Plaintiff called her father to pick her up from a gas station following the assault, he denied that happened. This denial was damning. In fact, he told NBC he was unaware of his daughter's assault allegation until the week he was interviewed. (*Id.*) NBC reported that he has no recollection whatsoever of picking up Plaintiff on the night of the VMAs. (*Id.*) And, Plaintiff and her father were living in Rochester at the time, which would have required her father to "drive[] more than five hours from their home to pick her up" on the night in question—an event that no father would forget if it actually happened. *Id.* Her father admitted as much, telling NBC: "I feel like I would remember that, and I don't . . . that's something that would definitely stick in my mind." *Id.* Her father recalled one instance when he picked "[Plaintiff] up in the middle of the night. But, he said, it 'was a local drive,'" *i.e.*, in Rochester. *Id.*

Moreover, Buzbee effectively admitted to NBC that his firm failed to conduct *any* investigation into the merits of Plaintiff's claims prior to filing extraordinary allegations of child-rape against Mr. Carter. Buzbee seeks to shirk his Rule 11 obligations and foist blame onto another law firm for the glaring inconsistencies exposed by the NBC report. Rather than conducting his own due diligence to vet his client's claims, Buzbee merely relied on the purported vetting of another firm, telling NBC: "Jane Doe's case was referred to our firm by another, who vetted it prior to sending it to us." *Id.* But no one from the other firm signed the pleadings in this case. Buzbee did. His failure to investigate the claims violated Rule 11.

Further, as explained in the letter that Mr. Carter filed with this Court on December 13, 2024 (Dkt. No. 46), in the more than eight weeks since he signed the initial complaint in this case,

5

Buzbee has failed to seek admission to this Court *pro hac vice* in an evident attempt to avoid the power of this Court to enforce Rule 11 and other rules against him.

**B.      Buzbee's Misconduct In Other Lawsuits**

Buzbee's gross violation of Rule 11 in this case and his failure to comply with this Court's admission requirements are just the most recent examples in a long line of litigation misconduct. For instance, Buzbee and his firm were recently accused of violating the Rules of Professional Conduct by three former clients for his deceitful conduct. (*See* **Exhibit 1**[4] (Dec. 13, 2024 Misappropriation Complaint); **Exhibit 2** (Dec. 9, 2024 Misappropriation Complaint); **Exhibit 2** (Nov. 19, 2024 Malpractice Summons).) What is more, according to a former client of Buzbee, the Buzbee Law Firm dropped her as a client after she resisted the firm's efforts to pressure her to adopt a false narrative of her experiences as a victim of trafficking by celebrities, unrelated to this case. (*See* Dkt. No. 42-1 ¶ 3(b)-(g).) Specifically, the Buzbee Law Firm pressed her to confirm that she was drugged, held down, pushed, and physically assaulted—all false details. (*Id.*) Moreover, she was repeatedly asked for a connection to Mr. Combs, though she made clear her case was unrelated to him. (*Id.*) And already in this case, he violated Rule 3.4(e) of the New York Rules of Professional Conduct prohibiting attorneys from "threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter" by making such threats to Mr. Carter to extract a settlement prior to bringing frivolous claims against him in the FAC.

Buzbee also has a track record of employing suspect tactics to gain an unfair advantage in the course of litigation. Because Buzbee frequently serves clients on a contingency fee arrangement, he has a personal stake in the outcome of his cases and has demonstrated his

---

[4] All Exhibits are appended to the Declaration of Alex Spiro dated December 16, 2024, filed herewith.

6

creativity in stepping over the line to promote his own interests. In one notable case, a federal court invalidated a referral agreement between Buzbee and a known fact witness in the case as "invalid as a matter of public policy," which entitled the witness to 15% of the gross attorneys' fees awarded if Buzbee's client was victorious. *See Haywood v. Univ. of Pittsburgh*, 2012 WL 6604646, at *1 (W.D. Pa. Dec. 18, 2012). In another unscrupulous tactic, in order to get a case heard in a favorable venue, the Buzbee Firm submitted "venue pleadings and [a client] affidavit" characterized as "at best, incorrect, and at worst, fraudulent." *See In re Lowe's Home Ctrs., LLC*, 531 S.W.3d 861, 864 (Tex. App. 2017). After the defendant's counsel notified Buzbee's firm "that his clients misrepresented facts" that "affected the trial court's venue determination," Buzbee unilaterally nonsuited the case and refiled a substantially similar case in another favorable venue. *Id.* at 867.

