UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                     Plaintiff,<br><br>     v.<br><br>SEAN COMBS, DADDY'S HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a COMBS ENTERPRISES, LLC, BAD BOY ENTERTAINMENT HOLDINGS, INC., BAD BOY PRODUCTIONS HOLDINGS, INC., BAD BOY BOOKS HOLDINGS, INC., BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT LLC, BAD BOY PRODUCTIONS LLC, ORGANIZATIONAL DOES 1-10, INDIVIDUAL DOES 1-10, AND SHAWN CARTER,<br><br>                    Defendants. | Civil Action No.    1:24-cv-07975-AT |

**DEFENDANT SHAWN CARTER'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR SANCTIONS, DISMISSING THE COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................6

LEGAL STANDARD...............................................................................................................12

ARGUMENT ...........................................................................................................................13

I.      THE COURT SHOULD IMPOSE RULE 11 SANCTIONS FOR MR.
BUZBEE'S FILING OF THE AMENDED COMPLAINT AND REFUSAL TO
WITHDRAW IT ............................................................................................................13

      A.      Mr. Buzbee Violated Rule 11(b) By Either Filing A Knowingly False
Complaint Or Failing to Conduct A Reasonable Inquiry Into The Facts ..............13

      B.      The Court Should Dismiss the FAC and Impose Monetary Sanctions
Against Mr. Buzbee .............................................................................................18

CONCLUSION........................................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## Cases

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
   2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022)...........................................................................20

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991)..............................................................................................2, 5, 12, 13

*Carlton Grp., Ltd. v. Tobin*,
   2003 WL 21782650 (S.D.N.Y. July 31, 2003) ...............................................................13, 17

*China Al Cap. Ltd. v. DLA Piper LLP (US)*,
   2023 WL 5016492 (S.D.N.Y. July 28, 2023) .........................................................................2

*City of Yonkers v. Otis Elevator Co.*,
   844 F.2d 42 (2d Cir. 1988)................................................................................................6, 14

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) .........................................................................................................2, 13

*Doe v. Combs et al.*,
   No 1:24-cv-7769 (S.D.N.Y.)..................................................................................................7

*Doe v. Combs et al.*,
   No 1:24-cv-7772 (S.D.N.Y.)............................................................................................7, 22

*Doe v. Combs et al.*,
   No 1:24-cv-7774 (S.D.N.Y.)............................................................................................7, 22

*Doe v. Combs et al.*,
   No 1:24-cv-7776 (S.D.N.Y.)............................................................................................7, 22

*Doe v. Combs et al.*,
   No 1:24-cv-7777 (S.D.N.Y.)..................................................................................................7

*Doe v. Combs et al.*,
   No 1:24-cv-7778 (S.D.N.Y.)............................................................................................7, 22

*Doe v. Combs et al.*,
   No 1:24-cv-7973 (S.D.N.Y.)..................................................................................................7

*Doe v. Combs et al.*,
   No 1:24-cv-7974 (S.D.N.Y.)..................................................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-7976 (S.D.N.Y.)...........................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-8054 (S.D.N.Y.)...........................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-8808 (S.D.N.Y.)...........................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-8810 (S.D.N.Y.)...........................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-8811 (S.D.N.Y.)...........................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-8812 (S.D.N.Y.)...........................................................................7

*Doe v. Combs et al.*,
    No 1:24-cv-8852 (S.D.N.Y.)...........................................................................7

*Erbacci, Cerone, & Moriarty, Ltd. v. United States*,
    923 F. Supp. 482 (S.D.N.Y. 1996) ...............................................................10

*Fox v. Boucher*,
    794 F.2d 34 (2d Cir. 1986)............................................................................21

*Galin v. Hamada*,
    283 F. Supp. 3d 189 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018)..................12, 20

*Johnson v. Roadway Exp., Inc.*,
    2006 WL 120242 (W.D.N.Y. Jan. 17, 2006) ..............................................21

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993)........................................................................12, 19

*Man Wei Shiu v. New Peking Taste Inc.*,
    11-CV-1175 (NGG) (RLM), (E.D.N.Y. May 24, 2013)..............................10

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
    202 F.3d 315 (D.C. Cir. 2000) .....................................................................22

*New Alliance Party v. F.B.I.*,
    858 F. Supp. 425 (S.D.N.Y. 1994) .........................................................1, 5, 12

*O'Malley v. N.Y. City Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990)....................................................................12, 18

*Perry v. Goord*,
    2009 WL 2580324 (W.D.N.Y. Aug. 18, 2009) .......................................................22

*Safe-Strap Co., Inc. v. Koala Corp.*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003)...................................................................22

*Saltz v. City of New York*,
    129 F. Supp. 2d 642 (S.D.N.Y. 2001).................................................4, 17, 18, 19

*Smith v. Westchester Cnty. Dep't of Corr.*,
    2023 WL 5192751, at *4 (S.D.N.Y. Sept. 16, 2013).........................................13

*Usherson v. Bandshell Artist Mgmt.*,
    2020 WL 3483661 (S.D.N.Y. June 26, 2020) .......................................................2

## Statutes and Rules

28 U.S.C. § 1927 ......................................................................................................1

Fed. R. Civ. P. 11(b) ........................................................................................1, 2, 12

Fed. R. Civ. P. 11(c) .....................................................................................1, 9, 11, 17

Model Rules of Professional Conduct, Rule 3.1 .........................................................14

N.Y. R. Prof'l Conduct 1.3(a) .....................................................................................6

N.Y. R. Prof'l Conduct 3.1(a) ...................................................................................14

N.Y. R. Prof'l Conduct 3.1(b)(3) .................................................................................1

N.Y. R. Prof'l Conduct 3.3(a)(1) .................................................................................1

Tex. R. Prof'l Conduct 3.01 ......................................................................................14

Tex. R. Prof'l Conduct 3.03(a)(1) ...............................................................................1

Tex. R. Prof'l Conduct 3.03(b) ...................................................................................1

