**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, | Case No. 1:24-CV-07975-AT |
|         Plaintiff, | |
|    v. | |
| SEAN COMBS, DADDY'S HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a/COMBS GLOBAL f/k/a COMBS ENTERPRISES, LLC, BAD BOY ENTERTAINMENT HOLDINGS, INC., BAD BOY PRODUCTIONS HOLDINGS, INC., BAD BOY BOOKS HOLDINGS, INC., BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT LLC, BAD BOY PRODUCTIONS LLC, ORGANIZATIONAL DOES 1-10, AND SHAWN CARTER, | |
|         Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT SHAWN CARTER'S MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................ 1

FACTS .................................................................................................. 4

    a.   Background ................................................................... 4

    b.   Carter's Efforts to Intimidate the Buzbee Firm .............. 5

    c.   The NBC Interview ........................................................ 6

    d.   Procedural History ....................................................... 7

    e.   This Motion .................................................................. 8

LEGAL STANDARD ............................................................................. 9

ARGUMENT ........................................................................................ 10

I.    Carter's Lawyers Do Not and Cannot Show That Buzbee's Investigation
    Was Inadequate. ............................................................................. 12

    A.   None of the Factual Issues Raised by Carter's Lawyers Justify Sanctions .......... 15

II.   Carter's Motion Should Be Denied Because It Seeks to Evade Rule 12's
    Requirements and Impermissibly Avoids Discovery ...................... 20

III.  Carter's Lawyers Should Be Ordered To Pay Plaintiff's Attorneys' Fees for
    Opposing This Frivolous Motion ................................................... 22

CONCLUSION .................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
  2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022)........................................................................20

*Abdelhamid v. Altria Group, Inc.*,
  515 F. Supp. 2d 384 (S.D.N.Y. 2007)..................................................................................10

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  2013 WL 1746062 (S.D.N.Y. Apr. 23, 2013)........................................................................10

*Archie Comic Publ'ns, Inc. v. DeCarlo*,
  2000 WL 1731341 (S.D.N.Y. Nov. 21, 2000)......................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................21

*Calloway v. Marvel Entertainment Group*,
  854 F.2d 1452 (2d Cir. 1988), *rev'd on other grounds sub nom., Pavelic &*
  *LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989) .......................................21, 22

*Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*,
  101 F. Supp. 2d 236 (S.D.N.Y. 2000), *aff'd*, 24 F. App'x 16 (2d Cir. 2001)........................22

*China AI Capital Limited v. DLA Piper LLP*,
  2023 WL 5016492 (S.D.N.Y. July 28, 2023) .......................................................................15

*City of Yonkers v. Otis Elevator Co.*,
  844 F.2d 42 (S.D.N.Y. 1988)...............................................................................................20

*Clark v. Edison*,
  881 F. Supp. 2d 192 (D. Mass. 2012) ..................................................................................11

*E. Gluck Corp. v. Rothenhaus*,
  252 F.R.D. 175 (S.D.N.Y. 2008) .......................................................................................3, 12

*Fox v. Boucher*,
  794 F.2d 34 (2d Cir. 1986)...................................................................................................20

*G-I Holdings, Inc. v. Baron & Budd*,
  2002 WL 1934004 (S.D.N.Y. Aug. 21, 2002) ......................................................................14

*Galin v. Hamada*,
  283 F. Supp.3d 189 (S.D.N.Y. 2017)....................................................................................19

*Gerardo Garcia v. Marcy Bryan Croft, Roc Nation LLC, MJ Legal, P.A., Jessica Santiago, Quinn Emanuel Urquhart & Sullivan, LLP*, Cause No. 2024-87692 (Tex. Dist. Harris Cnty. Dec. 18, 2024) ...........................................................................6

*Goldenberg v. St. Barnabas Hosp.*,
2005 WL 426701 (S.D.N.Y. Feb. 22, 2005)...................................................................14

*Jawbone, LLC v. Donohue*,
2002 WL 1424587 (S.D.N.Y. June 28, 2002) ........................................................21

*Jeffreys v. Rossi*,
275 F. Supp. 2d 463 (S.D.N.Y. 2003)..........................................................9, 14, 15

*Johnson v. Roadway Exp., Inc.*,
2006 WL 120242 ................................................................................................20

*Jose Maldonado v. Marcy Bryan Croft, Roc Nation LLC, MJ Legal, P.A., Jessica Santiago, Quinn Emanuel Urquhart & Sullivan, LLP* (Tex. Dist. Harris Cnty. Dec. 18, 2024)...............................................................6

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010)................................................................................10

*Lane v. Am. Airlines, Inc.*,
2024 WL 1200074 (E.D.N.Y. Mar. 20, 2024) ...................................................11

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ......................................................22

*Levine v. FDIC*,
2 F.3d 476 (2d Cir. 1993)...................................................................................20

*LoPorto v. County of Rensselaer*,
2018 WL 4565768 (N.D.N.Y. Sept. 24, 2018) ..................................................19

*Marina Management Servs., Inc. v. Vessel My Girls*, .............................................21
202 F.3d 315, 325-26 (D.C. Cir. 2000)

*New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*,
2022 WL 874783 (S.D.N.Y. Mar. 24, 2022) ....................................................10

*O'Brien v. Alexander*,
101 F.3d 1479 (2d Cir. 1996).............................................................................9

*People v. Spicola*,
16 N.Y.3d 441 (2011) ........................................................................................12

*Perry v. Goord*,
  2009 WL 2580324 (W.D.N.Y. Aug. 18, 2009) ..................................................22

*Rodick v. City of Schenectady*,
  1 F.3d 1341 (2d Cir. 1993)...........................................................................10

*Safe-Strap Co, Inc. v. Koala Corp.*,
  270 F. Supp. 2d 407 (S.D.N.Y. 2003).............................................................21

*Saltz v. City of New York*,
  129 F. Supp.2d 642 (S.D.N.Y. 2001).............................................................20

*Sanderson v. Leg Apparel LLC*,
  2024 WL 498094 (S.D.N.Y. Feb. 8, 2024)..................................................10, 16

*The Carlton Group, Ltd. v. Tobin*,
  2003 WL 21782650 (S.D.N.Y. July 31, 2003) .............................................9, 19

*Usherson v. Bandshell Artist Mgmt.*,
  2020 WL 3483661 (S.D.N.Y. June 26, 2020) ...................................................15

## Other Authorities

22 NYCRR 1200.00, Rule 1.1(c)(2) .................................................................13

Federal Rule of Civil Procedure 11 .......................................1, 3, 10, 12, 22

Federal Rule of Civil Procedure 12 ..............................................1, 11, 20

Plaintiff and her counsel, Anthony G. Buzbee and the Buzbee Law Firm (together, "Buzbee"), respectfully submit this memorandum of law in opposition to the motion of defendant Shawn Carter ("Carter"), under Rule 11 of the Federal Rules of Civil Procedure, to dismiss plaintiff's amended complaint and to award him monetary sanctions against Buzbee.[1]

## PRELIMINARY STATEMENT

Carter's motion amounts to an outrageous and unprecedented attempt to silence a plaintiff who alleges that 24 years ago, when she was 13 years old, defendants Carter and Combs raped her.  Carter's celebrity status does not entitle him to special treatment by the courts, and certainly not on the mere say-so of his lawyers, as this Court has recognized.  Kasowitz Decl. Ex. B at 4 ("The Court will not fast-track the judicial process merely because counsel demands it.").

