# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

Jane Doe,

                Plaintiff,                           No. 24-CV-07975

           v.

SEAN COMBS,  DADDY'S                    **FIRST AMENDED**
HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a    **COMPLAINT AND**
COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC,   **DEMAND FOR**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,     **JURY TRIAL**
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, INDIVIDUAL
DOES 1-10, AND SHAWN CARTER

              Defendants.

--------------------------------------------------------X

        Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## <u>INTRODUCTION</u>

        1.      Defendant Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a

"PD," and a/k/a "Love"), along with his longtime friend and collaborator Shawn Carter (a/k/a "Jay-

Z"), drugged and raped a thirteen-year-old girl at an afterparty following the 2000 Video Music

Awards. Another celebrity stood by and watched as Combs and Carter took turns assaulting the

minor. Many others were present at the afterparty, but did nothing to stop the assault. Combs has

been allowed for years to conduct himself in this manner without any consequences. He believes

he is above the law. He is not. His close friend Shawn Carter has been with Combs during many such instances described herein. Both perpetrators must face justice.

2.      For decades, defendant Combs  abused, molested, raped, assaulted, threatened and coerced women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister– a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for his deplorable conduct described herein.

*Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never have any recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" in exchange for the victim performing a non-consensual sexual act for the gratification of Combs and his cohort.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling

their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties. Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her. Further, it is well known that Combs had a practice of lacing water bottles with other substances, such as Xanax, and distributing them at his parties.

9.      Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least in or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

10.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York Post with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

4

11.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

12.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

13.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for raping her and a friend in 1990 or 1991 when she was only 16.

14.     In December 2023, an anonymous Plaintiff sued Combs in New York for drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

15.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

16.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

17.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

18.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

19.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

20.     Combs' long history of violence against women unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

21.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

22.     Defendant Carter is, like Combs, a wildly successful rapper and businessman. Carter and Combs have a long history together. Carter met and began collaborating musically with Combs in the 1990s.  Combs and Carter rose together to the very top of the hip-hop industry, in terms of fame and influence, by the end of that decade.

23.     Combs and Carter were not simply occasional collaborators in the music industry. The two men developed a close friendship that has been well-documented from the late 1990s to the present. Together, they attended countless music industry events, events for each other's business ventures, parties, and afterparties.  Indeed, the two are apparently so close that Combs

stated in 2023 that Carter is the *only person*, other than Combs' mother, who is allowed to call him by his legal first name of "Sean."

24.    In 2000, near the height of their fame, power, and influence, Combs and Carter attended the 2000 Video Music Awards in New York City.  Afterwards, Combs hosted an afterparty for many of the most famous celebrities in the music and entertainment industries, including Carter, which is where the events alleged in this complaint occurred.

## PARTIES

25.    Plaintiff Jane Doe is a female who resides in Alabama.

26.    Defendant Sean Combs is a male who, on information and belief, resides in New York City, through incarceration in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein.

27.    Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New

8

York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

28.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

29.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active

9

Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein.

      a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

      b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

      c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and

owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e. Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

11

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

30.    Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

31.    Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

32.    Defendant Shawn Carter is a male who, on information and belief, maintains residences in both New York and Los Angeles.  Defendant Carter is more commonly known by his industry name of "Jay-Z."  Carter was identified in Plaintiff's original complaint as "Celebrity A."  Prior to the filing of this amended complaint, Carter received a letter from Plaintiff's counsel requesting a mediation to resolve this matter.  Upon present information and belief, Jay-Z responded to said letter by not only filing an utterly frivolous lawsuit, but by also orchestrating a conspiracy of harassment, bullying and intimidation against Plaintiff's lawyers, their families,

employees and former associates in an attempt to silence Plaintiff from naming Jay-Z herein. This effort was meant to scare Plaintiff and to discredit her counsel. That effort failed. Indeed, Plaintiff chose to file this amendment as a result of the egregious conduct perpetuated by Carter.

33.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

34.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

35.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

36.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

37.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

38.     On or around September 7, 2000, Plaintiff, then thirteen years old, had a friend drive and drop her off near Radio City Music Hall in New York City so she could try to attend the

Video Music Awards (VMAs). Attending the VMAs was on Plaintiff's bucket list, and she believed she could gain entry.

39.     Plaintiff arrived at the venue and saw large crowds gathering as artists and entertainers began arriving. Plaintiff was very excited.

40.     As the event began, much of the crowd moved inside, but Plaintiff, without a ticket, remained outside with others and watched the VMAs on a jumbotron. Determined to get into the VMAs or an afterparty, she approached several limousine drivers parked nearby and attempted to talk her way into either.

41.     One of the limousine drivers she spoke to claimed to work for Defendant Combs. The driver told her that Combs liked younger girls and said she "fit what Diddy was looking for," and while not allowing her into the Awards, the driver invited her to an afterparty.

42.     The driver stated that he had to drive Combs and others to the afterparty first, but instructed Plaintiff to return to his location after the event and that he pick her up and take her to the afterparty.

