UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                           Plaintiff,

       v.

SEAN COMBS, DADDY'S HOUSE
RECORDINGS INC., CE OPCO, LLC d/b/a
COMBS GLOBAL f/k/a COMBS
ENTERPRISES, LLC, BAD BOY
ENTERTAINMENT HOLDINGS, INC., BAD
BOY PRODUCTIONS HOLDINGS, INC., BAD
BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT
LLC, BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, INDIVIDUAL
DOES 1-10, AND SHAWN CARTER,

                        Defendants.

Civil Action No.    1:24-cv-07975-AT

**DEFENDANT SHAWN CARTER'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION FOR MONETARY SANCTIONS AND
DISMISSING THE COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 11**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ................................................................................................................................3

I.  THE COURT SHOULD IMPOSE RULE 11 SANCTIONS ...............................................3

    A.  Mr. Buzbee Violated Rule 11(b) ...............................................................................4

    B.  Sanctions Are Warranted ............................................................................................9

    C.  Plaintiff Is Not Entitled to Attorneys' Fees ...............................................................11

CONCLUSION.............................................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*,
   1998 WL 410958 (S.D.N.Y. July 22, 1998) ...................................................................3, 6

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991) ...................................................................................................4

*Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp.*,
   101 F. Supp. 2d 236 ...................................................................................................11

*Carlton Grp., Ltd. v. Tobin*,
   2003 WL 21782650 (S.D.N.Y. July 31, 2003) ..................................................................10

*China Al Cap. Ltd. v. DLA Piper LLP (US)*,
   2023 WL 5016492 (S.D.N.Y. July 28, 2023) ....................................................................3

*Craig v. N.Y.C.*,
   2022 WL 2238451 (E.D.N.Y. June 22, 2022) ...................................................................6

*Erbacci, Cerone & Moriarty Ltd. v. U.S.*,
   923 F.Supp. 482 (S.D.N.Y 1996) ...................................................................................10

*Matter of Excello Press, Inc.*,
   967 F.2d 1109 (7th Cir. 1992) .......................................................................................3

*G-I Holdings, Inc. v. Baron & Budd*,
   2002 WL 1934004 (S.D.N.Y. Aug. 21, 2002) ....................................................................6

*Galin v. Hamada*,
   283 F. Supp. 3d 189 (S.D.N.Y. 2017) .............................................................................10

*Garr v. U.S. Healthcare, Inc.*,
   22 F.3d 1274 (3d Cir. 1994) ..........................................................................................3

*Goldberg* v. *Blue Ridge Farms, Inc.*,
   2005 WL 1796116 (E.D.N.Y. July 26, 2005) ....................................................................11

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   706 F. Supp. 2d 713 (N.D. Tex. 2010) .............................................................................9

*Jeffreys v. Rossi*,
   275 F. Supp. 2d 463 (S.D.N.Y. 2003) ..............................................................................6

*Kirsh v. Scott*,
    1994 WL 132383 (S.D.N.Y. Apr. 11, 1994)................................................................6

*Lake v. Fontes*,
    2023 WL 4548357 (D. Ariz. July 14, 2023) ...........................................................9

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
    2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ...........................................................11

*Lichtenstein v. Consol. Servs. Grp., Inc.*,
    173 F.3d 17 (1st Cir. 1999).....................................................................................3

*Pavelic & LeFlore v. Marvel Entmt. Grp.*,
    493 U.S. 120 (1989)..............................................................................................4

*Matter of Rosen*,
    166 A.D.3d 23 (4th Dep't 2018)...........................................................................10

*Schottenstein v. Schottenstein*,
    230 F.R.D. 355 (S.D.N.Y. 2005) ..........................................................................10

*Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc.*,
    2012 WL 32237 (S.D.N.Y. Jan. 5, 2012) .............................................................11

*In re Sun Prop. Consultants, Inc.*,
    2021 WL 3375831 (E.D.N.Y. Aug. 2, 2021)......................................................4, 6

## Rules / Statutes

Local Civ. R. 1.3(i)-(k) ................................................................................................10

Local Civ. R. 1.5(b)(6)................................................................................................10

Rule 11 ..........................................................................................................2, 3, 4, 9, 11

Rule 11(b) .......................................................................................................................4

Rule 11(c).....................................................................................................................11