Finally, Buzbee has demonstrated a lack of respect for, and willingness to violate, judicial orders. In one case, Buzbee baselessly accused former baseball player Scott Erickson of being to blame for a murder while representing criminal defendant Rebecca Grossman. He falsely claimed Erickson was the driver who hit and killed two young boys and was "hiding in the bushes" after the fatal act, despite no evidence to support this assertion. Prosecutors accused Buzbee and his team of unethical behavior, stating they were "making a mockery" of the justice system. The presiding judge rebuked Buzbee, declaring, "[w]e cannot have the defense violating pre-trial rulings and expose the jury to evidence that contradicts those rulings," and reprimanded him for his conduct, stating that if it continued, the court would "consider financially sanctioning [Buzbee], and reporting to the state bar.[5]

---

[5] https://www.courthousenews.com/trial-of-rebecca-grossman-wealthy-woman-accused-of-killing-two-boys-with-her-car-gets-underway/.

7

## **LEGAL STANDARD**

All participants of a lawsuit—including attorneys—have an unassailable duty to preserve evidence that "*might* be useful to an adversary." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary."); *Hughes v. City of New York*, 2021 WL 4295209, at *9 (S.D.N.Y. Sept. 21, 2021) (same).  Where there is a risk of destruction of such evidence, the court may issue a protective order directing preservation of the evidence. *See Toussie v. Allstate Ins. Co.*, 2017 WL 4773374, at *4 (E.D.N.Y. Oct. 20, 2017).

Courts often apply the three-factor test articulated in *Capricorn Power Co.* to determine whether such an order is appropriate. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 369–70 (S.D.N.Y. 2006); *Toussie v. Allstate Ins. Co.*, 2018 WL 2766140, at *10 (E.D.N.Y. June 8, 2018). This test evaluates:

> 1) the level of concern that the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Treppel*, 233 F.R.D. at 369–70; *Capricorn Power Co. v. Siemens Westinghouse Power Corp*., 220 F.R.D. 429, 434 (W.D. Pa. 2004).  No "single factor" of this test is determinative. *Treppel*, 233 F.R.D. at 370.

A critical element in issuing a preservation order is the existence of a risk, rather than certainty, of evidence destruction. *See Houston v. Coveny*, 2017 WL 972124, at *1 (W.D.N.Y. Mar. 13, 2017) ("[T]he Court may grant a preservation Order if a party can demonstrate that the evidence is in ***some danger*** of being destroyed absent court intervention.") (emphasis added); *see*

*also Toussie*, 2017 WL 4773374, at *4 (granting a preservation order where defendant raised concerns "regarding the *possibility* that evidence has been or will be spoliated") (emphasis added). Nonetheless, evidence that is "integral and essential to a party's case" may require a preservation order even in the absence of significant concern of loss or destruction. *See Capricorn*, 220 F.R.D. at 435.

Though "the issuance of a preservation order is by no means automatic," such orders are "routine" in cases involving electronic communications where the moving party demonstrates the relevance of the evidence at risk. *Treppel*, 233 F.R.D. at 369–71 (S.D.N.Y. 2006); *see also Toussie*, 2018 WL 2766140, at *3 ("orders requiring the preservation of relevant evidence issue with some regularity").

Rule 12(f) permits a court on its own or by motion made by a party to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(1)–(2); *W. E. Booton, Ltd. V. Scott & Williams, Inc.*, 45 F.R.D. 108, 110 n.1 (S.D.N.Y. 1968) ("Rule 12(f) . . . permits the court to strike matter from the pleadings on its own initiative."). Where the court strikes allegations from a pleading on its own, "[t]he Court has considerable discretion to strike [scandalous] material." *Eng v. Casey*, 2014 WL 5824640, at *1 (S.D.N.Y. Nov. 7, 2014). "An allegation is scandalous if it 'reflects unnecessarily on the defendant's moral character.'" *Id.* (quoting *Wermann v. Excell Dentistry, P.C.*, 2014 WL 846723, at *5 (S.D.N.Y. Feb.25, 2014)).

9

**ARGUMENT**

I. **AN IMMEDIATE PRESERVATION ORDER IS WARRANTED BECAUSE THERE IS A SUBSTANTIAL RISK THAT KEY EVIDENCE WILL NOT BE PRESERVED**

   A. **Mr. Carter Faces A Significant Risk That Buzbee Will Destroy Relevant Evidence**

Revelations from the recent NBC interview have Buzbee reeling and have established, at minimum, a very high likelihood that Buzbee violated Rule 11 by signing the FAC. That interview exposed that the claim against Mr. Carter is meritless. And Buzbee all but concedes that he failed to vet Plaintiff's allegations before filing this lawsuit or amending it to include Mr. Carter by seeking to place blame for his shortcomings on an unnamed law firm who allegedly referred him the case. (NBC Article at 4.) In other words, Buzbee has been caught red-handed violating Rule 11's ongoing duty on lawyers "to conduct a reasonable inquiry into the facts and the law before filing." *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).[6] Buzbee is now backpedaling and pointing the finger elsewhere to distract from his own self-evident violations of the rules. He even publicly endorsed the idea that his client should take a polygraph test—a stunning thing for an attorney to say outside of a privileged conversation. (NBC Article at 4.)