## Other Authorities

*Jay-Z Accuser Doesn't Rule Out Criminal Complaint Against Mogul Attorney Buzbee Says*,
    https://www.tmz.com/2024/12/10/tony-buzbee-responds-jayz-sexual-assault-
    criminal-complaint/. .......................................................................................11

www.concertarchives.org/bands/good-charlotte?page=2&year=2000.........................15

David Artavia, *For Years, Diddy's Lavish White Party Rules Labor Day.  Here Are Some of the Most Unforgettable Celebrity Fashion Moments*, YAHOO! ENTERTAINMENT https://www.yahoo.com/entertainment/diddy-white-party-labor-day-celebrity-fashion-photos-style-hip-hop-120027194.html...........................................................................1, 9, 11

Defendant Shawn Carter respectfully submits this memorandum of law in support of his motion for monetary sanctions against Plaintiff's counsel, Anthony Buzbee, and The Buzbee Law Firm, and to dismiss Plaintiff's First Amended Complaint (the "FAC") pursuant to Rule 11(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

While the allegations stated in the complaint in this case are gravely serious (and injurious to Mr. Carter's hard-won reputation), many of them, on their face, strain the outer bounds of credulity, and none of them appears to have been subjected to even the most rudimentary diligence by the filing attorney who initially signed his name to them and has since declined to withdraw them. Because the Federal Rules and professional ethics require more of a filing attorney, Mr. Carter now respectfully seeks appropriate sanctions.

Federal Rule of Civil Procedure 11(b)(3) requires every attorney who signs a complaint to "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  As judges in this district and elsewhere have long held, "plaintiffs may not file a complaint in this court without having made a reasonable investigation of the facts." *New All. Party v. F.B.I.*, 858 F. Supp. 425, 429 (S.D.N.Y. 1994).  That rule accords with the rules of professional conduct, which prohibit an attorney from "knowingly assert[ing] material factual statements that are false," N.Y. R. Prof'l Conduct 3.1(b)(3), and from "fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer," N.Y. R. Prof'l Conduct 3.3(a)(1).  *Accord* Tex. R. Prof'l Conduct 3.03(a)(1), (b); *see also* 28 U.S.C. § 1927.

1

Those basic guardrails on litigation are critical to the integrity of the judicial process. Courts rely on attorneys to conduct a reasonable investigation into the facts alleged in a complaint to avoid wasting judicial and party resources litigating meritless claims. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991) ("Rule 11 is aimed at curbing abuses of the judicial system.") (internal quotations omitted); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("the central purpose of Rule 11 is to deter baseless filings in district court…."). Moreover, in cases where the allegations assert outrageous or criminal conduct, an attorney's certification that the allegations are reasonably supported by evidence ensures that parties cannot improperly use statements in judicial filings (often shielded from defamation liability by the litigation privilege) to impugn the reputations of innocent people or attempt to extract unwarranted settlements. *See China Al Cap. Ltd. v. DLA Piper LLP (US)*, 2023 WL 5016492, at *8 (S.D.N.Y. July 28, 2023) (sanctions appropriate where claim "can only be viewed as an attempt to harass Defendants and cause reputational harm"), *report and recommendation adopted* 2024 WL 964596 (S.D.N.Y. Mar. 6, 2024); *Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at *18 (S.D.N.Y. June 26, 2020) (sanctions warranted where counsel "maintain[ed] the lawsuit" without "any investigation" indicating "broad[] strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits").

Plaintiff's lead attorney, Anthony Buzbee, has violated Rule 11(b) by either knowingly making false allegations about Mr. Carter in the amended complaint, failing to conduct an adequate investigation into the complaint's factual allegations, or (at minimum) failing to withdraw the

complaint once it became clear that numerous allegations in the complaint are false and the other allegations are therefore at least highly suspect.[1]

The First Amended Complaint ("FAC") alleges that following the 2000 Video Music Awards (the "VMAs"), Plaintiff was drugged and raped at a celebrity party. But almost immediately after the FAC was filed, NBC News journalists determined that a number of allegations were either false or highly doubtful. For example, paragraph 44 of the complaint claims that the party occurred at "a large white residence with a gated U-shaped driveway" that was "approximately twenty minutes" from the VMAs by car, but photographs show that after the VMAs, Mr. Carter attended a party at Lotus, a nightclub in New York. (Spiro Decl. Ex. 1 ("NBC Article") at 7; *id.* Ex. 2.) Paragraph 60 states that after the alleged assault, Plaintiff's father drove to pick her up. But her father has no recollection of doing so, despite the fact that it would have been a ten-hour drive roundtrip to retrieve his thirteen-year-old daughter from a random gas station. (NBC Article at 7.) Paragraph 46 states that Plaintiff spoke to celebrities at the alleged party, but when journalists pressed her as to which celebrities she spoke with, she named a person who was in Chicago that evening performing a concert. (*Id.*) Paragraph 40 states that Plaintiff watched the VMAs on a Jumbotron. In fact, photographs from that evening show there was no Jumbotron, as New York City had denied MTV a permit. (Spiro Decl. ¶ 2, Ex. 3.) And the same paragraph says that Plaintiff "approached limousine drivers" at the VMAs, but video shows that the limousine area was cordoned off by police and inaccessible to fans. (*Id.* Ex. 4.)

---

[1] New York barred attorney Antigone Curis also signed the operative complaint. (Dkt. No. 29 at 21.) It appears Ms. Curis was retained as local counsel, and all filings have been submitted under her electronic filing credentials. Serving as local counsel of course does not relieve an attorney who signs a pleading of the duty to conduct a reasonable investigation before filing.

By any objective measure, the fact that nearly every step in Plaintiff's narrative—from her arrival at the VMAs to her interactions with the limousine driver and celebrities to the ride with her father—turns out to be false or highly unlikely casts considerable doubt on Plaintiff's allegation that Mr. Carter raped her, which he did not. Confronted with those glaring red flags, a competent and ethical attorney would have not only omitted the many erroneous allegations from the complaint but also completed a thorough and careful vetting of the core assault allegation before affixing his or her signature to the complaint. Abiding by that ethical duty was especially important here given the defamatory character of the assault allegation and the near certainty that the complaint would generate massive publicity in light of the identity of the defendant, inflicting irreparable reputational harm and forcing him to explain to his own children that he had been falsely accused of assaulting a child. And conducting a thorough inquiry is particularly critical where, as here, the plaintiff has no corroborating witness for her account and claims that she did not tell a soul about the incident at any point in the last quarter-century—including her father, who supposedly picked her up. *Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001) (where counsel *must* rely on his client, he has an obligation to "question him thoroughly, not accepting his version on faith alone").