Relying solely on what his lawyers say are inaccurate details in plaintiff's account of this horrific assault, Carter asks this Court to ignore the Federal Rules of Civil Procedure and, as a sanction for what his lawyers falsely say was Buzbee's failure to investigate, summarily dismiss plaintiff's well-pleaded FAC in its entirety, which would run roughshod over her right to take discovery and prove her claims before a jury.  Even assuming *arguendo* that plaintiff misremembers details from 24 years ago, that is no basis for evading the requirements of Rule 12 by dismissing her FAC under Rule 11 based solely on purported factual disputes concerning those details.  This is especially true where, as here, the purported factual disputes concern details arising solely from the memory of a victim—here, a child victim—of sexual abuse,

---

[1]    Submitted herewith in opposition to the motion are the declaration of Marc E. Kasowitz, dated January 22, 2025 ("Kasowitz Decl.") and the declaration of Anthony G. Buzbee, dated January 22, 2025 (the "Buzbee Decl." or "Buzbee Declaration").  Unless otherwise noted, references to "Ex. __" are to exhibits to the declarations.  A copy of the First Amended Complaint ("FAC") (ECF 28) is annexed to the Kasowitz Decl. as Exhibit A.  A copy of this Court's December 26, 2024 Order (ECF 53) is annexed to the Kasowitz Decl. as Exhibit B.  All emphasis is supplied unless otherwise indicated.

which, it is well established, typically causes memory lapses.  In fact, Carter's lawyers

themselves got flatly wrong one of the details they falsely claim undercut plaintiff's claim,

asserting that at the time of the rape, Carter's co-defendant Combs did not own the house where

the sexual assault may have taken place.  In fact, Combs did own the house.  *See infra* at pages

17-18.

Carter's lawyers' purported certainty about what happened to plaintiff is thus utterly

unjustified.  The NBC report, on which they principally rely, itself acknowledged that its

purported findings "do not necessarily mean the allegations are false."  ECF 62-1 at 3.  That

acknowledgment alone, under applicable law, removes any possible justification for Rule 11

sanctions here.  In any event, when stripped of their salacious rhetoric, Carter's lawyers

challenge plaintiff's allegations (and recollection) regarding: watching the MTV VMA awards

show on a "Jumbotron"; speaking to limousine drivers during the show; the location of the after-

party at which she was raped; speaking to a celebrity at the party; and plaintiff's father picking

her up after she was raped.  As shown further below, none of those purported challenges are

meritorious,[2] and none come close to proving, as they must to justify *any* Rule 11 sanction—let

alone the most drastic sanction of all, dismissal—that Carter did not rape plaintiff or that, as

---

[2]     Among other things: in fact, there were Jumbotrons not far from the VMA show; Carter's
lawyers' assertion that the limousine drivers were "cordoned off" proves nothing; that Carter
attended one after-party does not mean he did not attend others; and plaintiff's father could very
well simply not have remembered that he picked her up 24 years earlier, particularly given that
she did not tell him where she had gone or what had happened to her (reflecting a reticence also
not uncommon among sexual abuse victims).  *See infra* at page 11.  Certainly, on this pre-
discovery record, there is no basis for assuming the truth of Carter's lawyer's assertions.  To the
contrary, at this stage of the litigation, plaintiff's allegations must be assumed to be true, and
Carter's lawyer's assertions, if they raise anything at all, at most raise only factual disputes that
may not be resolved on this pre-discovery record.

Carter's lawyers also falsely say, Buzbee did not sufficiently investigate and was not permitted to rely on plaintiff's unequivocal recollection that Carter raped her.

As the courts have made clear, Rule 11 sanctions will be imposed only in "extraordinary circumstances," *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178, 179 (S.D.N.Y. 2008)—of which celebrity status is not one.  Here, there are no circumstances at all, let alone extraordinary circumstances, justifying sanctions against Buzbee.  In fact, it is out of "judicial concern for encouraging zealous advocacy" that the courts "maintain a high bar for establishing a Rule 11 violation."  *Id.*  But over-the-top "zealous advocacy" is precisely what, as this Court has also recognized, Carter's lawyers are engaging in—of which this motion is the latest and worst manifestation:

> Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client.

(Kasowitz Decl. Ex. B at 4.)

Contrary to Carter's lawyers' baseless assertions, Buzbee included the allegations against Carter in the FAC only after an investigation, including numerous interviews of plaintiff and vetting of the information plaintiff provided, that more than satisfied Rule 11's requirements. On the other hand, Carter's lawyers' motion—which they filed even in the face of this Court's "discourag[ing]" them from doing so (Kasowitz Decl. Ex. B at 4)—is nothing more than an improper attempt to intimidate plaintiff and her counsel and is factually and legally meritless. If anyone has violated Rule 11, it is Carter and his lawyers who, under Rule 11(c)(2), should be sanctioned by awarding plaintiff and her counsel the attorneys' fees and costs incurred in having to respond to their motion.

## FACTS

### a. *Background*

As set forth herein, and in the accompanying Buzbee Declaration, plaintiff's counsel's pre-filing investigation was thorough and satisfied Rule 11. In early October 2024, Jane Doe was referred to Buzbee and the Buzbee Firm by AVA Law Group ("AVA Law"), plaintiff's co-counsel in this action. (*See* Buzbee Decl. ¶ 5.) Before that referral, attorneys at AVA Law investigated the veracity of plaintiff's allegations. (*Id*. ¶ 6.) Plaintiff went through AVA Law's intake process, which the Buzbee Firm understood to include numerous interviews, including an interview by at least one and possibly more attorneys. (*Id*.) Only when the attorneys at AVA Law were convinced that plaintiff's allegations were true did they refer plaintiff to Buzbee. (*Id*.) In addition, the attorneys at AVA Law prepared an initial version of the original complaint. (*Id*.) Two attorneys at the Buzbee Firm interviewed the plaintiff, fact-checked various aspects of plaintiff's complaint, and revised the complaint prior to its filing. (*Id*. ¶ 7.)