43.     Later that evening, Plaintiff excitedly returned to the same location and waited for what seemed to her a long time. The driver eventually returned and drove her what he described as the "afterparty."

44.     After approximately twenty minutes, Plaintiff arrived at what she believed to be a large white residence with a gated U-shaped driveway.

45.     Once inside, two men asked Plaintiff to sign a document, which Plaintiff did not read but which she now believes to have been a non-disclosure agreement. She was told that she could not discuss what happened at the party. She gave the men her name and signed the form but did not receive a copy.

14

46.    Inside the building, Plaintiff recognized many celebrities as she entered what appeared to be a large living room or foyer containing a large crowd. Plaintiff attempted to mingle in the crowd, and talked to several of the celebrities that she recognized and whom she had wanted to see at the VMAs.

47.    Waitstaff circulated through the room carrying trays of drinks, and loud music played throughout the venue.

48.    Plaintiff observed widespread drug use, including marijuana and cocaine.

49.    After attempting to talk to numerous celebrities, Plaintiff accepted a drink from one of the waitresses circulating the crowd. The drink was a reddish-yellow mixture that tasted like orange juice, cranberry juice, and something bitter.

50.    After drinking just a portion of that drink, Plaintiff began to feel woozy and lightheaded, making her need to lie down. A photograph of an actual exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



51.    Looking for a place to rest, Plaintiff walked down what appeared to be a hallway containing several rooms off of it.  She entered what appeared to be an empty bedroom, so she

could lie down for a moment. She did not lock the door.  This room contained only a large bed, with no furniture of any other kind, television or other furnishings.

52.     Soon after, Combs entered the room, along with defendant Carter and a female celebrity ("*Celebrity B*").  Plaintiff immediately recognized all three celebrities.

53.     Combs aggressively approached Plaintiff with a crazed look in his eyes, grabbed her, and said, "You are ready to party!"

54.     Combs then threw Plaintiff toward a wall, causing Plaintiff to fall.  Plaintiff got up and stumbled, at which point Combs grabbed her again and threw her on the bed.  At that point, Carter began removing Plaintiff's clothes as she grew more and more disoriented.

55.     Plaintiff was held down by Carter as he vaginally raped her, while Combs and *Celebrity B* watched.

56.     After Carter finished, he stepped back toward the wall.  Combs then stepped forward and vaginally raped Plaintiff while Carter and *Celebrity B* watched.

57.     Combs then knocked Plaintiff down and attempted to force Plaintiff to perform oral sex on him.  She fought back, standing up quickly and punching out at the same time, hitting Combs in the neck.  Taken aback, Combs stopped his attempt.

58.     When Combs backed away in surprise, Plaintiff grabbed her clothes and shoes and ran out of the bedroom, holding her dress in front of her like a towel.  She ran around the residence until she found the front door and was able to leave the party. Although there were other guests still at the party, no one appeared to take notice of Plaintiff's distress or attempted to help her.

59.     Once outside, Plaintiff put her clothes back on and left the scene in the dark.

60.     Plaintiff attempted to retrace the route taken by the limo driver. She kept running until she reached a gas station she noticed on the way to the party. A female clerk noticed her

distress and allowed her to use the phone. Plaintiff called her father, admitted that she had lied about her whereabouts, and asked him to pick her up. Plaintiff's father arrived to pick her up shortly before dawn.

61. After the assault, Plaintiff fell into a deep depression which continues to affect every facet of her life. Plaintiff suffers from post-traumatic stress disorder and a seizure disorder caused by stress and trauma. Plaintiff has had difficulty maintaining normal relationships and lives largely withdrawn from society.

**FIRST CAUSE OF ACTION**
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

62. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

63. By forcing sexual contact onto Plaintiff as a minor female, Defendants Combs and Carter committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

64. The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendants Combs and Carter forced minor Plaintiff to engage in a sexual interaction without consent. Jane Doe could not effectively consent because of her age. The non-consensual sexual touching of a minor herein presented a serious risk of physical injury, and in fact caused such injury. Gender animus inheres when consent is absent. Combs' long history of violence and sexual abuse against women evinces a deep contempt and desire for domination over women.

17

65.     The Combs Business enabled and conspired with Combs and Carter to commit the crime of violence motivated by gender because Combs and Carter sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

66.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given a long-standing pattern and practice of committing sexual violence against women, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

67.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

68.     The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that

18

Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

69.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

70.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

71.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

   a.   Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

   b.   Awarding punitive damages in an amount to be determined at trial;

   c.   Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e. Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f. Awarding such other and further relief as this Court may deem just and proper.

Dated: DECEMBER 8, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ TONY BUZBEE*
Anthony G. Buzbee
Texas Bar No. 24001820
New York Bar. No. 5686712
tbuzbee@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
Colby Holler
Texas Bar No. 24126898
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff Jane Doe*

- AND -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

20

- AND -

**CURIS LAW, PLLC**
*/s/ Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610