## PRELIMINARY STATEMENT

A principled attorney, when confronted with factual inconsistencies that cast grave doubt on horrific allegations and reveal the inadequacy of any pre-filing inquiry, would reconsider the lawsuit. Instead, Plaintiff's lead attorney Anthony Buzbee tried to gloss over them. Initially, he deflected, saying Plaintiff's "case was referred to [his] firm by another, who vetted it prior to sending it" to him, and that his firm would "continue to vet her claims and collect corroborating data." (NBC Article 4.) Now, he concedes that *he did not even meet with Plaintiff* before signing his name to the complaint (Dkt. No. 76 ¶ 7; Opp. 4), and fails to identify *any* evidence that corroborates anything his client alleged. Meanwhile, he has litigated this matter for three months without seeking admission to this Court or explaining this failure, including throughout earlier cases he filed in this Court. (Dkt. No. 76 ¶ 1.)

Mr. Buzbee's studied detachment from the mandatory diligence and admission procedures contrasts starkly with his exertions outside of court. There is no denying that he has—in press conferences, social media, and media interviews—systematically weaponized the allegations of his still-anonymous Plaintiff to damage Mr. Carter's reputation. Mr. Buzbee is conducting himself as he is knowing that his in-court submissions may be cloaked in immunity. Mr. Carter seeks only to hold Mr. Buzbee to the ethical standards that constrain any responsible attorney who would solemnly sign his name to allegations in court. Without such guardrails on litigation, there is obvious, worrisome risk: Someone in Mr. Buzbee's position could level reputation-destroying allegations indiscriminately in court, with an eye towards leveraging them in sensationalist fashion outside of court, without ever properly inquiring into their truth or facing accountability.

That concern looms large here. Mr. Carter has identified factual inconsistencies demonstrating that allegations in the FAC were false or highly suspect. Those inconsistencies undermine nearly every step in Plaintiff's narrative—her arrival and whereabouts at the VMAs,

1

her interaction with celebrities, the purported residence, the timeline, and how she got home. Plaintiff's opposition ("Opposition") does not meaningfully engage these demonstrated inconsistencies. Notably, for the one issue she seeks to rebut—whether Mr. Combs owned a home fitting the FAC's description—Plaintiff's arguments only confirm the errors.

All told, Plaintiff lacks any satisfying answer to the identified discrepancies. It is now common ground that neither Mr. Buzbee nor any of his colleagues ever so much as asked the Plaintiff's father whether he remembered playing his critical, multi-hour role in the remarkable tale spun by the FAC. If they had, they would have learned what a curious NBC News reporter learned by posing that simple, easy question: He remembered no such events.

Mr. Buzbee now suggests myriad ways that a "rigorous" investigation was performed (Dkt. No. 76 ¶¶ 6-7) by unnamed colleagues. But those efforts fail to satisfy *his own* Rule 11 obligation to conduct a reasonable inquiry, pre-filing, into allegations that facially test the outer limits of credulity, and, indeed, fly in the face of readily-ascertained facts. Mr. Buzbee could not farm out to unspecified others his Rule 11 obligations, which attach personally to him as the signer. They are non-delegable. And having purportedly left the requisite vetting to others, Mr. Buzbee cannot now properly serve as the lone declarant, attesting to matters that are outside his personal knowledge and known only to non-declarants who sit silent.

Even assuming Mr. Buzbee had a reasonable basis initially to file the claim, post-filing exposure of substantial inaccuracies should have led him to withdraw it. He cannot continue, post-complaint, to whistle past demonstrated inaccuracies in Plaintiff's allegations that are staring him in the face. Rule 11 sanctions are well warranted, and Mr. Buzbee's attempt to demand sanctions of his own is meritless.

## ARGUMENT

## I.    THE COURT SHOULD IMPOSE RULE 11 SANCTIONS

An attorney who fails to investigate adequately before filing a complaint—particularly one alleging serious criminal conduct that will inevitably "cause reputational harm"—is subject to Rule 11 sanctions. *China Al Cap. Ltd. v. DLA Piper LLP (US)*, 2023 WL 5016492, *8 (S.D.N.Y. July 28, 2023). That a complaint's allegations are readily disproved affords telltale proof of lack of diligence. *See e.g.*, *Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, 1998 WL 410958, *8 (S.D.N.Y. July 22, 1998) (where "absence of inquiry is apparent from pleading," pre-discovery sanctions lie).