Under these circumstances, and in light of Buzbee's misconduct in this lawsuit and others, *see supra* at 5–9, it must be assumed that Buzbee will go to extraordinary lengths to conceal his ethical violations. There is accordingly a significant risk that Buzbee will seek to destroy documents or other evidence that would demonstrate that he knew or should have known that the allegations in the complaint were false.

---

[6] Mr. Carter filed a pre-motion letter raising Buzbee's Rule 11 violation on December 13 (Dkt. 46), and intends to file a motion to strike the FAC under Rule 11 in short order.

10

To prevail on a motion for a preservation order, the movant need not show that the opposing party "will" destroy evidence. The movant need only show "that the evidence is in *some danger* of being destroyed absent court intervention." *Houston*, 2017 WL 972124, at *1 (citing *Micolo v. Fuller*, 2016 WL 158591, at *1 (W.D.N.Y. Jan. 13, 2016)) (emphasis added); *see also Arzuaga v. Quiros*, 2011 WL 13079779, at *1 (D. Conn. Mar. 22, 2011) (the mere **possibility** that tapes containing possible video evidence "could be taped over, erased, or simply thrown into the trash pursuant to [a prison's] regular procedures" was "alone [ ] proof of a significant threat to the video tapes' continued existence."). This requirement is "often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." *Treppel*, 233 F.R.D. at 371 (quoting *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004)).

Here, several considerations establish far more than "some danger" that Buzbee will destroy relevant evidence.

*First*, the NBC News report makes it extremely likely that Buzbee failed to properly vet the claims he made in the complaints in this case—a clear violation of Rule 11. His willingness to blatantly violate that core ethical obligation of all attorneys raises the serious possibility that he will seek to destroy evidence documenting his actions.

*Second*, Buzbee's utter disregard for his obligations as an attorney—namely, his violation of the rules governing admission to the bar of this Court and his violation of Rule 11—raise a significant possibility that his law firm "has inadequate retention procedures in place." *Id.*; *see Houston*, 2017 WL 972124, at *1 (granting motion for preservation order due to risks posed by opposing party's "routine document and retention/destruction policy").

11

*Third*, as explained in Mr. Carter's December 13 letter to the Court (Dkt. No. 46), Buzbee is apparently attempting to circumvent this Court's authority to enforce Rule 11 by refusing to seek admission to this Court, despite the fact that he has signed the complaints and other filings.

*Fourth*, Buzbee's disregard for the rules in other cases underscores the need for a preservation order here. For instance, in a federal case in Texas, Buzbee orchestrated a fee arrangement with a known fact-witness that the court struck down as "invalid as a matter of public policy." *See Haywood*, 2012 WL 6604646, at *1. And in another case in California Superior Court in which Buzbee was defense counsel, the Judge admonished Buzbee for his misconduct, stating: "This shouldn't be happening. As we go forward, we can't have the defense violating pretrial rulings and expose the jury to evidence that contradicts those rulings."[7]

*Finally*, Buzbee and his firm have been sued for extortion in California Superior Court for allegations relating to his conduct in connection with this case. *See John Doe v. The Buzbee Law Firm*, Case No. 24SMCV05637 (Cal. Sup. Ct, 2024). Buzbee and his firm therefore face personal liability for their conduct related to this lawsuit, creating a financial incentive to destroy evidence that is unfavorable to their client.

Especially in light of the NBC News allegations, and Buzbee's history of blatant violations of the rules, including his failure to seek admission in this case any time in the last two months, Mr. Carter faces a substantial danger that relevant evidence will be destroyed absent a preservation order.

---

[7] https://www.courthousenews.com/trial-of-rebecca-grossman-wealthy-woman-accused-of-killing-two-boys-with-her-car-gets-underway/

### B. Absent A Preservation Order, Mr. Carter's Right To Conduct Full Discovery Will Be Irreparably Harmed

Following the NBC report, it is clear that Buzbee filed the FAC and its allegations of child-rape against Mr. Carter without so much as a cursory investigation into the factual merit of his client's case. These allegations have caused incalculable harm to Mr. Carter, his family, his businesses, his employees, and his legacy. To defend against the fictitious claims advanced by Plaintiff and Buzbee in this case, it is imperative that Mr. Carter be allowed to pursue all avenues of discovery permitted under the Federal Rules of Civil Procedure. *See Houston*, 2017 WL 972124, at *2 ("Under the Federal Rules of Civil Procedure, [parties] are bound to preserve material related to litigation." (citing Fed. R. Civ. P. 37)). Given that Buzbee has already ignored his ethical obligations in this case, the Court cannot rely on Buzbee to abide by his duty to preserve relevant evidence. To ensure Mr. Carter receives fair discovery, the Court must impose a preservation order.