But it appears that Mr. Buzbee failed to conduct any such inquiry. That a reporter was able to undercut almost all of the events of Plaintiff's narrative just five days after the FAC was filed only highlights the complete lack of investigation undertaken by her own attorneys. A simple call to her father, a review of publicly available video footage and photos from that night at and after the VMAs, or a review of publicly available property records would have quickly revealed the implausibility of her allegations. But Mr. Buzbee has all but admitted that he declined to undertake such a basic investigation. When confronted by NBC News journalists with the series of false

allegations in the complaint, Mr. Buzbee sought to cover for his utter lack of diligence by claiming his client would undergo a polygraph examination, an offer he seems to have abandoned since making it weeks ago. (NBC Article at 4.) And he passed the buck, stating that another, unnamed firm had vetted the allegations and that the Buzbee Law Firm would "continue to vet [Plaintiff's] claims and collect corroborating data to the extent it exists." (*Id.*)

That is entirely improper. It was Mr. Buzbee's responsibility to conduct a factual investigation into the allegations *before* he signed the complaint, not afterward, and he cannot evade that core ethical responsibility by relying on the work of other attorneys who did not sign the pleadings and are not associated with his firm. *Bus. Guides*, 498 U.S. at 551 (Rule 11 "imposes on *any party who signs* a pleading, motion, or other paper—whether the party's signature is required by the Rule or is provided voluntarily—an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing") (emphasis added).

Moreover, although Mr. Buzbee claimed in his statement to the journalists that his firm had "interrogated [Plaintiff] intensely," she admitted to the journalists that she had "made some mistakes" and was "guess[ing]" about key details—serious problems with her account that Mr. Buzbee would have uncovered had his firm actually "interrogated" Plaintiff. (NBC Article at 4, 7-8.) Instead of conducting a thorough investigation, Mr. Buzbee filed a complaint setting forth one of the most serious allegations of criminal conduct imaginable—with an accompanying publicity campaign on social media and elsewhere—based on an uncorroborated claim of assault that relied on an easily disprovable factual narrative. And inexplicably, even though the NBC News story was published over three weeks ago, Mr. Buzbee has taken no action to withdraw a complaint that contains provably false statements.

None of that is acceptable for a member of the bar of this Court or any other court. That is perhaps why Mr. Buzbee has not obtained admission *pro hac vice*, despite having signed numerous pleadings and other filings in the two and a half months since signing the original complaint. Indeed, although Mr. Buzbee advised the Court on December 20 that he was admitted to practice in the Eastern District of New York and "intend[ed] to apply for reciprocal admission" to the Southern District (Dkt. No. 50 at 3), he has not even sought interim admission *pro hac vice* while his application is pending, despite signing more filings over the ensuing weeks. (*See* Dkt. Nos. 50, 57.) Whether that reflects an improper effort to avoid the jurisdiction of this Court or just a failure to act with anything approaching reasonable diligence, *see* N.Y. R. Prof'l Conduct 1.3(a), it reinforces the propriety of imposing sanctions here.

Given the horrific nature of the allegations in the FAC, every day this inadequately vetted complaint remains on the docket causes extraordinary harm to Mr. Carter, his family, his businesses, and his employees. Especially when a complaint alleges violent, felonious conduct that is defamatory per se, attorneys should not be permitted to destroy a person's reputation by alleging facts without a sufficient investigation or by failing to withdraw those allegations once it is clear that they are false or exceedingly unlikely to be true. Mr. Carter respectfully requests that the Court vindicate Rule 11 by immediately dismissing the FAC against Mr. Carter and imposing an appropriate monetary sanction or fee award against Mr. Buzbee and the Buzbee Law Firm.

## FACTUAL BACKGROUND

On September 17, 2024, federal prosecutors unsealed an indictment against Sean Combs for racketeering and other offenses related to sexual misconduct, none of which involved Mr. Carter. Shortly after, Mr. Buzbee published a 1-800 hotline for potential plaintiffs seeking to sue Mr. Combs for abuse. (Spiro Decl. Ex. 6 (Oct. 3, 2024 Chris Hansen Show Tr.) at 6:20.) Just two weeks later, Mr. Buzbee stated in a press conference that more than three thousand individuals had

contacted him via the hotline claiming to have been victimized by Mr. Combs.  (Spiro Decl. Ex. 7 (Oct. 1, 2024 Fox26 Press Conference) at 3:5-6.)  Mr. Buzbee further stated that he was already representing 120 plaintiffs who intended to bring civil claims against Mr. Combs.  (*Id.* at 3:9-10.)

That sequence alone strongly suggests that Mr. Buzbee's vetting of claims was grossly deficient.  Even assuming Mr. Buzbee set up the hotline on the same day that Mr. Combs' indictment was unsealed, the sheer number of calls that Mr. Buzbee allegedly received within the two weeks between the unsealing and the October 1 press release indicates that Mr. Buzbee could not possibly have vetted every caller's allegations to the extent necessary to establish their veracity before signing up 120 of them as plaintiffs.  But within weeks of his press conference and in an apparent rush to be the first attorney to get claims on file against Mr. Combs, Mr. Buzbee filed *fifteen* lawsuits[2] on behalf of individuals who contacted him via the hotline in this Court alone.[3]

In addition to those fifteen lawsuits, Mr. Buzbee also filed the original complaint in this case on October 20, 2024.  (Dkt. No. 1.)  That complaint alleged that Mr. Combs, along with another unnamed male celebrity, raped Plaintiff at a party hosted by Mr. Combs following the VMAs on September 7, 2000, while a female celebrity watched.  (*Id.* ¶¶ 1, 14, 48–57.)  In a letter dated November 5 and in subsequent telephone conversations, Mr. Buzbee threatened to go public with false and defamatory allegations that Mr. Carter was the other male celebrity who had raped

---

[2]    *Doe v. Combs et al.*, No 1:24-cv-7769 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7772 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7774 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7776 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7777 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7778 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7973 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7974 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-7976 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-8054 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-8808 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-8810 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-8811 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-8812 (S.D.N.Y.); *Doe v. Combs et al.*, No 1:24-cv-8852 (S.D.N.Y.).