Prior to filing the FAC and naming Carter as a defendant, Mr. Buzbee and other firm attorneys engaged in further rigorous due diligence to investigate the veracity and legal viability of plaintiff's claim. (*Id*.) The Buzbee Firm's efforts included, among other things, intensive interviews amounting to cross-examinations of plaintiff by three to five attorneys (both alone and in teams) and research and verification of numerous details in plaintiff's account. (*Id*.) The Buzbee Firm ran a background check on plaintiff and retained a retired police detective to research and confirm other aspects of plaintiff's account. (*Id*.) The Buzbee Firm also conducted research to confirm the close connection between Carter and Combs, which further bolstered the conclusion that plaintiff's allegations were plausible, credible, and warranted legal recourse. (*Id*. ¶ 8.)

Plaintiff alleges that on September 7, 2000, she, then 13 years old, went to Radio City Music Hall in New York City to try to attend the VMAs. (Kasowitz Decl. Ex. A ¶ 38). As plaintiff did not have a ticket to the show, she watched the VMAs on a Jumbotron outside. (*Id.* ¶ 40.) In hopes of talking her way into either the VMAs or an after-party, plaintiff also approached and spoke to several limousine drivers parked nearby the VMAs, one of whom claimed to work for Combs and told her that plaintiff "fit what Diddy was looking for," and he invited her to an after-party. (*Id.* ¶¶ 40-41.) Later that evening, the driver brought plaintiff to an after-party at what plaintiff "believed to be a large white residence with a gated U-shaped driveway." (*Id.* ¶¶ 43-44.) Inside the party, plaintiff recognized and spoke to several celebrities. (*Id.* ¶ 46.) After accepting a drink from a member of the waitstaff, plaintiff began to feel woozy and lightheaded, at which point she found an empty bedroom to rest in, but soon after Combs, Carter, and another individual entered the room, at which time Combs grabbed her and said "You are ready to party!" (*Id.* ¶¶ 49-53.) Thereafter, both Carter and Combs held plaintiff down and raped her. (*Id.* ¶¶ 54-56.) Plaintiff was able to escape after fighting back, and she ultimately made her way to a gas station where she called her father, who then picked her up shortly before dawn. (*Id.* ¶¶ 57-60.)

### b. *Carter's Efforts to Intimidate the Buzbee Firm*

Since the initiation of this lawsuit, more than two dozen past and current employees and clients of the Buzbee Firm have reported being approached and harassed by individuals claiming to be investigating Buzbee, going so far as to urge the clients to bring meritless lawsuits against Buzbee, including regarding his attempts to get justice for Carter and Combs' victims, and offering money to do so. (Buzbee Decl. ¶ 16.) This has resulted in several frivolous lawsuits against Buzbee. (*Id.* ¶ 18.) In filings in this action, Carter's lawyers have repeatedly referred to

these lawsuits to discredit Buzbee.[3]  Based on the investigative efforts made by the Buzbee Firm

and others, the Buzbee Firm has filed several cases for barratry on behalf of its clients who were

offered money to file a claim against the Buzbee Firm.[4]  (*Id.*¶ 18.)  These cases detail the illegal

activities of the investigators and those behind them, who are believed to be Carter, through his

entertainment company, Roc Nation, and Carter's lawyers.  (*Id.*¶¶ 17, 18.)

      **c.**  ***The NBC Interview***

      On December 13, 2024, five days after naming Carter as a defendant, plaintiff sat for an

interview with NBC to recount what she called the "catastrophic event" that "would ruin her

life." (ECF 62-1 at 1.)  When questioned by NBC about what it claimed were some potential

inconsistencies in her allegations, plaintiff told NBC that she "stands by her allegations overall."

NBC itself acknowledged that "[t]he inconsistencies in her account of the incident—alleged to

have happened 24 years ago—do not necessarily mean that the allegations are false."  (*Id.* at 3.)

      NBC noted that plaintiff's father purportedly did not recall picking her up from the gas

station the next morning, as plaintiff alleges, despite it being approximately a five-hour drive.

---

[3]    Carter's lawyers' strategy is transparent—instead of litigating this case on the merits, they have chosen to attack Buzbee's ethics and motives.  Indeed, Carter's fixation on Buzbee is evidenced by his very first motion in this matter, in which Carter names or refers to Buzbee no fewer than 75 times.  (ECF. 38).  This inappropriate and unprofessional bullying tactic persists, despite this Court's admonition in its December 26 order. (Kasowitz Decl. Ex. B at 4) ("Since Carter's attorney first appeared in this case seventeen days ago, he has submitted a litany of letters and motions attempting to impugn the character of Plaintiff's lawyer, many of them expounding on the purported "urgency" of this case….Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client. The Court will not fast-track the judicial process merely because counsel demands it.").

[4]    *Gerardo Garcia v. Marcy Bryan Croft, Roc Nation LLC, MJ Legal, P.A., Jessica Santiago, Quinn Emanuel Urquhart & Sullivan, LLP*, Cause No. 2024-87692 (Tex. Dist. Harris Cnty. Dec. 18, 2024); *Jose Maldonado v. Marcy Bryan Croft, Roc Nation LLC, MJ Legal, P.A., Jessica Santiago, Quinn Emanuel Urquhart & Sullivan, LLP*, Cause No. 2025-00577 (Tex. Dist. Harris Cnty. Jan. 3, 2025).

(*Id.* at 7.)  Plaintiff told NBC that she stood by her claim and that her father may have

misremembered.  (*Id.*)  During the interview, plaintiff told NBC that musician Benji Madden was

one of the celebrities she spoke to at the party in question, but NBC determined that Madden was

on tour in the Midwest at that time.  In response, plaintiff explained: "Honestly, what is clearest

is what happened to me and the route that I took to what happened to me.  Not all of the faces

there are as clear…I may have made a mistake in identifying."  (*Id.*)

Finally, NBC also reported that Carter and Combs had been photographed at VMA after-

parties in Manhattan that night, and neither of the venues of those parties matched plaintiff's

description of the house she was raped in.  (*Id.* at 7-8.)  However, NBC also noted that "[Combs'

and Carter's] whereabouts for the entire evening are unclear" and "[i]t is not clear what time

those images were taken, or if Combs and Carter attended any other after-parties."  (*Id.* at 3, 7.)

Plaintiff also explained that she "didn't know exactly where we were going or even how long it

took."  (*Id.* at 8.)  Mr. Buzbee told NBC: "We have attempted to confirm the correct location….