Plaintiff is incorrect that Rule 11 cannot be offended unless and until this Court is convinced of "the falsity of plaintiff's claim" of sexual assault. (Opp. 15.) As multiple circuits agree, the question is "not whether the claim itself was frivolous … but whether … [an] adequate inquiry into the facts and the law" was conducted. *See Matter of Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir. 1992); *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999) (one suing without reasonable inquiry "and based on nothing more than a prayer that helpful facts will somehow emerge," cannot avoid sanctions if he "through sheer fortuity is rewarded for his carelessness"); *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994) ("A shot in the dark is a sanctionable event, even if it somehow hits the mark.").

Mr. Buzbee signed a complaint whose allegations tested the outer bounds of credulity without conducting the barest of inquiries himself, then stood on them even after they were exposed to be false or inconsistent.[1]

---

[1]    Plaintiff contends that the Court "discouraged" Mr. Carter from filing any Rule 11 motion. (Opp. 8.) In fact, Mr. Carter submitted a pre-motion letter concerning this motion (even though the Court's Rules did not so require), requesting that the Court shorten the 21-day safe harbor period to one day. (Dkt. No. 46 at 3.) Four days later, he served his motion on counsel. (Mot. 11-

### A.    Mr. Buzbee Violated Rule 11(b)

Although Mr. Buzbee claims that "rigorous due diligence" pressure-tested Plaintiff's allegations (Dkt. No. 76 ¶ 7), he neither rebuts the inaccuracies Mr. Carter identified nor corroborates the FAC.  Moreover, far from explaining these failings, he admits that he never even interviewed Plaintiff before suing.  (*Id.*; Opp. 4.)  Because Rule 11's defining purpose "is to bring home to the ***individual signer*** his personal nondelegable responsibility" and the attendant obligation "is not a 'team effort' but in the last analysis yours alone," Mr. Buzbee's farm-it-all-out approach cannot suffice.  *Pavelic & LeFlore v. Marvel Entmt. Grp.*, 493 U.S. 120, 126 (1989) (emphasis added); *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) ("[A]ny party who signs" must independently inquire); *In re Sun Prop. Consultants, Inc.*, 2021 WL 3375831, *12 (E.D.N.Y. Aug. 2, 2021) (discounting "careful review," claim when review would reveal evidentiary deficits).

As to Mr. Buzbee's reliance on other lawyers and a "retired police detective" to interview Plaintiff and "fact-check" her account, (Dkt. No. 76 ¶¶ 6-7), none of those individuals has even been named, let alone produced as a declarant.  Nor does the Opposition specify which "aspects" of Plaintiff's complaint were "fact-checked."  Most strikingly, there is no claim that anyone asked the Plaintiff's father, a key participant and ready interviewee, whether he remembered his chapter in the FAC's remarkable saga—to which the answer would have been "no."  More broadly, the FAC contains nine key facts going to the core allegation of sexual assault, five of which Mr.

---

12.)  While the Court denied shortening of time and discouraged any undue motions practice, it acknowledged that "Carter's attorney is entitled to file a Rule 11 motion without first seeking leave."  (Dkt. No. 53 at 4.)  Mr. Carter then heeded the Court's pointed instruction, including by complying with the 21-day safe harbor.  (Mot. 11-12.)  The Motion was filed only after Mr. Buzbee refused to do anything to address the grave concerns Mr. Carter had raised under Rule 11.

Carter's Motion refutes—or calls into serious question—and the rest of which were insusceptible to being "fact-checked."

| No. | Allegation | Fact-Check |
|-----|-----------|-----------|
| 1 | Friend drove Plaintiff to NYC (FAC ¶ 38) | Not fact-checked.  When asked this person's identity, counsel identified a then 20-year-old, now deceased.  (NBC Article 8.) |
| 2 | Plaintiff watched VMAs on Jumbotron (*Id.* ¶ 40) | False.  *See infra* 9. |
| 3 | Limousine driver offered ride to "afterparty" (*Id.* ¶¶ 41-42) | False.  *See infra* 9. |
| 4 | Party at large white residence with U-shaped driveway, 20 minutes from Radio City (*Id.* ¶ 44) | False.  *See infra* 8. |
| 5 | Plaintiff signed what she now believes was an NDA (*Id.* ¶ 45) | Not fact-checked.  Plaintiff lacks any such document.  (FAC ¶ 45.) |
| 6 | Plaintiff spoke with celebrities at party (*Id.* ¶ 46) | False or highly suspect.  *See infra* 8. |
| 7 | Plaintiff purportedly drugged; found room to lie down (*Id.* ¶¶ 49-51) | Cannot fact-check.  Plaintiff told no one for 24 years; did not undergo toxicology screening.  (NBC Article 6.) |
| 8 | Plaintiff ran out of house to closest gas station (*Id.* ¶¶ 59-60) | Cannot fact-check.  Plaintiff told no one for 24 years; now claims to not know residence location, let alone gas station. (NBC Article 8.) |
| 9 | Father picked Plaintiff up just before dawn (*Id.* ¶ 60) | False.  *See infra* 7. |