### C. The Burden On Buzbee To Preserve Evidence Is Negligible

The third element of the *Capricorn Power* test—"the ability of and financial hardship to the party if required to maintain the [evidence]," *Toussie*, 2018 WL 2766140, at *9—is easily satisfied. This is not a case where the plaintiff is likely to have a large quantity of documents or any significant storage or data retention costs associated with preserving evidence. *Cf. id.* Accordingly, any burden on Plaintiff and Buzbee would be minimal, and "on balance, the significant and irreparable harm that [Mr. Carter] will face if the [evidence is] disposed of before trial outweigh[s] the moderate financial burden [Buzbee] might endure in order to comply with the

13

preservation order." *Toussie*, 2018 WL 11451597, at *2 (affirming magistrate judge's issuance of a preservation order).[8]

## II. THE COURT SHOULD STRIKE THE COMPLAINT AS AGAINST MR. CARTER PURSUANT TO RULE 12(F)

The revelations from the NBC interview not only demonstrate a substantial risk that discovery will be destroyed, but also that the FAC should be stricken under Rule 12(f)(1). The FAC alleges that Mr. Carter committed heinous acts. But as described above, those allegations are baseless and fatally contradicted by Plaintiff's and her father's statements to NBC. To say that these allegations ""reflect[] unnecessarily on [Mr. Carter]'s moral character" is a gross understatement. *See Eng*, 2014 WL 5824640, at *1 (striking complaint on the court's own initiative because "racist and needlessly inflammatory language in plaintiff's complaint [was] immaterial, impertinent, and scandalous"). The salacious allegations against Mr. Carter serve no purpose other than to harass him and to pressure him to settle a lawsuit based on false claims. The

---

[8] Some courts have applied an alternative, likelihood-of-success-on-the-merits standard used in the context of a motion for a preliminary injunction in assessing emergency applications for preservation orders. *See Treppel*, 233 F.R.D. at 370. Even assuming that standard applies (it does not), Mr. Carter is entitled to the relief he seeks. As detailed in his pre-motion letter (Dkt. No. 46) and will be explained in his forthcoming Rule 11 motion, Plaintiff's claim against Mr. Carter is utterly frivolous and without merit. Should that motion be denied, discovery will undoubtedly confirm this. As described *supra* at 5–9, the NBC interview revealed numerous, fundamental inconsistencies in Plaintiff's story, including *where* the alleged assault took place (she claims at a private residence—photographic evidence shows Mr. Carter at a nightclub that evening), *who she spoke to* (she claims clearly recalling speaking with Benji Madden *because* of a readily identifiable tattoo he has of the Last Supper—he was halfway across the country), and even, *how she got home* (she claims her dad drove her—he insists he has no memory of that). When pressed by NBC, she even had to admit that her memory was faulty, acknowledging she "made some mistakes," that "not all the faces there are as clear," and that she was "guessing" as to key details, including how long the trip took. Given that only *five days* after Mr. Carter was added to this action considerable evidence has already come to light contradicting the allegations in the FAC, further evidence undermining her claim is almost certain to be revealed if this case proceeds to discovery. Mr. Carter has shown a likelihood of success on the merits, warranting an immediate preservation order.

Court should dismiss Plaintiff's entire FAC and, at minimum, strike the allegations contained therein referencing Mr. Carter and dismiss him from this action.

### **CONCLUSION**

For the reasons stated above, a preservation order is necessary to ensure that Plaintiff and her counsel, Buzbee and The Buzbee Law Firm, preserve all evidence relevant to this case and given that the NBC interview revealed the meritless nature of the allegations against Mr. Carter, the FAC should be stricken under Rule 12(f). As such, Mr. Carter respectfully requests that the Court issue the attached [Proposed] Order To Show Cause ordering Buzbee and his firm to show cause as to why a preservation order should not issue and why the FAC should not be stricken and Mr. Carter dismissed from this action, and to set a hearing on this motion for Thursday, December 19, 2024 at 9:00 AM, or as soon thereafter as the Court deems appropriate.

DATED: December 18, 2024

                                                QUINN EMANUEL URQUHART &  
                                                   SULLIVAN, LLP

By: /s/ Alex Spiro

Alex Spiro  
295 Fifth Avenue  
New York, New York 10061  
(212) 849-7000

*Attorneys for Defendant Shawn Carter*