[3]    Mr. Buzbee is the top-line signatory on virtually every document filed in each of these fifteen cases, but has not sought admission to appear *pro hac vice* in any of them, though most of them have been pending in this District since October 2024.

Plaintiff, and that he had raped another minor, unless Mr. Carter agreed to pay an exorbitant sum in private mediation.  Mr. Buzbee ominously threatened to "take a different course" if Mr. Carter did not commit to the mediation within a mere two weeks.  Unable to extract a payment from Mr. Carter for the false allegation, Mr. Buzbee then filed the FAC on December 8, adding Mr. Carter as a Defendant, without—as has now come to light—having undertaken even the most basic investigation of the allegation.  (Dkt. No. 29 ("FAC") ¶¶ 55–58.)

The FAC alleges that on or around September 7, 2000, a friend drove Plaintiff from her home to Radio City Music Hall to attend the VMAs, where she remained outside and watched the event on a Jumbotron.  (FAC ¶¶ 38, 40.)  During the VMAs, Plaintiff, "[d]etermined to get into the VMAs or an afterparty," allegedly spoke with numerous limousine drivers to "talk her way" in, until she spoke with a driver who informed her that she "fit what Diddy was looking for."  (*Id.* ¶¶ 40-41.)  When the VMAs ended, the FAC claims that the same driver took Plaintiff to a party hosted by Mr. Combs at a "large white residence with a gated U-shaped driveway" and "a large living room or foyer[.]"  (*Id.* ¶¶ 44, 46.)  At the party, the FAC alleges, Plaintiff "recognized many celebrities" (*Id.* ¶ 46), which she told the NBC News journalists included musicians Fred Durst and Benji Madden, among others.  (NBC Article at 5.)  The FAC then recites the same rape allegation as the original complaint and alleges that the previously unnamed male celebrity who also assaulted her was Mr. Carter.  (FAC ¶¶ 52, 54-55.)  It states that, following the alleged assault, Plaintiff ran out of the house—passing numerous celebrities and other individuals on the way—to a gas station, where she "called her father, admitted that she had lied about her whereabouts, and asked him to pick her up."  (*Id.* ¶ 60.)  Plaintiff's father then purportedly "arrived to pick her up shortly before dawn."  (*Id.*)

On December 13, 2024, Plaintiff sat for an interview with NBC. That interview exposed that Plaintiff had not, prior to that point, faced any meaningful scrutiny of her factual account. In response to questioning from NBC, Plaintiff confirmed that many of the FAC's allegations did not correspond with basic, known, and readily ascertainable realities. For example, NBC reported that photos of Mr. Carter from the night in question show him at Lotus, a *nightclub*—not a private residence. (NBC Article at 7; Spiro Decl. Ex. 2.)[4] Other photographs from that evening also show Mr. Combs with his then girlfriend, the musician and actress Jennifer Lopez at two different establishments—Lotus and Twirl—neither of which was a large residence with a U-shaped driveway.[5] (Spiro Decl. Ex. 8.) Plaintiff also claimed—with certainty—that she spoke with musician Benji Madden at the alleged party "about his tattoo, … [of] 'The Last Supper.'" (NBC Article at 5.) She supposedly remembers this interaction with clarity because she has a "religious background so it was something to talk about." (*Id.*) But Mr. Madden was not even in the State of New York. (*Id.*) His representative told NBC that he did not attend the VMAs and, in fact, was on tour in the Midwest with his band, Good Charlotte. (*Id.*) Plaintiff also asserted that when she could not gain entry into the VMAs on the night in question, she watched the award show on a Jumbotron outside. (FAC ¶ 40.) Photographs and video, however, confirm that no Jumbotron existed, as the City of New York denied MTV's permit request for one, and that, when picking up or dropping off celebrities,[6] limousines were cordoned off by police barricades, inaccessible to fans. (Spiro Decl. ¶ 2, Exs. 3, 4.)

---

[4]    Citations to Dkt. 46 refer to the ECF pagination located at the top of the page.

[5]    Though Ms. Lopez apparently changed her clothes after the VMAs, her jewelry and accessories remained unchanged.

[6]    Limousines were unable to park in front of Radio City Music Hall because, as shown from publicly available video footage, recording artist Eminem's VMAs performance took place outdoors, at which point limousines had vacated the area. (Spiro Decl. Ex. 5.)

All of this would have caused any reasonable attorney to put the brakes on filing an inflammatory complaint and to conduct a more thorough investigation into Plaintiff's allegations. Such an investigation would have immediately led the attorney to the FAC's only identified witness of the alleged events: Plaintiff's father. And even a brief call to him would have revealed, as the NBC News journalists immediately found out, that he was *entirely* unaware of the assault until the week he was interviewed, and had no recollection of picking his daughter up at the gas station. (NBC Article at 7.) Given that Plaintiff and her father were living in Rochester at the time—a five-hour drive to New York City—it is unlikely that he would have forgotten about the incident if it had actually occurred. (*Id.*) He said so himself: "I feel like I would remember that, and I don't … that's something that would definitely stick in my mind."[7] (*Id.*) Though he recalled an instance where he picked her up "in the middle of the night," he remembers it as "a local drive," *i.e.*, not to New York City. (*Id.*)

Uncovering these serious problems with the claim would not have taken a competent and ethical attorney much time. NBC journalists identified the complaint's factual inaccuracies only *five days* after the FAC was filed. But despite engaging in maximalist efforts to solicit new clients through his 1-800 hotline and extract an outsized payment from Mr. Carter under threat of taking a "different course" if he did not acquiesce, Mr. Buzbee did not apply the same vigor to actually testing the specific allegations of Plaintiff's case.[8] Indeed, although Mr. Buzbee claims that his