[Plaintiff] has been very specific and detailed about the description of the venue she says she was

taken to…We won't speculate on whether there was an after-after party, because again, she

doesn't know that."  (*Id.*)

As Buzbee also stated to NBC, plaintiff "remains fiercely adamant that what she has

stated is true, to the best of her memory."  (*Id.* at 4.)  Buzbee further explained: "[W]e always do

our best to vet each claim made, just as we did in this case."  (*Id.*)  Plaintiff also told NBC: "You

should always fight for what happened to you…. You should always advocate for yourself and

be a voice for yourself.  You should never let what somebody else did ruin or run your life.  I just

hope I can give others the strength to come forward like I came forward."  (*Id.* at 5.)

### d.  *Procedural History*

The original complaint in this matter was filed anonymously on October 20, 2024,

against Combs and other corporate defendants. (ECF 1). Plaintiff filed a motion to proceed in the litigation anonymously on October 24, 2024, (ECF 24-27), which this Court provisionally granted on November 6, 2024 (ECF 28). The complaint was amended on December 8, 2024, to add Carter to the allegations of sexual assault and abuse. (ECF 29). Again, plaintiff sought to proceed anonymously. (ECF 32). On December 9, 2024, Carter, through his counsel, filed a motion to deny plaintiff's request to proceed anonymously. (ECF 40).

On December 13, 2024, Carter's lawyers filed a pre-motion letter informing the Court of their intent to immediately file for sanctions and requested a shortening of the 21-day safe harbor provision in Rule 11. (ECF 46). Then on December 18, 2024, Carter's lawyers filed an "Emergency Motion" to strike the FAC and dismiss Carter from the action. (ECF 47-49).

On December 26, 2024, the Court issued an order admonishing Carter's lawyers for repeatedly attacking Mr. Buzbee's ethics and motives, denying Carter's "Emergency Motion" to strike, and denying Carter's attempt to shorten the safe harbor period to one day:

> Since Carter's attorney first appeared in this case seventeen days ago, he has submitted a litany of letters and motions attempting to impugn the character of Plaintiff's lawyer…. Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client. The Court will not fast-track the judicial process merely because counsel demands it.

(Kasowitz Decl. Ex. B at 4.) Despite the Court having admonished Carter's lawyers in its December 26 Order that "the Court discourages" the filing of their Rule 11 motion "without first seeking leave of court" (*id.*), they nonetheless did so. (ECF 60-62).

**e. *This Motion***

In a December 13, 2024, pre-motion letter, Carter's lawyers stated that they intended to immediately file this motion for sanctions, and requested an expedited briefing schedule from

21 days to 1 day. (ECF 46 at 3.) On December 17, 2024, Mr. Buzbee received a copy of

Carter's Rule 11 motion.

On December 20, 2024, Mr. Buzbee filed his opposition (ECF. 50) to Carter's lawyers'

pre-motion letter, arguing that any Rule 11 motion – on allegations concerning a child rape

victim – would be "frivolous" and "would itself be subject to a Rule 11 motion in response." (*Id.*

at 2.) Buzbee pointed Carter's lawyers to authority recognizing that a victim who was a minor at

the time of a sexual assault could not be expected to have "exacting recall and command of all

relevant facts." (*Id.*)

## LEGAL STANDARD

Carter's lawyers do not come close to establishing that sanctions are warranted here.

"[S]anctions may not be imposed unless a particular allegation is utterly lacking in factual

support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (quoting Rule 11 Advisory

Committee Note); *The Carlton Group, Ltd. v. Tobin*, 2003 WL 21782650, at *2 (S.D.N.Y.

July 31, 2003) ("Sanctions should only be imposed where it is patently clear that a claim has

absolutely no chance of success."). And it is also established that "plaintiff's counsel is entitled

to rely on the representations of their client, without having to assess his credibility; credibility is

solely within the province of the finder of fact." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 481

(S.D.N.Y. 2003) (citations omitted).

Moreover, "[w]hether to impose a sanction for a Rule 11(b) violation is committed to the

sound discretion of the district court." *New Oriental Enter., PTE, Ltd. v. Mission Critical Sols.

LLC*, 2022 WL 874783, at *5 (S.D.N.Y. Mar. 24, 2022). "Because Rule 11 sanctions represent a

drastic, extraordinary remedy, courts seldom issue them and then only as a (very) last resort."

*Anderson News, L.L.C. v. Am. Media, Inc.*, 2013 WL 1746062, at *4 (S.D.N.Y. Apr. 23, 2013)

(citation omitted). Furthermore, it is well-settled that courts should not impose Rule 11 sanctions

9

that may discourage counsel's obligation to advocate zealously on behalf of its client. *See Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) ("Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.") (citation omitted); *Sanderson v. Leg Apparel LLC*, 2024 WL 498094, at *2 (S.D.N.Y. Feb. 8, 2024) ("Courts maintain a 'high bar' for establishing a Rule 11 violation given judicial concern for encouraging 'zealous advocacy'") (citation omitted).

Finally, courts must "'resolve all doubts in favor of the signer of the pleading.'" *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

## ARGUMENT

Under any standard, and certainly not under the "high bar" and "very last resort" of Rule 11, there is no basis here to impose any sanction, let alone dismissal, against plaintiff or her counsel. What Carter's motion amounts to is an outrageous and unprecedented attempt to silence a plaintiff who alleges that 24 years ago, when she was 13 years old, Carter and his co-defendant Combs raped her. Carter's celebrity status does not entitle him to special treatment by the courts, and certainly not on the mere say-so of his lawyers, as this Court has recognized. *See* Kasowitz Decl. Ex. B at 4 ("The Court will not fast-track the judicial process merely because counsel demands it.").

Relying solely on what his lawyers say, principally based on an NBC report, are inaccurate details in her account of this horrific assault, Carter asks this Court to ignore the Federal Rules of Civil Procedure and, as a sanction for what his lawyers falsely say was Buzbee's failure to investigate, summarily dismiss plaintiff's well-pleaded FAC in its entirety, which would run roughshod over her right to take discovery and prove her claims before a jury.

Even assuming *arguendo* that plaintiff misremembers details from 24 years ago, that is no basis for evading the requirements of Rule 12 by dismissing her FAC under Rule 11 based solely on purported factual disputes concerning those details. This is especially true where, as here, the purported factual disputes arise solely from the memory of a victim—here, a child victim—of sexual abuse, which, it is well established, typically causes memory lapses. *See* Jim Hopper, Ph.D, *Why Incomplete Sexual Assault Memories Can Be Very Reliable*, Psychology Today (Sept. 28, 2018) ("Yes, peripheral and less central details can get distorted more easily than many people realize. But decades of research have shown that the most central details are not easy to distort…."), https://www.jimhopper.com/pdf/hopper_sexual_assault_and_the_brain_all _posts.pdf; *see also Clark v. Edison*, 881 F. Supp. 2d 192, 217 (D. Mass. 2012) (permitting Dr. Hopper to testify regarding repressed memory theory in child sexual abuse case).