The only "research" Mr. Buzbee's firm apparently conducted was to "confirm the [purported] close connection between Carter and Combs."  (Opp. 4.)[2]  That does nothing to substantiate the

---

[2]  Mr. Buzbee has abandoned his client's offer to take a polygraph test.  (*See* NBC Article 4.)

claim against Mr. Carter. And Mr. Buzbee does not identify anything actually corroborating the FAC or explain why "rigorous due diligence" somehow failed to turn up the factual defects NBC uncovered within days.[3]

No matter how adamant a plaintiff may be in alleging sexual assault, the allegations are not self-corroborating. Responsible attorneys must conduct diligence and seek corroboration. *See Sun Prop.*, 2021 WL 3375831, at *15 (inadequate inquiry "[c]onsequences … fall squarely on counsel who … rel[ied] heavily on … client['s representations] to the exclusion of the fact[s] … otherwise"). Mr. Buzbee was not (Opp. 14) entitled to "rely solely on his client['s]" representations without investigation. *See e.g.*, *Abner Realty*, 1998 WL 410958, at *4.[4]

Yet Mr. Buzbee's efforts all went elsewhere. He attests that AVA Law referred this case in early October before he filed it on October 20. (Dkt. No. 76 ¶ 5.) In the less than three weeks between referral and filing—time he should have spent vetting this claim—he was on a press tour at multiple media outlets publicizing his campaign against Mr. Combs and alleged co-conspirators. Rather than contacting his client's father or running straightforward Google searches, Mr. Buzbee was litigating feverishly in the court of public opinion, without regard for his obligations in court. The predictable upshot is that Mr. Buzbee got basic facts wrong, as the Opposition only confirms.

---

[3] That NBC included standard qualifying language that the inconsistencies do not "necessarily mean that the allegations are false" (Opp. 6) has no bearing on the inquiry, which asks what a compliant attorney would do in the face of such inconsistencies.

[4] *See also Craig v. N.Y.C.*, 2022 WL 2238451, *10 (E.D.N.Y. June 22, 2022); *Kirsh v. Scott*, 1994 WL 132383, *5 (S.D.N.Y. Apr. 11, 1994). Plaintiff's authorities align. For example, in *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003), the court denied sanctions where the attorney's "investigation … include[d] review of medical and documentary evidence, non-client interviews, and a site inspection of the scene." *Id.* at 481; *see also G-I Holdings, Inc. v. Baron & Budd,* 2002 WL 1934004, *14 (S.D.N.Y. Aug. 21, 2002) (escaping sanctions because investigation included "methodical search for corroboration of, or evidence of error or untruth by" source).

*First*, in responding to Mr. Carter's argument that public property records prove that Mr. Combs did not own a residence that fits the FAC's description in 2000, Plaintiff wrongfully accuses Mr. Carter of misstating facts. Zeroing in on the 40 Hedges Drive residence, Plaintiff argues repeatedly (Opp. 2, 13, 15, 17) that Mr. Carter "represent[ed] that [Combs] did not own [this property] until 2001," revealing his "lawyers' own mistake concerning details on which they … rely." (*Id.* 13, 15.) Far from disputing that Mr. Combs owned that residence in 2000, the Motion notes that *he did*. (*See* Dkt. No. 62-13 (Mr. Combs *sold* in 2001).) Mr. Carter's point was and remains that neither this residence nor any other owned by Mr. Combs "matches [the FAC's] description." (Mot. 17.) To reiterate, while the specified residence is large and white, it does not have a gated U-shaped driveway and is located in East Hampton—a minimum two-hour drive and over 100 miles from Manhattan. (*See* Dkt. Nos. 62-13, 62-14; Ex. 7.) Rather than address these demonstrated disconnects, the Opposition whistles past them while misreading the Motion to manufacture a supposed "gotcha."