---

[7] Plaintiff cannot rely on her father as an outcry witness, as she claims she did not tell him what occurred when he picked her up that evening. (NBC Article at 5.) This piece of her story, too, is incredible: She contends that even though her father drove five hours from Rochester to New York City in the middle of the night to pick up his 13-year old daughter, the two drove home "in silence" and he did not "ask [her] what happened" and did not "ask [her] what [she] did or where [she] was." (*Id.*)

[8] Mr. Buzbee's conduct in this case is consistent with his approach to pursuing high-profile lawsuits. In a recent documentary entitled "The Downfall of Diddy: Inside the Freak-Offs" he acknowledged to reporters that criticism that he "put[s] enough embarrassing things in a

firm will "continue" to vet his client's allegations, he appeared to admit to NBC that his firm failed to conduct *any* investigation into the merits of Plaintiff's claims in the first place. (NBC Article at 4.)[9] It would have been simple to call Plaintiff's father, review publicly available property records, or use a search engine to find photographs and videos of the VMAs from the night in question, but Mr. Buzbee apparently did not undertake even these basic steps. (*See e.g.* Spiro Decl. Exs. 2-5, 8-9, 11, 13-14.)

Instead of providing any justifiable basis for this complete failure to comply with Rule 11, Mr. Buzbee has sought to shirk his Rule 11 obligations and foist blame onto another law firm, telling NBC: "Jane Doe's case was referred to our firm by another, who vetted it prior to sending it to us." (*Id.*) He also attempted to make up for his own lack of diligence by volunteering that his client would undergo a polygraph examination. (*Id.*) But despite his routine social media updates about this case, he has been notably silent about whether Plaintiff has sat for the test or what the results were.

Following the publication of NBC's article, on December 13, Mr. Carter filed a pre-motion letter (Dkt. No. 46) informing the Court of his intention to immediately file for sanctions to dismiss Plaintiff's FAC and requesting that the Court shorten Rule 11's 21-day safe harbor period to 1 day in light of the extraordinary and ongoing reputational harm inflicted by the complaint's false allegation of sexual assault. (*Id.* at 3.) Four days later, Mr. Carter served a copy of his motion on

---

complaint" to "force[] a settlement" was "fair" and said that because the legal system is "a gulag," his firm "always … make[s] an attempt to resolve these cases without the filing of a lawsuit … and if [they] fail in that, [they will] file the case and … pursue it with aggression." (Spiro Decl. Ex. 12 at 42:13-43:6.)

[9] Despite not undertaking even a rudimentary investigation into the allegations in this case, Mr. Buzbee saw fit to inform reporters that his client has not ruled out criminal charges. *See Jay-Z Accuser Doesn't Rule Out Criminal Complaint Against Mogul Attorney Buzbee Says*, TMZ (last visited Jan. 7, 2025), https://www.tmz.com/2024/12/10/tony-buzbee-responds-jayz-sexual-assault-criminal-complaint/.

Mr. Buzbee and all counsel of record, via email.  Though the Court denied Mr. Carter's request to

shorten the filing deadline, it permitted him to file this motion in compliance with the Rule's safe-

harbor period.  (Dkt. No. 53 at 4.)  Since December 17, Mr. Buzbee has not sought to withdraw

the FAC during the 21-day safe harbor period provided by Rule 11.

## LEGAL STANDARD

To ensure that lawyers do not file baseless and harassing complaints, Federal Rule of Civil

Procedure 11 provides:

> By presenting to the court a pleading, … an attorney … certifies that
> to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances … the
> factual contentions have evidentiary support or, if specifically so
> identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b).  "[A]n attorney may not transcend the facts of a given case," and counsel

may not "concoct[] facts that [are] not well grounded."  *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d

Cir. 1993).  Moreover, Rule 11 imposes an "affirmative duty on each attorney to conduct a

reasonable inquiry into the viability of a pleading" before filing.  *O'Malley v. New York City

Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990); *see also Bus. Guides*, 498 U.S. at 551 (noting that

such duty is "imposed on *any party who signs* a pleading, motion, or other paper—whether the

party's signature is required by the Rule or is provided voluntarily") (emphasis added).  Thus, as

explained above, courts in this district have long held that "plaintiffs may not file a complaint in

this court without having made a reasonable investigation of the facts."  *New All. Party v. F.B.I.*,

858 F. Supp. 425, 429 (S.D.N.Y. 1994).

An attorney's Rule 11 obligations do not end with the filing of the complaint.  Counsel has

a "continuing obligation" under Rule 11 to ensure that a complaint has a reasonable factual and

legal basis. *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3

(2d Cir. 2018).  For that reason, even if counsel has a "reasonable basis" when filing an initial pleading to believe that the claims are valid, he or she may be sanctioned for "refusing to withdraw" the pleading "after it was shown to be inaccurate." *Id.* (alterations omitted); *see also Carlton Grp., Ltd. v. Tobin*, 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003) ("Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless." (alterations omitted)).

## ARGUMENT

### I.    THE COURT SHOULD IMPOSE RULE 11 SANCTIONS FOR MR. BUZBEE'S FILING OF THE AMENDED COMPLAINT AND REFUSAL TO WITHDRAW IT

#### A.    Mr. Buzbee Violated Rule 11(b) By Either Filing A Knowingly False Complaint Or Failing to Conduct A Reasonable Inquiry Into The Facts

Mr. Buzbee signed an FAC containing extraordinarily serious and defamatory claims against Mr. Carter.  Because so much of the narrative set out in the complaint is demonstrably false, and other allegations are highly unlikely, it is clear that Mr. Buzbee either knowingly filed a false complaint or failed to conduct a reasonable inquiry into the factual allegations.  Mr. Buzbee all but admitted that he failed to vet the complaint and was still searching for corroboration of the allegations, casting the blame on an unnamed law firm that referred him the case.  Yet weeks after the interview aired, Mr. Buzbee has failed to withdraw the FAC—or even move for admission *pro hac vice*—underscoring that he has simply ignored the basic ethical responsibilities required of a lawyer practicing in this Court.