Indeed, it is for this reason that courts routinely permit expert testimony to explain various syndromes that impact a victim's memory and other behaviors. *See Lane v. Am. Airlines, Inc.*, 2024 WL 1200074, at *20 (E.D.N.Y. Mar. 20, 2024) (permitting expert testimony to explain, *inter alia*, that "victims of … sexual assault … may dissociate during the crime or continue to dissociate afterward" and that "[t]hese same processes…also affect the victim's memory of the traumatic incident, leading to severe memory deficits") (internal citations and quotations omitted); *People v. Spicola*, 16 N.Y.3d 441, 465 (2011) ("[W]e have long held evidence of psychological syndromes affecting certain crime victims to be admissible for the purpose of explaining behavior that might be puzzling to a jury" such as "delayed reporting, recantation, and inconsistency") (internal citations and quotations omitted).

As the courts have made clear, Rule 11 sanctions will be imposed only in "extraordinary circumstances," *E. Gluck Corp.*, 252 F.R.D. at 178—of which celebrity status is not one. Here,

there are no circumstances at all, let alone extraordinary circumstances, justifying sanctions against Buzbee. In fact, it is out of "judicial concern for encouraging zealous advocacy" that the courts "maintain a high bar for establishing a Rule 11 violation." *Id.* But over-the-top "zealous advocacy" is precisely what, as this Court has also recognized, Carter's lawyers are engaging in, of which this motion is the latest and worst manifestation:

> Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client.

(Kasowitz Decl. Ex. B at 4.)

Contrary to Carter's lawyers' inflammatory and ad hominem attacks, Buzbee included the allegations against Carter in the FAC only after an investigation, including numerous interviews of plaintiff and vetting of the information plaintiff provided, that more than satisfied Rule 11's requirements. On the other hand, Carter's lawyers' motion—which they filed in the face of this Court's "discourag[ing]" them from doing so (Kasowitz Decl. Ex. B at 4)—is nothing more than an improper attempt to intimidate plaintiff and her counsel and is factually and legally meritless. If anyone has violated Rule 11, it is Carter's lawyers, who should be sanctioned by awarding plaintiff and her counsel the attorneys' fees and costs incurred in having to respond to their motion.[5]

## I.    Carter's Lawyers Do Not and Cannot Show That Buzbee's Investigation Was Inadequate.

Buzbee's investigation unquestionably passes muster under Rule 11, and his refusal to withdraw plaintiff's claim against Carter unquestionably is justified and indeed mandated by

---

[5]    Carter's lawyers' misconduct also includes shamefully attempting to destroy Buzbee's fine reputation by baselessly arguing (Def. Mem. 19-20) that Buzbee is a repeat offender of Rule 11. That allegation, for which they cite no decision by any court, is provably false. Indeed, the only purported basis for their argument is a case in which they concede that Buzbee

applicable professional ethics[6]—given that Carter's lawyers challenge that investigation based

principally on an NBC News report questioning certain details in plaintiff's allegations, but NBC

itself acknowledged that its report did not establish that plaintiff's claim was false. (*See* ECF 62-

1 at 3). Moreover, when Carter's lawyers relied on their own investigation, concerning the

ownership of the house where the rape may have taken place, *they* got the details wrong. *See*

*infra* at pages 17-18; *see also* Kasowitz Decl. Ex. C (showing that Combs owned the property in

question beginning in 1998, contrary to Carter's lawyers' representation that he did not own it

until 2001).

    As discussed above, both the Buzbee Firm and co-counsel who referred plaintiff to

Buzbee, AVA Law Group, performed extensive diligence on plaintiff and her claims, including

background checks, intensive interviews, and research and verification of numerous details,

including by a retired police detective.[7] Only after all of this was done, and after Mr. Buzbee

---

voluntarily amended the pleading at issue to correct the two mistaken factual assertions. Carter's
lawyers also disparage Buzbee by baselessly arguing (Def. Mem. 21) that he is attempting to
avoid sanctions by failing to apply for *pro hac vice* admission. That is blatantly false. In any
event, as Mr. Buzbee advised the Court in a December 20, 2024, letter (ECF 50 at 3), he is
admitted to practice in the Eastern District of New York, and is applying for reciprocal
admission to the Southern District. Mr. Buzbee is aware of no requirement that he apply for
interim *pro hac vice* admission while his application for reciprocal admission is pending.
Of course, if the Court would prefer, Mr. Buzbee will apply for interim *pro hac vice* admission in
short order.

[6]      *See* Rules of Professional Conduct [22 NYCRR 1200.00] Rule 1.1(c)(2) ("a lawyer shall
not intentionally … prejudice or damage the client during the course of the representation except
as permitted or required by these Rules").

[7]      While Mr. Buzbee conducted his own investigation into plaintiff's allegations, Carter's
lawyers' suggestion (Def. Mem. 18) that Mr. Buzbee was not permitted to rely on the work of
other attorneys is also baseless: "The rule by its terms does not require signing counsel to have
personally performed the inquiry….What is crucial under the rule is not who makes the inquiry,
but whether as a result the attorney has acquired knowledge of facts sufficient to enable him to
certify that the paper is well-grounded in fact….The duty of inquiry therefore should be regarded
as nondelegable but capable of being satisfied by the attorney's acquisition of the product of

and the firm determined that plaintiff's allegations were credible, was the FAC filed alleging, among other things, that on September 7, 2000, Carter and Combs drugged and raped her at an after-party following the VMAs.

It is well-established that attorneys are "entitled to rely on the representations of their client, without having to assess his credibility [because] 'credibility is solely within the province of the finder of fact.'"); *G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1934004, at \*13, \*14 (S.D.N.Y. Aug. 21, 2002) ("Rule 11 sanctions should only adhere if [the party] was satisfied that the statements [of a confidential witness] and other evidence were not competent or are otherwise untrustworthy.") (cleaned up). As there was nothing unreasonable about plaintiff's account of the night in question, there is nothing unreasonable about counsel believing her allegations. Furthermore, establishing the reasonableness of counsel's investigation is the fact that, in each of the pre-filing interviews, plaintiff appeared "consistent and credible in [her] account" of what occurred on the night in question. (*See* Buzbee Decl. ¶¶ 6,7,9.) *See Jeffreys*, 275 F. Supp. 2d at 481 (finding that plaintiff's counsel undertook reasonable pre-filing inquiry where, "[b]efore proposing the Third Amended Complaint, plaintiff's counsel conducted numerous interviews with their client and found him to be consistent and credible in his account"). Thus, because counsel's pre-filing investigation was thorough and reasonable, Carter's motion should be denied.[8] Moreover, NBC News' own acknowledgment that its report,

---

inquiry conducted by others." William W. Schwarzer, *Sanctions Under the New Federal Rule 11-A Closer Look*, 104 F.R.D 181, 187 (1985).