*Second*, Mr. Buzbee dismisses Plaintiff's father's denial of picking her up that night, claiming the events "occurred 24 years ago, [so] it is not surprising that he[] may not recall a specific drive to pick up his daughter." (Opp. 18.) But it strains credulity that a father—impelled to jump into his car in the middle of the night to undertake a minimum *10-hour* round trip to pick up his 13-year-old daughter at a random gas station—would forget the entire episode. And his denial was unequivocal: he said anything like this "would definitely stick in my mind." (NBC Article 7.) Even by Mr. Buzbee's account, however, neither he nor any of his supposed diligence team bothered to check.

*Third*, Plaintiff dismisses her imagined conversation with Benji Madden as "irrelevant" simply because it was not discussed in the FAC. But the point is that Plaintiff allegedly spoke

with celebrities at the party (FAC ¶ 46), which would invite any reasonable attorney to ask "who" and then inquire accordingly.  Especially in a case where so much hinges on a Plaintiff's credibility, recollections about Mr. Madden's tattoo of "The Last Supper" are no triviality.  (NBC Article at 5.)  Notably, it is undisputed that Mr. Madden was not in New York that night.  (*Id.* at 7.)  Calling this a "memory lapse" (Opp. 11), cannot obscure counsel's lapses in investigating whether multi-decade-old recollections aligned with reality.

**Fourth**, Plaintiff dismisses (Opp. 17 n.10) photographs showing Mr. Carter at Lotus on the night in question, theorizing he could have partied at the residence after the nightclub.  But that makes the timeline even more farfetched, as *Mr. Combs* and Ms. Lopez attended two nightclubs— Lotus and Twirl:  The FAC requires that Plaintiff arrived at the gas station after the alleged assault around 1:30 am—five hours before dawn—after fleeing the alleged party.  (FAC ¶ 60 (father arrived just before dawn); NBC Article 7 (lived in Rochester); Ex 6 (dawn 6:30 AM).)  Given that the VMAs ended at 11:11 pm (Ex. 2), in approximately two hours Mr. Combs would have had to been driven to two different nightclubs (each at least 14 minutes from Radio City with zero traffic and 6-14 minutes from each other) (Exs. 3-5); spent time at each club where he was photographed; been driven to the (imaginary) residence at least 20 minutes from Radio City; waited while his driver returned to Radio City to pick up Plaintiff (a roundtrip of at least 40 minutes (FAC ¶ 42, 44)); waited more time while Plaintiff mingled with celebrities and got intoxicated; and then assaulted Plaintiff.  (*See id.* ¶¶ 45-58.)  Assuming arguendo that timeline can somehow be wrestled within the laws of physics, it cried out for reality-testing.

**Fifth**, Plaintiff denies Mr. Carter's evidence that she could not possibly have watched the VMAs on a Jumbotron or spoken with limousine drivers.  But Plaintiff "could [not] have watched on a Jumbotron … in … Times Square" (Opp. 16) because, *per the FAC*, she was not in Times

Square (Broadway and 42nd Street), but "***outside***" Radio City (Fifth Avenue and 50th Street, nearly a mile away). And the denial of MTV's permit prevented it from being telecast in Times Square. (Spiro Decl. ¶ 3.) Nor could the limousines have been elsewhere because, *per the FAC*, she approached them while standing outside Radio City watching the VMAs. (FAC ¶ 40.) If nothing else, these inconsistencies should have been run to ground before Mr. Buzbee sponsored allegations that could not withstand a simple Google search.

## B.    Sanctions Are Warranted

These factual discrepancies are neither isolated nor surprising. They result from Mr. Buzbee's rush to launch allegations unhindered by mandatory diligence.

Mr. Buzbee's claim of "rigorous" investigation does not square with the known facts, including how a single, initial media interview turned up glaring problems that counsel had either ignored or never investigated. *See e.g.*, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 706 F. Supp. 2d 713, 722 (N.D. Tex. 2010), *vacated in part on other grounds*, 732 F. Supp. 2d 653; *Lake v. Fontes*, 2023 WL 4548357, *3 (D. Ariz. July 14, 2023). Indeed, Mr. Buzbee does not even claim that ***he*** did ***anything*** to investigate the allegations before signing his name to them. (*Id.*; Dkt. No. 76 ¶ 7.) That conceded failure is sanctionable under Rule 11. As for the role played by unspecified lawyers at AVA Law who first investigated Plaintiff's claims and drafted the complaint (*see* Dkt. No. 76 ¶ 6) and by two unspecified (non-declarant) lawyers at Mr. Buzbee's firm who purportedly interviewed Plaintiff pre-filing, there is no claim that they corroborated anything in the FAC, nor is there any explanation for why they never contacted Plaintiff's father and missed such obvious discrepancies.