Rule 11 imposes an affirmative, ongoing duty on lawyers "to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides*, 498 U.S. at 551.  This duty serves the twin goals of "deterrence [against] baseless filings and the curbing of abuses." *Smith v. Westchester Cnty. Dep't of Corr.*, 2023 WL 5192751, at *4 (S.D.N.Y. Sept. 16, 2013); *see also Bus. Guides*, 498 U.S. at 542 ("Rule 11 is aimed at curbing abuses of the judicial system"); *Cooter & Gell v.*

13

*Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("central purpose of Rule 11 is to deter baseless filings in district court and … streamline the administration and procedure of the federal courts").  As such, an attorney's signature on a filing "denotes merit" and "sends a message to the district court that this document is to be taken seriously."  *Bus. Guides*, 498 U.S. at 546.  Where an attorney learns after filing a complaint that the factual assertions are false, Rule 11—and the rules of professional conduct—mandate withdrawal of the claims.  *See City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49 (2d Cir. 1988); *see also, e.g.*, ABA Model Rules of Professional Conduct, Rule 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous…."); N.Y. R. Prof'l Conduct 3.1(a) (same); Tex. R. Prof'l Conduct 3.01 (same).

Here, it is clear from easily ascertainable information that numerous allegations in the complaint are false or highly doubtful.  By all indications, Mr. Buzbee did not conduct a reasonable investigation into the facts before signing the complaint, including the core allegation of sexual assault.

***First***, photographs obtained by NBC from the evening in question make Plaintiff's allegations implausible in the extreme.  According to the FAC, the assault occurred at a party hosted by Mr. Combs in a private residence.  But NBC reported that photos of Mr. Carter from that evening show him at a party at a *completely different* location—the now closed Lotus nightclub in New York City.[10]  (NBC Article at 7.)  The FAC's description of the location where the party and purported assault occurred—"a large white residence with a gated U-shaped driveway" which included "a large living room or foyer" and "a hallway containing several rooms

---

[10]    This fact, in conjunction with the complete lack of evidence of Mr. Carter's presence at the purported private residence that Plaintiff describes, casts serious doubt on Plaintiff's allegations regarding his attendance, let alone conduct, at any such location.

14

off of it," including a bedroom (FAC ¶¶ 44, 46, 51)—bears no resemblance to the location or venue of the party where Mr. Carter was photographed that night.  Moreover, Mr. Buzbee made clear in a statement to NBC that Plaintiff does not claim the assault occurred at Lotus nightclub.  (NBC Article at 8.)

*Second*, the FAC's account of what happened at the party before the alleged assault crumpled under even surface-level scrutiny.  The FAC alleges that upon arriving at the party, Plaintiff encountered "many celebrities" in the "large living room or foyer" of the house.  (FAC ¶ 46.)  But when asked about whom she spoke with, she named Benji Madden—a conversation that supposedly stuck in her mind because of his readily identifiable tattoo of the Last Supper. (NBC Article at 5, 7.)  That entire exchange, however, was pure fiction:  Mr. Madden did not attend the VMAs, was not at any party that evening, and was not even in the State of New York. (*Id.* at 7.)  He was halfway across the country on tour with his band, Good Charlotte, in the Midwest, performing a concert in Chicago on the evening of the VMAs—a fact that a Google search would have revealed in less than a minute.[11]  (NBC Article at 7.)  A competent lawyer would have asked the question "Whom did you speak with at the party?" during the first substantive discussion with Plaintiff about her claim and then undertaken an effort to confirm that those individuals were indeed in New York that evening.  But Mr. Buzbee apparently did not even bother to take that simple first step to investigate the claim before signing his name to a pleading accusing another person of a serious criminal offense.  That is not how lawyers are supposed to conduct themselves.

---

[11]    The top result of a Google search for "Good Charlotte 2000 Tour" is an archived website that conclusively demonstrates that on September 7, 2000 Good Charlotte performed a concert in Chicago, Illinois.  *See* www.concertarchives.org/bands/good-charlotte?page=2&year=2000 (last visited Jan. 7, 2025).

*Third*, Mr. Buzbee evidently did not even contact the one witness that he both knew about and had access to: Plaintiff's father, who was more than willing to discuss the matter with NBC News. And when he spoke with NBC, he disputed a critical element of Plaintiff's story—how she got home. The FAC alleges that after the purported assault, Plaintiff ran to a gas station, "called her father, admitted that she had lied about her whereabouts, and asked him to pick her up," after which he "arrived to pick her up shortly before dawn" and the two drove home in silence. (FAC ¶ 60; NBC Article at 6.) When asked about that claim, however, Plaintiff's father told NBC that he has *no memory* of this drive ever happening—even though it would have involved a ten-hour round-trip to pick up his 13-year-old daughter from a random gas station. (NBC Article at 7.) And like virtually any other parent, he was confident that he would not have forgotten such an incident: "I feel like I would remember that, and I don't," he told NBC News, even though "that's something that would definitely stick in my mind." (*Id.*) It is extremely unlikely that had Mr. Buzbee spoken with Plaintiff's father as part of a reasonable inquiry into the claim, the FAC would have alleged that he picked her up. The logical takeaway is that Mr. Buzbee elected to file the FAC without even finding out whether the only identified witness (apart from the anonymous female celebrity) could confirm Plaintiff's story.

*Fourth*, the FAC contains other allegations refuted by publicly available sources. For example, it claims that Plaintiff watched the VMAs from outside Radio City Music Hall on a Jumbotron and spoke to limousine drivers to try to "talk her way" into the event or a later party. (FAC ¶ 40.) But photographs establish that no such Jumbotron existed; NYPD confirmed that MTV's permit request was denied by the City of New York. (Spiro Decl. ¶ 2, Ex. 3.) And if Plaintiff had been outside the VMAs as she claims, there was no way she could have approached celebrity limousines because they were only outside of Radio City Music Hall briefly for celebrity

pick up and drop off and, in any event, were separated from fans by police barricades—as publicly available video of the event shows.  (Spiro Decl. Exs. 4, 5.)  The FAC also describes a house with a U-shaped driveway located within 20 minutes of Radio City Music Hall, but public property records confirm that Mr. Combs did not own a residence at that time that matches this description. (*Id.* Exs. 9, 11, 13-14.)  All of this information was in the public record before Mr. Buzbee signed the FAC.  The fact that he chose to include each of these demonstrably incorrect facts in the complaint demonstrates that he failed to undertake inquiries to locate the publicly available records, photos, and videos that belie these allegations before filing suit.