[8]    As Buzbee has fully complied with Rule 11, there is no truth to Carter's lawyers' contention (Def. Mem. 18) that Buzbee "conceded" a failure to vet plaintiff's allegations or that he has sought to pass blame to referring counsel. Rather, Buzbee told NBC that he and referring counsel had already thoroughly vetted plaintiff's claims, and that he is continuing to do so, as any reasonable attorney would. *See* ECF 62-1 at 4. Nor is there any truth to Carter's lawyers' argument (Def. Mem. 22) that Buzbee filed this action for the improper purpose of destroying Carter's reputation. To the contrary, the FAC was filed to vindicate plaintiff's rights and to

on which Carter's lawyers principally rely, did not establish the falsity of plaintiff's claim, and

Carter's lawyers' own mistake concerning details on which they also rely—a mistake not made

by a sexual assault victim—unequivocally confirm that Buzbee correctly has refused to knuckle

under to their wrongful demand that he withdraw her claim.

### A.    None of the Factual Issues Raised by Carter's Lawyers Justify Sanctions

In any event, Carter's lawyers' purported certainty about what happened to plaintiff is

utterly unjustified.  When stripped of their salacious rhetoric, Carter's lawyers challenge only

plaintiff's allegations (and recollection) regarding: watching the MTV VMA awards show on a

"Jumbotron"; speaking to limousine drivers during the show; the location of the after-party at

which she was raped; speaking to a celebrity at the party; and plaintiff's father picking her up

after she was raped.  As shown below, none of those purported challenges are meritorious, and

none come close to proving, as they must to justify *any* Rule 11 sanction—let alone the most

drastic sanction of all, dismissal—that Carter did not rape plaintiff or that, as Carter's lawyers

also falsely say, Buzbee did not sufficiently investigate and was not permitted to rely on

---

recover damages for the trauma she has suffered.  In any event, the cases cited in support of their
baseless argument are wholly inapposite.  *See China AI Capital Limited v. DLA Piper LLP*, 2023
WL 5016492, at *8 (S.D.N.Y. July 28, 2023) (imposing monetary sanctions because "multiple
deficiencies…should have led counsel to conclude that [legal malpractice] claim had no chance
of success" and "neither Plaintiff nor its counsel could have reasonably believed that the
allegations in the Complaint…had evidentiary support," such that "Plaintiff's decision to
continue pursuing this legal-malpractice claim…is objectively unreasonable and can only be
viewed as an attempt to harass Defendants and cause reputational harm"); *Usherson v. Bandshell
Artist Mgmt.*, 2020 WL 3483661, at *1, 11 (S.D.N.Y. June 26, 2020) (sanctioning since-
disbarred attorney for "repeated violations of the Court's Orders," "repeated lies to the Court,
including under oath," and for admittedly conducting no investigation before filing Complaint"
containing "false allegation…that would have required dismissal of the lawsuit at its inception;"
attorney at issue was "one of the most frequently sanctioned lawyers, if not *the* most frequently
sanctioned lawyer, in the District," and "Judges in this District and elsewhere have spent untold
hours addressing [his] misconduct, which includes repeated violations of court orders and
outright dishonesty, sometimes under oath").

plaintiff's unequivocal recollection that Carter raped her. Certainly, on this pre-discovery record, these is no basis for assuming the truth of Carter's lawyer's assertions. To the contrary, at this stage of the litigation, plaintiff's allegations must be assumed to be true, and Carter's lawyer's assertions, if they raise anything at all, at most raise only factual disputes that may not be resolved on this pre-discovery record.

First, Carter's lawyers contest plaintiff's allegation that she watched the VMAs on a Jumbotron because, they claim, there was no Jumbotron at Radio City that night. But even assuming *arguendo* that this is a material fact, which it is not (*see, e.g.*, *Sanderson*, 2024 WL 498094, at *3 (declining to award sanctions because factual assertion at issue was "not a material misrepresentation")), Carter's lawyers fail to consider that plaintiff could have watched on a Jumbotron somewhere else, such as mere blocks away, in the Times Square area.

Second, Carter's lawyers claim to have debunked plaintiff's allegation that she approached limousine drivers in hopes of gaining entry to the VMAs or after-parties, because, they assert, the limousines were "cordoned off by police barricades, inaccessible to fans." (Def. Mem. 9.) But, as is plainly clear from the video and photos on which Carter's lawyers rely (ECF 62-3, 62-4), the small "limousine area" at the entrance to Radio City is not where limousines parked during the show, but rather is merely where they dropped off and picked up guests.[9] Thus, nothing about the photos and video proves that plaintiff did not "approach[] several limousine drivers parked nearby" (FAC ¶ 40), and the "limousine area" is thus irrelevant.

Third, with respect to plaintiff's allegation that the party at which she was raped took place "at what she believed to be a large white residence with a gated U-shaped driveway" (FAC

---

[9]    The video they rely on also shows that Combs arrived at the VMAs in a limousine, thus corroborating that allegation in the FAC. *See* https://www.youtube.com/watch?v=Xd0fMwltykA. *See also* Kasowitz Decl. Ex. D.

¶ 44), Carter's lawyers make the irrelevant argument that photographs show that he attended a party at a nightclub in New York, and that Combs was photographed at the Lotus Club, as well as another establishment in New York City. (Def. Mem. 9; ECF 62-1, 62-2, 62-3.) However, even the NBC report, on which Carter heavily relies, conceded that: "It is not clear what time those images were taken, or if Combs and Carter attended any other after-parties." (ECF 62-1 at 7.) In short, that Carter and Combs attended one or more after-parties does not mean that they did not attend the party at which they raped plaintiff.[10]

Carter's lawyers also argue that "public property records confirm that Combs did not own a residence at that time that matches [plaintiff's] description" (Def. Mem. 17), pointing to property records for 40 Hedges Bank Drive in East Hampton, New York, which purportedly reflect that Combs did not own this residence until 2001. (ECF 62-13, 62-14.) However, this argument fails for at least two reasons. First, plaintiff does not allege that the home she was taken to was owned by Combs. But in any event, Carter's lawyers' representation to the Court that Combs did not own 40 Hedges Bank Drive in 2000 is plainly false: property records reveal that Combs was first listed on a deed for 40 Hedges Bank Drive on March 13, 1998, and that he or a company owned by him owned the property until selling it on July 23, 2020. (*See* Kasowitz Decl. Ex. C.)[11] In fact, Comb's notorious White Parties, which Carter often attended, were held

---

[10]      Indeed, as plaintiff alleges, she was not picked up by the limousine driver until "later that evening," after she was waiting "for what seemed to her a long time." (FAC ¶ 43.) Carter has made no showing sufficient to warrant the belief that there is anything inconsistent between plaintiff's allegations and Carter attending a different party before going to the party at which he raped plaintiff.