To make matters worse, Mr. Buzbee refused to withdraw any of the allegations even after NBC exposed the ostensible falsehoods. *Carlton Grp., Ltd. v. Tobin*, 2003 WL 21782650, *6

9

(S.D.N.Y. July 31, 2003) (no withdrawal despite "request by … adversary after learning … claim was groundless" sanctionable); *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (similar).

Finally, it is telling that Mr. Buzbee never sought requisite admission to this Court before being so ordered.  Mr. Buzbee implies that he may freely practice law in this District without applying for admission to the Court's bar—or *pro hac vice*—in the more than *three months* since he filed this case, as well as throughout **15**[5] other cases in this Court.  (*See* Dkt. No. 76 ¶ 1 ("My application … [to] Southern District … is forthcoming.").)  But an attorney must be admitted *before* signing pleadings or appearing.  *See* Local Civ. R. 1.3(i)-(k) (*pro hac vice* admission); *id.* at 1.3(l); *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 362 (S.D.N.Y. 2005) ("complaint could not have been filed without [local counsel] signature").

Although Mr. Buzbee submits he is "not aware of [any] requirement" that he seek interim *pro hac vice* admission "while his application … is pending" (Opp. 13 n.5), he has not identified any "pending" application.  (Dkt. No. 76 ¶ 1; *see also* Dkt. No. 80 (ordering Mr. Buzbee to "file proof of admission" by February 14).)    Such disregard is emblematic of his broader noncompliance.  *Cf.* Local Civ. R. 1.5(b)(6); *see e.g.*, *Erbacci, Cerone & Moriarty Ltd. v. U.S.*, 923 F.Supp. 482, 485 (S.D.N.Y 1996) (denying *pro hac vice* application where plaintiff's counsel—not a member of this Court's bar—signed two motions); *Matter of Rosen*, 166 A.D.3d 23, 24 (4th Dep't 2018) (Appellate Division relying on censure by SDNY for "appear[ing] in two separate matters before the District Court without having been admitted to practice law").

---

[5]  In some cases, Mr. Buzbee litigated from start to finish without seeking requisite admission. *See e.g.*, *Doe v. Combs*, 24-cv-08811 (S.D.N.Y.); *Doe v. Combs*, 24-cv-07976 (S.D.N.Y.); *Doe v. Combs*, 24-cv-7769 (S.D.N.Y.).

### C.    Plaintiff Is Not Entitled to Attorneys' Fees

Mr. Buzbee tries to turn the tables by seeking fees of his own, but has no colorable basis for them. The Motion has ample good-faith basis and is "not clearly frivolous, filed for an improper purpose, or not well-grounded in fact or law." *Goldberg* v. *Blue Ridge Farms, Inc.,* 2005 WL 1796116, *7 (E.D.N.Y. July 26, 2005). Mr. Carter identified numerous factual allegations that are demonstrably false, *see supra* I.A., and sought only to vindicate Rule 11, not "harass, cause unnecessary delay, or needlessly increase the cost of litigation." (Opp. 22.) None of Plaintiff's authorities, properly read, points to the contrary. *See Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, *2 (S.D.N.Y. Jan. 17, 2014) (faulting motion relying "extensively" on judge's comments in "confidential" settlement conference); *Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236. 246 (S.D.N.Y. 2000) (sanctions motion frivolous because it impugned as "meritless" a *granted* motion for summary judgment); *Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc.*, 2012 WL 32237, *3 (S.D.N.Y. Jan. 5, 2012) (considering, but withholding, sanctions where arguments "r[a]n so contrary to the actual factual record").

## **<u>CONCLUSION</u>**

This Court should impose Rule 11(c) sanctions and direct the parties to confer on a schedule for briefing an award.

DATED: January 29, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By: _____
Alex Spiro
295 Fifth Avenue
New York, New York 10061
(212) 849-7000

*Attorney for Defendant Shawn Carter*

12

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(D) of Judge Analisa Torres' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,471 words, as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(D) of Judge Torres' Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 29th day of January, 2025 in New York, New York.


   _/s/ Alex Spiro_
   Alex Spiro

13