The unethical misconduct is compounded by the nature of the allegations here.  Given the gravity of a claim of sexual assault of a minor and the likelihood that its public airing would harm Mr. Carter's reputation and inflict emotional harm on third parties like his children, an ethical attorney would have conducted an especially thorough pre-filing investigation of Plaintiff's claim. *Saltz,* 129 F. Supp. 2d at 646 (if the attorney has "his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his Rule 11 obligation") (alterations omitted).  But that is not the course Mr. Buzbee chose to take.  And at a bare minimum, an ethical attorney would have immediately withdrawn the obviously false allegations and reconsidered whether he or she has a reasonable basis to proceed with the suit in light of the numerous holes in Plaintiff's story uncovered by NBC News.  *Carlton Grp., Ltd.*, 2003 WL 21782650, at *6 ("Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless.") (alterations omitted).  Mr. Buzbee, however, has inexplicably declined to do so.  That is deeply unethical behavior that warrants judicial condemnation.

**B.      The Court Should Dismiss the FAC and Impose Monetary Sanctions Against Mr. Buzbee**

For the foregoing reasons, Mr. Buzbee's failure to conduct anything close to a reasonable investigation of the claim here violates Rule 11.  Rule 11(c)(1) permits "the court [to] impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  Several considerations favor a serious sanction here.

***First***, Mr. Buzbee's Rule 11 violations are extreme.[12]  He apparently did not conduct even a rudimentary inquiry, such as consulting publicly available sources and asking Plaintiff and her father basic questions about her narrative.  Not only does he concede that he failed to fully vet Plaintiff's allegations before signing the complaint—or amending it to name Mr. Carter—he has sought to place blame for his shortcomings on unnamed lawyers who allegedly referred him the case but did not sign the complaint.  (NBC Article 4.)  That excuse is insufficient, as Mr. Buzbee should have known.  Mr. Buzbee is the lawyer who signed the pleadings in violation of Rule 11— they were not signed by the lawyer who he claims referred him the case.  *See O'Malley*, 896 F.2d at 706 (there is an "affirmative duty on *each attorney* to conduct a reasonable inquiry into the viability of a pleading" before filing) (emphasis added).  It was thus Mr. Buzbee's duty to conduct a reasonable inquiry into his client's allegations.  *Saltz*, 129 F. Supp. 2d at 646.  Such an inquiry is particularly important where, as here, Plaintiff has no corroborating witness or evidence; purports to have told no one about the alleged assault over the last 24 years;[13] and has made assertions inconsistent with publicly available information.  *Id.* ("[W]hen an attorney must rely on

---

[12]    The defense does not seek to levy irrelevant *ad hominem* attacks against Mr. Buzbee, but the very nature of a Rule 11 inquiry requires calling into question an attorney's conduct.

[13]    Plaintiff told NBC News that she did not disclose the alleged assault to anyone over the last 24 years because it would have been "the word of two celebrities against [hers]" (NBC Article at 6); however, the FAC alleges that three celebrities were in the room when the alleged assault occurred, not two (FAC ¶ 52), revealing yet another inconsistency in her story.

his client, he should question him thoroughly, not accepting his version on faith alone.")
(alterations omitted).

The Second Circuit's decision in *Levine* is instructive.  There, the court upheld sanctions
where subsequent deposition testimony from both the plaintiff and one of the defendants revealed
that statements in the pleadings and other filings were provably false.  *Levine*, 2 F.3d at 477-78
(amended complaint, affidavits, and memoranda certified by attorney under Rule 11 were not
"grounded in fact"; they were "contradicted not only by [defendant's] deposition, but also by the
admissions of [his] own client").  In so doing, the Second Circuit credited the district court's
conclusions that the complaint's allegations were "not well grounded in fact" and that plaintiff's
counsel had "ignored facts revealed through reasonable inquiry" and "perpetuated his misconduct
through the filing of numerous memoranda well after his errors were revealed to him."  *Id.* at 478;
*see also Saltz*, 129 F. Supp. 2d at 646 (imposing sanctions where counsel "did not attempt to
investigate … claims during the period … between when he was first retained by his client and
when he filed the complaint").  That is precisely what Mr. Buzbee has done here.  The Court should
come to the same conclusion as the Second Circuit in *Levine.*

**Second**, Mr. Buzbee is a repeat offender.  On October 14, 2024, he filed a different
complaint on behalf of an anonymous John Doe against Mr. Combs that also contained easily
disprovable allegations.  (Spiro Decl. Ex. 10 (Dec. 11, 2024 CNN Interview) at 2.)  For example,
that complaint asserted that John Doe had never been married.  (*Id.* at 3.)  But CNN reported the
contrary:  he was married and his marriage purportedly ended after the alleged assault.  (*Id.* at 4.)
That is information that any attorney could obtain during an introductory meeting with his client
by simply asking questions about his marital history or how the alleged assault impacted his life.
The complaint also asserted that Doe was assaulted in 2006 in the Hamptons at Mr. Combs' "White

Party." (*Id.* at 3.) But again CNN revealed that the "White Party" was held in St. Tropez in 2006 and in the Hamptons in 2007 (*id.*)—something Mr. Buzbee could have learned through a simple Google search.[14] It was only *after* CNN's reporting of these errors that Mr. Buzbee filed an amended complaint changing the year of the purported assault to 2007 and the detail concerning Doe's prior marital status. (*Id.*) Mr. Buzbee brushed away these glaring factual inaccuracies as "mistakes [that] were made in the rush to file." (*Id.*) But that is precisely what Rule 11 proscribes: rushing to get a complaint on file before conducting a reasonable investigation into its allegations. And he appears poised to continue flouting Rule 11 given that he filed fifteen cases in this Court relating to Mr. Combs over the two-month period following the unsealing of his indictment and claims to represent over a hundred other plaintiffs. *See* pp. 6-7, *supra*.