[11]      On August 23, 2001, Combs transferred the property to his company 40 Hedges Realty Inc. (*See* Kasowitz Decl. Ex. C).

at this residence beginning in 1998,[12] including in July 2000, just two months before the rape[13] and in the following years.[14]

Fourth, with respect to Carter's lawyers' argument that musician Benji Madden was not in New York on the night in question (Def. Mem. 9), the FAC does not identify any of the celebrities plaintiff spoke to at the party. Rather, the FAC merely alleges that "Plaintiff recognized many celebrities … and talked to several of the celebrities that she recognized." (FAC ¶ 46.) Carter's argument stems not from what is alleged in the FAC, but from the post-filing interview plaintiff gave to an NBC News reporter. It is utterly irrelevant that plaintiff may have subsequently misremembered that Madden was one of the celebrities she interacted with, especially given that the FAC did not identify any of the celebrities plaintiff spoke to, and her misremembering, if that is what it was, in no way renders her recollection of the traumatic night not credible.

Fifth, Carter's lawyers take issue with plaintiff's allegation that her father picked her up from a gas station "shortly before dawn" the morning after she was raped, on the grounds that NBC reported that her father does not recall doing so. (Def. Mem. 10.) Given that this occurred 24 years ago, it is not surprising that her father may not recall a specific drive to pick up his daughter. Moreover, as plaintiff stated in her interview with NBC, and reflecting a reticence not uncommon in sexual assault victims, she never told her father or anyone else about what happened to her at the party: "'We rode home in silence. He didn't ask me what happened. He

---

[12]    Indeed, as reported by *The New York Post*, Combs was fined $2,000 for violating the town of East Hampton's noise ordinance during a Fourth of July party at this property in 1999. *See* Kasowitz Decl. Ex. E.

[13]    *See* Kasowitz Decl. Ex. F.

[14]    *See* Kasowitz Decl. Ex. G.

didn't ask me what I did or where I was.'  She told NBC News she never told anyone about the

alleged assault or wrote it down in a diary."  (ECF 62-1 at 6.)  Indeed, given the passage of time,

it is entirely possible that her father is simply mistaken in recalling the time he "once pick[ed]

[plaintiff] up in the middle of the night" as having been a "local drive."  (*Id.* at 7.)

  None of the five factual disputes raised in the motion come remotely close to satisfying

the "high bar" for imposing sanctions under Rule 11, and none of the challenged allegations

could possibly render plaintiff's claim "utterly lacking in factual support" as is required for

sanctions, particularly "[i]n light of the Court's duty to resolve any and all doubts" in Buzbee's

favor.[15]  *See, e.g., LoPorto v. County of Rensselaer*, 2018 WL 4565768, at *22 (N.D.N.Y.

---

[15]  As Buzbee has fully satisfied his Rule 11 obligations, Carter's lawyers' argument (Def. Mem. 17) that Buzbee should be sanctioned for failing to withdraw the FAC is also baseless, particularly inasmuch as none of the supposed "holes" in plaintiff's story render her claim against Carter groundless, as NBC News itself acknowledged.  *See Carlton Group, Ltd.*, 2003 WL 21782650, at *7 (no requirement to withdraw claims where new evidence "did not…irrefutably demonstrate that [plaintiff's] claims had no merit").  Carter's lawyers' cases in support of his withdrawal argument are wholly inapposite.  In each, the court found that the plaintiff had no basis whatsoever for the claims, in stark contrast to this case, where Carter merely argues that there are "holes" in plaintiff's story.  *See Galin v. Hamada*, 283 F. Supp.3d 189, 203 (S.D.N.Y. 2017) (sanctioning plaintiff and counsel for failing to withdraw complaint after close of discovery "because they knew—by that point if not earlier—that their allegations on the central (and dispositive) issue in the case were 'utterly lacking in support'"); *Johnson v. Roadway Exp., Inc.*, 2006 WL 120242, at *3 (W.D.N.Y. Jan. 17, 2006) (imposing sanctions on counsel for filing complaint asserting violation of ADA because counsel "should have known…that plaintiff was not disabled under the ADA" and that "plaintiff ha[d] no chance of recovery under the ADA" due to "many warnings…as to the complete lack of legal and factual support of plaintiff's claims"); *Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986) (affirming sanctions against plaintiff attorney for commencing "entirely frivolous" "unfounded spite action" against former tenant's father "as part of a conscious effort to harass…because [defendant's] daughter sued [plaintiff] to recover a security deposit to which she was entitled under Massachusetts law"); *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *4 (S.D.N.Y. Sept. 14, 2022) (awarding sanctions where amended complaint asserted claim for breach of NDA "based on rank speculation" and separate claim for breach of contract even though "by the time Plaintiff filed its Amended Complaint, it knew that Defendant was complying with its contractual obligations"); *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49 (S.D.N.Y. 1988) (awarding sanctions under previous version of Rule 11, which mandated sanctions upon the finding of a violation, where despite counsel's admission that "after discovery

19

Sept. 24, 2018) (denying motion for sanctions where, resolving all doubts in favor or party

opposing sanctions, "there was 'some arguable basis' for commencing th[e] action") (quoting

*Perez v. Posse Comitatus*, 373 F.3d 321, 326 (2d Cir. 2004)).[16]

## II.    Carter's Motion Should Be Denied Because It Seeks to Evade Rule 12's Requirements and Impermissibly Avoid Discovery

This motion should be denied for the additional reason that Carter's lawyers filed it

plainly in an effort to avoid discovery and evade the clearly satisfied requirement under Rule 12

that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted).  It is only where "no reasonable evidentiary basis for a

factual claim was disclosed in pretrial proceedings or at trial" that "the district court must then

scrutinize the objective reasonableness of the attorney's pre-filing inquiry and the basis for the

claim developed by that inquiry." *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452,

1470 (2d Cir. 1988), *rev'd on other grounds sub nom.*, *Pavelic & LeFlore v. Marvel*

*Entertainment Group*, 493 U.S. 120 (1989).