*Third*, adding to his original failure to conduct a reasonable inquiry, Mr. Buzbee now refuses to withdraw the FAC in light of the revelations by NBC News, instead stating only that he will search for "corroborating data to the extent it exists." (NBC Article at 4.) *See Galin*, 283 F. Supp. 3d at 202 (even if counsel has a "reasonable basis" when filing an initial pleading to believe that claims are valid, they may be sanctioned for "refus[ing] to withdraw" the pleading "after it was shown to be inaccurate"); (*RC*) *2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *3–4 (S.D.N.Y. Sept. 14, 2022) (imposing Rule 11 sanctions for amended complaint that repeated allegation that lacked evidentiary support). No "corroborating data" can fix the problem that virtually every event in Plaintiff's narrative is contradicted by indisputable facts. And at any rate, even if there was some reason to conclude that the complaint could be

---

[14] *See e.g.*, David Artavia, *For Years, Diddy's Lavish White Party Rules Labor Day. Here Are Some of the Most Unforgettable Celebrity Fashion Moments*, YAHOO! ENTERTAINMENT (Sept. 4, 2023), https://www.yahoo.com/entertainment/diddy-white-party-labor-day-celebrity-fashion-photos-style-hip-hop-120027194.html. This website can be easily located by searching Google for, *e.g.*, "Diddy White Party 2006."

salvaged, the appropriate course of action would be to voluntarily dismiss the complaint without prejudice under Rule 41 while Mr. Buzbee determines whether the claims have a reasonable factual basis—not to leave a fundamentally defective (and defamatory) complaint on the docket while Mr. Buzbee does the work he should have done before he commenced suit. *See Johnson v. Roadway Exp., Inc.*, 2006 WL 120242, at *3 (W.D.N.Y. Jan. 17, 2006) (imposing sanctions where plaintiff "had several warnings, in addition to those provided by defendant" that "there was no chance plaintiff's claims would have succeeded"); *see also Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986) (affirming sanctions order where "[p]laintiff's complaint was entirely frivolous, and … was made as part of a conscious effort to harass" the defendant).

**Fourth**, for months now, Mr. Buzbee has inexplicably declined to seek admission to this Court *pro hac vice*. In the eleven weeks since he initiated this proceeding, Mr. Buzbee has filed a complaint in this matter that was signed solely by him using an "/s" signature; signed the amended complaint (alongside Ms. Curis) adding Mr. Carter as a defendant; and noticed a motion for Plaintiff to proceed anonymously, accompanied by a supporting brief and a declaration, once again signed only by him. Most recently, on December 10, 20, and 31, Mr. Buzbee filed letters, again signed only by him. (Dkt. Nos. 44, 50, 57.) And, though in his December 20 letter Mr. Buzbee contended that he is admitted to practice in the Eastern District of New York and "intend[s] to apply for reciprocal admission" to this Court, he has yet to even seek interim admission *pro hac vice* while his application for admission is pending—assuming such an application was even submitted—despite claiming to be "lead counsel in this and other similar cases pending in this

District." (Dkt. No. 50 at 3.)[15]  Whatever Mr. Buzbee's motive for failing to seek admission for months, it only compounds the misconduct here.

*Finally,* the nature of the allegations here warrant sanctions.  This is not a contract dispute or a patent case.  This is an allegation of child rape.  To sign a pleading accusing someone of such a horrific crime without adequately vetting the allegation—particularly when the defendant's prominence means that the allegation will be repeated in headlines across the world—is deeply wrong and unethical.  If lawyers do not face consequences for such a cavalier effort to destroy another person's reputation and inflict emotional harm on his loved ones, that tactic will proliferate.

Together, these factors justify a strong sanction.  To that end, Mr. Carter respectfully requests that the Court dismiss the FAC and impose monetary sanctions against Mr. Buzbee and the Buzbee Law Firm.  *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417-18 (S.D.N.Y. 2003) (court can exercise "discretion to dismiss an action with prejudice as a sanction pursuant to Rule 11") (collecting cases); *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (holding "[d]ismissal is a legitimate sanction under Rule 11" and affirming such dismissal because claims were "designed primarily to harass"); *Perry v. Goord*, 2009 WL 2580324, at *10–11 (W.D.N.Y. Aug. 18, 2009) (dismissing under Rule 11 where "the continued prosecution of the Complaint here was for an improper purpose, to harass defendants[,] and put into question the factual basis for the allegations…."). Dismissal is appropriate because the FAC

---

[15]    In the ***fifteen*** other cases pending in this District that Mr. Buzbee has filed against Mr. Combs on behalf of various Jane and John Does, like he has done here, he has signed every document that has been filed—with the exception of two letters across all 15 cases—despite not being admitted to this Court or seeking admission *pro hac vice*. *See, e.g.*, *Doe v. Combs et al.*, No. 1:24-cv-07772 (S.D.N.Y.); *Doe v. Combs et al.*, No. 1:24-cv-07776 (S.D.N.Y.); *Doe v. Combs et al.*, 1:24-cv-07778 (S.D.N.Y.); *Doe v. Combs et al.*, 1:24-cv-07774 (S.D.N.Y.).

was not the product of a reasonable inquiry into the facts.  And a monetary sanction would ensure some measure of deterrence of this sort of conduct in the future.  That sanction could take the form of reimbursing Mr. Carter for his attorneys' fees and costs incurred in defending against this action.

## **CONCLUSION**

For the reasons stated above, this Court should impose sanctions under Rule 11(c).  Should the Court conclude that an award of fees and costs is appropriate, Mr. Carter respectfully requests that the Court direct the parties to confer regarding a briefing schedule for the calculation of that award.

DATED: January 8, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _____

Alex Spiro
295 Fifth Avenue
New York, New York 10061
(212) 849-7000

*Attorney for Defendant Shawn Carter*

23

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(D) of Judge Analisa Torres' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and does not exceed 30 pages, as required by Judge Torres' Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 8th day of January, 2024 in New York, New York.


_/s/  Alex Spiro_
Alex Spiro