---

was completed [] it became clear that the fraud claims had no basis in fact," plaintiff "waited to
withdraw the causes of action until after defendants' summary judgment papers were filed").

[16]    Carter's lawyers' reliance on *Levine v. FDIC*, 2 F.3d 476 (2d Cir. 1993) is utterly
misplaced; that case bears no resemblance to this case.  In *Levine*, two years after commencing
the action, after deposition testimony established that a particular witness had never conducted
business in Connecticut, plaintiff's lawyer filed an amended complaint adding that witness as a
defendant, falsely asserting that personal jurisdiction existed on the grounds that the witness
"regularly did and solicited business in Hartford, Connecticut." *Id.* at 477.  The lawyer also
submitted an affidavit, and caused his client to submit an affidavit, that "substantially
contradicted in many material respects [the client's] sworn [deposition] testimony." *Id.* at 478.
Thus, it was the lawyer's "blatant disregard of the facts" and his "concoct[ing] 'facts'" that
warranted sanctions. *Id.* at 479.  *Saltz v. City of New York*, 129 F. Supp. 2d 642 (S.D.N.Y. 2001)
is also entirely inapposite.  There, the plaintiff's lawyer, for more than a year after being retained
to when he filed a complaint, "did not attempt to investigate plaintiff's claims." *Id.* at 646.
Furthermore, plaintiff's attorney "persisted in pursuing the case even after discovery failed to
elicit any evidence" corroborating his allegations. *Id.*

Accordingly, the issue of sanctions, including with respect to pleadings, "normally will be determined at the end of the litigation." *See Jawbone, LLC v. Donohue*, 2002 WL 1424587, at *6 (S.D.N.Y. June 28, 2002) (refusing to find, "at [an] early stage of the litigation, without the benefit of discovery and a thorough analysis of the merits of the case, that plaintiff's factual allegations are completely without support"); *Safe-Strap Co, Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003) (addressing issue of sanctions at end of litigation "is a sensible practice where as here the thrust of the sanctions motion is that institution of the case itself was improper"); *Archie Comic Publ'ns, Inc. v. DeCarlo*, 2000 WL 1731341, at *1 (S.D.N.Y. Nov. 21, 2000) ("The preference for the determination of sanctions for allegedly frivolous pleadings at the end of the case makes a good deal of sense").

Here, Carter is seeking a Rule 11 determination before any discovery has been undertaken. At a minimum, until discovery has been completed, the Court simply cannot find that "no reasonable evidentiary basis for a factual claim was disclosed in pretrial proceedings or at trial" -- the prerequisite for any examination by this Court of counsel's Rule 11 responsibilities. *See Calloway*, 854 F.2d at 1470. As the cases Carter's lawyers themselves cite make clear,[17] there is no basis for dismissal.

---

[17]    *See Marina Management Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325-26 (D.C. Cir. 2000) (court did not abuse discretion when, in "unduly prolonged litigation" in which "counsel…engaged in name-calling, personal attacks and petty arguments and…burdened the Court with repetitions of arguments already rejected," court *sua sponte* dismissed counterclaims upon finding that they were "frivolous and designed primarily to harass and delay a final resolution of th[e] case"); *Perry v. Goord*, 2009 WL 2580324, at *3, 5, 10-11 (dismissing plaintiff inmate's civil rights action as a sanction where plaintiff filed twenty-nine civil rights cases alleging similar fact patterns, and had "admi[tted] that he ha[d] filed fraudulent claims and allegations in at least two [of those] actions;" noting that "Plaintiff…cannot play one district against another and assert as valid allegations from the same fact patter in one Court that he calls a fraud in another").

**III.    Carter's Lawyers Should Be Ordered To Pay Plaintiff's
Attorneys' Fees for Opposing This Frivolous Motion**

Rule 11(c)(2) expressly provides the Court the authority to "award to the prevailing party

the reasonable expenses, including attorney's fees, incurred for the motion."  Fed. R. Civ. P.

11(c)(2).  Courts in this circuit have exercised this authority where, as here, a Rule 11 motion

was filed for improper purposes.  *See Lee v. Grand Sichuan E. (N.Y.) Inc*., 2014 WL 199512, at

*5 (S.D.N.Y. Jan. 17, 2014) (awarding the non-movant attorney's fees where the motion was

"filed for an improper purpose"); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 101 F.

Supp. 2d 236, 246 (S.D.N.Y. 2000), *aff'd*, 24 F. App'x 16 (2d Cir. 2001) (same).  *See also* Fed.

R. Civ. P. 11 Advisory Committee Notes (1993) ("Rule 11 motions should not be prepared to …

to intimidate an adversary into withdrawing contentions that are fairly debatable").

As demonstrated above, the motion is factually and legally meritless and was filed for an

improper purpose.  *See* Fed. R. Civ. P. 11(b)(1) (describing "improper purposes" as including "to

harass, cause unnecessary delay, or needlessly increase the cost of litigation").  None of

plaintiff's allegations in this action are "demonstrably false," and the motion has proffered no

evidence that would warrant their withdrawal -- much less an award of sanctions against

plaintiff's counsel.  Carter's meritless motion crosses "the line between zealous advocacy and

sanctionable conduct under Federal Rule of Civil Procedure 11."  *See Sheet Metal Workers'*

*Nat'l Pension Fund v. Aul Sheet Metal Works Inc.*, 2012 WL 32237, at *3 (S.D.N.Y. Jan. 5,

2012).  Accordingly, Carter should be required to reimburse plaintiff and her counsel for their

legal fees in opposing this motion.

## CONCLUSION

For the reasons set forth above, the Court should deny the motion in its entirety and

plaintiff and her counsel should be awarded fees and costs incurred in opposing it.

Dated:  New York, New York
        January 22, 2025

<div style="margin-left: 40%;">

**KASOWITZ BENSON TORRES LLP**

By:    */s/ Marc E. Kasowitz*
       Marc E. Kasowitz
       Mark P. Ressler
       Veronika Alayeva
       1633 Broadway
       New York, New York 10019
       (212) 506-1700

       *Attorneys for Plaintiff, Anthony Buzbee, and*
       *The Buzbee Law Firm*

</div>

23

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that that this brief does complies with Rule III.D of this Court's

Individual Practices because it contains 7,911 words, excluding the exempted portions, which is

less than the 8,750-word limit.  In preparing this certification, I relied on the word count of the

word-processing system.

Dated: January 22, 2025

/s/  *Marc E. Kasowitz*
_____
Marc E. Kasowitz
*Attorney for Plaintiff, Anthony Buzbee, and*
*The Buzbee Law Firm*

24