UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE<br><br>    *Plaintiff*,<br><br>  v.<br><br>SEAN COMBS, DADDY'S HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC, BAD BOY ENTERTAINMENT HOLDINGS, INC., BAD BOY PRODUCTIONS HOLDINGS, INC., BAD BOY BOOKS HOLDINGS, INC., BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT LLC, BAD BOY PRODUCTIONS LLC, ORGANIZATIONAL DOES 1-10, INDIVIDUAL DOES 1-10, AND SHAWN CARTER,<br><br>    *Defendants*. | Case No. 1:24-cv-07975-AT<br><br><br>**ORAL ARGUMENT REQUESTED** |

---

**DEFENDANT SHAWN CARTER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .......................................................................................................4

      A.    Factual Background ....................................................................................4

      B.    Procedural History ....................................................................................6

LEGAL STANDARD...............................................................................................7

ARGUMENT ...........................................................................................................8

I.     DISMISSAL IS WARRANTED BECAUSE THE GMVPA DOES NOT APPLY
      RETROACTIVELY ........................................................................................8

      A.    The GMVPA's Statutory Text Does Not Require Retroactive Application............9

      B.    The GMVPA's Legislative History Does Not Support Retroactive
            Application....................................................................................13

      C.    Retroactive Application Would Contravene Due Process And Ex Post
            Facto Clause Protections...................................................................14

II.    DISMISSAL IS PROPER BECAUSE THE GMVPA IS PREEMPTED BY THE
      CVA AND ASA'S REVIVAL PERIODS, RENDERING THE CLAIM
      UNTIMELY...................................................................................16

      A.    New York State Law Comprises The Entire Field Of Revival For Civil
            Sexual Assault Regulation ...............................................................17

      B.    The GMVPA's Revival Period Conflicts With That Of The CVA And
            ASA....................................................................................20

III.   DISMISSAL IS PROPER BECAUSE PLAINTIFF FAILED TO PLAUSIBLY
      PLEAD THAT THE VIOLATIVE CONDUCT OCCURRED IN NEW YORK
      CITY ...................................................................................22

CONCLUSION.........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Adams v. Jenkins*,
2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) ................................................. 9, 10, 11

*Aguaiza v. Vantage Props., LLC*,
69 A.D.3d 422 (1st Dep't 2010) ................................................................................................ 8

*Albany Area Builders Ass'n v. Town of Guilderland*,
74 N.Y.2d 372 (1989) ............................................................................................................ 16

*Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*,
751 F.3d 71 (2d Cir. 2014) .................................................................................................... 12

*Anonymous v. Castagnola*,
210 A.D.3d 940 (2d Dep't 2022) ........................................................................................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 7

*Bellino v. Tallarico*,
2024 WL 13440705 (S.D.N.Y. Feb. 21, 2024) ...................................................................... 19

*Bellino v. Tallarico*,
24-cv-00712, Dkt. No. 28 (S.D.N.Y. Apr. 26, 2024) ........................................................ 8, 15

*Bensky v. Indyke*,
2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024) ..................................................................... 22, 23

*Beverley v. 1115 Health Bens. Fund*,
420 F. Supp. 2d 47 (E.D.N.Y. 2005) ..................................................................................... 22

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................................................. 8, 12

*Boss v. Bd. of Educ., Union Free Sch. Dist. No. 6 (Hauppauge)*,
798 F. Supp. 116 (E.D.N.Y. 1992) ........................................................................................ 13

*Bryant v. Buffalo Exch., Ltd.*,
2024 WL 3675948 (S.D.N.Y. Aug. 6, 2024) ......................................................................... 10

*Chwick v. Mulvey*,
    81 A.D.3d 161 (2d Dep't 2010) ..................................................................17

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014) .................................................................................1, 21

*Cummins* v. *Select Portfolio Servicing, Inc.*,
    2016 WL 4766237 (E.D.N.Y. Sept. 13, 2016) ...........................................24

*DeVeau v. Braisted*,
    363 U.S. 144 (1960) ..................................................................................14

*DJL Rest. Corp. v. City of New York*,
    96 N.Y.2d 91 (2001) ..................................................................................16

*Doe v. Gonzalez*,
    2023 WL 5979182 (E.D.N.Y. Aug. 4, 2023).............................................18

*Doe v. the Lee Strasberg Theatre & Film Institute*,
    2023 WL 8895417 (Sup. Ct. N.Y. Cnty. Dec. 21, 2023)......................9, 23

*Duffy v. Drake Beam Morin*,
    1998 WL 252063 (S.D.N.Y. May 19, 1998) ..............................................22

*Fawn Second Ave. LLC v. First Am. Title Ins. Co.*,
    610 F. Supp. 3d 621 (S.D.N.Y. 2022).......................................................24

*Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*,
    31 N.Y.3d 601 (2018) ................................................................................15

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160 (2d Cir. 1989).......................................................................15

*Golb v. N.Y.S. Atty. Gen.*,
    870 F.3d 89 (2d Cir. 2017).........................................................................13

*Gold v. N.Y. Life Ins. Co.*,
    730 F.3d 137 (2d Cir. 2013).......................................................................12

*Gottwald v. Sebert*,
    2016 WL 1365969 (Sup. Ct. N.Y. Cnty. Apr. 6, 2016).......................22, 23

*Gottwald v. Sebert*,
    40 N.Y.3d 240 (2023) ............................................................................8, 19

*Gross v. Weber*,
    186 F.3d 1089 (8th Cir. 1999) .....................................................................9

*Jacobus v. Colgate*,
  217 N.Y. 235 (1916) ........................................................................................9

*JL v. The Rockefeller University*,
  2023 WL 3757389 (Sup. Ct. N.Y. Cnty. May 25, 2023) ..................................9, 10

*June-Il Kim v. SUK Inc.*,
  2014 WL 842646 (S.D.N.Y. Mar. 4, 2014) ......................................................12

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...........................................................................7

*Kuhl v. U.S. Bank Tr. Nat'l Assoc*,
  2020 WL 5775092 (S.D.N.Y. Sept. 28, 2020) ..................................................25

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ..............................................................1, 8, 9, 10, 11, 14

*Lansdown Ent. Corp. v. N.Y.C. Dep't of Consumer Affs.*,
  74 N.Y.2d 761 (1989) ...............................................................................16, 20

*Louis v. Niederhoffer*,
  2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023) ................................................9, 10

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
  765 F.2d 966 (2d Cir. 1985) ..........................................................................14

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
  91 N.Y.2d 577 (1998) .................................................................................8, 10

*Meimaris v. Royce*,
  2021 WL 5170725 (2d Cir. Nov. 8, 2021) ......................................................15

*Melvin v. Cnty. of Westchester*,
  2016 WL 1254394 (S.D.N.Y. Mar. 29, 2016) ..................................................22

*Mira v. Kingston*,
  218 F. Supp. 3d 229 (S.D.N.Y. 2016) ..............................................................7

*Mitura v. Finco Servs., Inc.*,
  712 F. Supp. 3d 442 (S.D.N.Y. 2024) ............................................................22

*Mojica v. Reno*,
  970 F. Supp. 130 (E.D.N.Y. 1997) .................................................................11

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*,
  815 F. Supp. 2d 679 (S.D.N.Y. 2011) ............................................................25

*N.Y.C. Health & Hosps. Corp. v. Council of City of New York,*
   303 A.D.2d 69 (1st Dep't 2003) ...............................................................19

*N.Y.S. Club Ass'n, Inc. v. City of New York,*
   69 N.Y.2d 211 (1987), *aff'd,* 487 U.S. 1 (1988) ...................................16

*Nat'l Ass'n of Tobacco Outlets, Inc. v. City of New York,*
   27 F. Supp. 3d 415 (S.D.N.Y. 2014) .......................................................19

*New York Bankers Ass'n, Inc. v. City of New York,*
   119 F. Supp. 3d 158 (S.D.N.Y. 2015).......................................................16

*of City of New York, Inc. v. City of New York,*
   142 A.D.3d 53 (1st Dep't 2016) ...............................................................19

*Parker v. Alexander,*
   2025 WL 268436 (S.D.N.Y. Jan. 22, 2025) ..........................2, 15, 16, 17, 18, 19, 20

*People v. De Jesus,*
   54 N.Y.2d 465 (1981) ...............................................................................19

*People v. Torres,*
   37 N.Y.3d 256 (2021) ...........................................................................16, 19

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,*
   507 F.3d 117 (2d Cir. 2007).......................................................................7

*Rivers v. Roadway Express, Inc.,*
   511 U.S. 298 (1994).............................................................................12, 13

*Ruth v. Elderwood at Amherst,*
   209 A.D.3d 1281 (4th Dep't 2022)...........................................................10

*Salvatore v. KLM Royal Dutch Airlines,*
   1999 WL 796172 (S.D.N.Y. Sept. 30, 1999)...........................................22

*Starr v. Sony BMG Music Entm't,*
   592 F.3d 314 (2d Cir. 2010).......................................................................7

*Stein v. Rockefeller Univ. Hosp.,*
   Index No. 1599/2023, Dkt. No. 44 (Sup. Ct. N.Y. Cnty. May 23, 2024)...............9

*U.S. v. Heicklen,*
   858 F. Supp. 2d 256 (S.D.N.Y. 2012).......................................................13

*United States v. Morrison,*
   529 U.S. 598 (2000)...................................................................................12

*Wholesale Laundry Bd. of Trade, Inc. v. City of New York,*
    17 A.D.2d 327 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963) ...............................................20

## **Statutes**

C.P.L.R. § 208(b) ...............................................................................................................18

C.P.L.R. § 214-g ........................................................................................................17, 18, 19

C.P.L.R. § 214-j ....................................................................................................3, 17, 19, 20

N.Y.C. ADMIN. CODE § 10-1102 ..........................................................................................11

N.Y.C. ADMIN. CODE § 10-1103 ........................................................................................6, 18

N.Y.C. ADMIN. CODE § 10-1104.....................................................................................6, 10, 14

N.Y.C. ADMIN. CODE § 10-1105(a) ..............................................................................6, 10, 19, 20

N.Y. CRIM. P. LAW § 30.10(3)(f) .........................................................................................17

N.Y. JUDICIARY LAW § 219-d ...............................................................................................18

N.Y. Penal Code § 130 ..........................................................................................................17

N.Y. PENAL LAW § 130.00 *et seq* .........................................................................................18

N.Y. PENAL LAW § 130.30 .....................................................................................................18

N.Y. Stat. Law § 51 .............................................................................................................10

New York Penal Law Article 130 .........................................................................................18

## **Other Authorities**

N.Y. CONST. ART. IX § 2(c)(10) .............................................................................................15

Fed. R. Evid. 201 ..................................................................................................................7

Federal Rule of Civil Procedure 12 .............................................................................3, 7, 15

Defendant Shawn Carter ("Mr. Carter") respectfully submits this Memorandum of Law in support of his Motion to Dismiss Plaintiff's First Amendment Complaint (the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff here pins her legal claims to a statute that paves a pathway to relief for victims of gender-motivated violence, in the hope she can thereby resurrect a decades-old claim just months before the close of the statute's revival window. But her claims—which are meritless at their core because Mr. Carter did not commit the heinous act alleged—are insusceptible to the statutory resurrection she attempts and remain outdated as a matter of law. At the time Plaintiff asserts she was sexually assaulted, the statute she relies upon *did not exist*—it was not on the books. And even if it could cover the conduct Plaintiff complains of, it is preempted by two New York State laws, which specify revival periods that have already expired. Finally, the FAC does not and cannot allege that the conduct occurred within New York City so as to fall under the cited statute.

The FAC asserts that, nearly a quarter-of-a-century ago, on September 7, 2000, Plaintiff traveled from her home to New York City to attend the Video Music Awards (the "VMAs") at Radio City Music Hall ("Radio City"). After speaking with multiple limousine drivers, she claims to have talked her way into an invitation and ride to a party hosted by Mr. Combs. At this celebrity-filled party—purportedly held at a large white residence with a gated U-shaped driveway located within 20 minutes of Radio City—Plaintiff asserts that she was raped by two male celebrities, while an unnamed female celebrity watched. She contends that Mr. Carter was one of those men.

But Plaintiff's astounding allegations, filed more than two decades after the alleged incident, are untimely and therefore cannot proceed. That is no mere technicality. Time-bars exist to avoid the errors and injustices that can result from litigating "claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS*

*Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).  They protect defendants, like Mr. Carter, from having to defend hard-won reputations in the face of uncorroborated allegations.  This case has already exemplified the legislative purposes behind statutes of limitations, as Plaintiff has publicly admitted that many of her allegations were false; that she "made some mistakes;" and that she guessed about key details in her story, including how long the drive took to get to the party.  (Dkt. No. 62-1 at 6-7.)  And she has identified no witnesses who can substantiate her claims.  (*Id.* at 8.)  All told, the majority of Plaintiff's allegations, including that she watched the VMAs on a Jumbotron, that she spoke to limousine drivers *outside* of Radio City, that she spoke with certain celebrities at the party, and that her father drove her home, have already been exposed as false or inconsistent.  (*See generally* Dkt. No. 61.)  Indeed, she claimed, with certainty, that one of the celebrities she spoke with was Benji Madden, but that conversation never happened.  (*Id.* at 7.)

Plaintiff claims that she may proceed with this action because her stale claim was revived by New York City's Victims of Gender-Motivated Violence Protection Act (the "GMVPA").  That is legally erroneous for two simple reasons.

***First***, Plaintiff impermissibly seeks to apply the GMVPA retroactively.  The FAC alleges that Plaintiff was assaulted in September 2000, but the GMVPA was not enacted until ***three months*** later, in December 2000.  Because the GMVPA did not exist as of September 2000, it does not provide a cause of action for alleged events at that time.  Nor does the statute's plain text (or even the legislative history, for that matter) state or even suggest that it should be applied retroactively to antedated conduct.  Notably, ***every court*** that has considered this question in this context has declined to extend the statute's reach to conduct that predated its passage.  Applying the statute in ways never suggested by the legislature would not only raise grave constitutional concerns but would violate the Due Process and Ex Post Facto Clauses of the U.S. Constitution.

***Second***, even if the GMVPA could apply retroactively—it cannot—Plaintiff's claim is preempted by New York State's Child Victims Act (the "CVA") and Adult Survivor's Act (the "ASA"), consistent with Judge Kaplan's recent decision addressing the same issue. *See Parker v. Alexander*, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025). The CVA and ASA collectively create a comprehensive legislative scheme that encompasses the entire field of civil claims for sexual assault, reflecting the State legislature's intent to take full responsibility for regulating this area. And the GMVPA's revival period directly conflicts with that of the CVA and ASA, which resuscitate stale claims only until August 2021 and March 2023, respectively. That reflects the considered judgment of the state legislature balancing the critical interests in protecting defendants from the potential injustices of litigating stale claims and providing compensation for true victims of sexual assault, and New York City cannot depart from that careful legislative choice under principles of conflict preemption. Because Plaintiff's claim would not be timely under the CVA,[1] it is barred now.

***Third***, regardless of the claim's viability and timeliness, Plaintiff has failed to state a valid claim for relief because the FAC does not allege that the unlawful conduct—i.e., the purported sexual assault—occurred within New York City's territorial boundaries. Nor could it. Plaintiff asserts that after leaving Radio City, *within 20 minutes*, she arrived at a party hosted by Mr. Combs in a large white residence with a gated U-shaped driveway. But Mr. Combs did not own a residence that fit this description in 2000. And publicly available information demonstrates that there *is no* residence meeting this description within 20 minutes of Radio City that is located both in New York City and within the boundaries of the Southern District of New York ("SDNY").

---

[1]    Plaintiff could not have asserted a claim under the ASA as it applies only to adult survivors of sexual assault. *See* C.P.L.R. § 214-j.

For each of these reasons, Plaintiff's claim is due to be dismissed. And because amendment cannot cure these fundamental flaws concerning retroactivity and preemption, dismissal should be with prejudice.

## BACKGROUND[2]

### A.    Factual Background

Plaintiff alleges that on September 7, 2000, when she was 13 years old, a friend drove her to Radio City to attend the VMAs. (FAC ¶ 38.) She claims she remained outside and watched the event on a Jumbotron. (*Id.* ¶ 40.) During the VMAs, she purportedly spoke with numerous limousine drivers, until she stumbled upon one who told her she "fit what Diddy was looking for." (*Id.* ¶ 41.) When the VMAs ended, she claims this person drove her "approximately twenty minutes" to a party hosted by Mr. Combs at a "large white residence with a gated U-shaped driveway." (*Id.* ¶¶ 44, 46.) At the party, she claims to have "recognized [and spoken with] many celebrities." (*Id.* ¶ 46.) Shortly thereafter, Plaintiff contends that she was drugged and sexually assaulted by Mr. Combs. (*Id.* ¶¶ 1, 49–50, 52–57.) She asserts that Mr. Carter—previously unnamed in the complaint—also allegedly assaulted her. (*Id.* ¶ 55.) Following this alleged encounter, Plaintiff purportedly fled the house and continued "running until she reached a gas station." (*Id.* ¶¶ 59-60.) There, she claims she spoke with a female clerk and "called her father … and asked him to pick her up." (*Id.* ¶ 60.) Plaintiff's father purportedly "pick[ed] her up shortly before dawn." (*Id.*)

Not only have many of these factual allegations been shown to be demonstrably false, described *supra* 2, but they cannot prop up a sole claim that is legally deficient. The FAC asserts

---

[2]    As is required under Federal Rule of Civil Procedure 12, Mr. Carter accepts the allegations in the FAC as true solely for purposes of this motion. Mr. Carter reserves his right to contest the validity of these allegations in the future and, indeed, denies them in their entirety.

a single cause of action:  a violation of the GMVPA because Plaintiff was allegedly forced to "engage in a sexual interaction without consent."  (*Id.* ¶ 64.)  Although the FAC asserts in conclusory fashion that a "substantial part of the events or omissions giving rise to the claims occurred in this District," (which includes New York and Bronx Counties as well as several outside of New York City) it does not specify the location of the residence in question.  (*Id*. ¶ 36.)  It does not list the residence's address, identify whether it was located in New York City (and if so, what borough), or even if it was located in New York State (and if so, what County).

Public property records, however, show that Mr. Combs, the host of this purported party, did not then own a residence fitting the FAC's description.  (*See* Exs. 1-4.)  The only home he owned located within the territorial boundaries of New York City was a townhouse on Park Avenue in Manhattan.  (*See* Ex. 1.)  But this townhouse was not a large white residence, was not gated, and did not have a U-shaped driveway.  (*Id.*)

The remainder of the homes Mr. Combs owned at or around this time were not located in New York City.  For example, Mr. Combs owned a home in East Hampton, more than a two-hour-drive and 100 miles from Radio City.  (Ex. 5.)  This home was not gated, did not have a U-shaped driveway, and did not have a gas station within five miles.  (Ex. 2.)  Mr. Combs also owned a home in Saddle River, New Jersey, but he sold it in 1998—two years before the alleged assault. (Ex. 3.)  And the Saddle River home was not gated, did not have a U-shaped driveway, and did not have a gas station within two miles.  (*Id.*)  Finally, Mr. Combs owned a home in Alpine, New Jersey, but he did not purchase it until 2004—four years after the alleged assault.  (Ex. 5.)  The Alpine home was not white and did not have a gas station within two miles.  (*Id.*)

Publicly available information also shows that it is implausible that Plaintiff would have been able to reach a neighborhood—both within New York City and SDNY—housing a residence

that matches the FAC's description.  A Google Maps search reveals that, on a Thursday in early September with moderate traffic, between 11 P.M. and midnight, it would take approximately seven to sixteen minutes just to get onto the West Side Highway from Radio City.  (Ex. 6.)  According to Plaintiff's own allegations (FAC ¶ 44), this would leave a mere *thirteen minutes*— at most—to reach the supposed large, white, gated residence with a U-shaped driveway.  In that amount of time, however, it is possible only to reach Highbridge, Mt. Eden, or Morris Heights in the Bronx.  (*Id.*)  A Google Maps aerial view search shows no houses matching Plaintiff's description in any of these neighborhoods.  (Ex. 8.)  Re-routing along the FDR Drive is no more availing for Plaintiff.  Under similar conditions, a drive from Radio City just to the FDR Drive would take seven to fourteen minutes, leaving thirteen minutes—at best—to reach the residence where Plaintiff alleges the assault occurred.  (Ex. 7.)  But again, the options are limited:  that suffices only to reach Mott Haven or the South Bronx, neither of which contain houses matching the FAC's description.  (Ex. 8.)

## B.    Procedural History

On October 20, 2024, Plaintiff filed this action, asserting a violation of the GMVPA against Mr. Combs and his associated businesses.  (*See* Dkt. No. 1.)  Plaintiff amended her complaint on December 8, 2024, adding Mr. Carter as a defendant.  Like its predecessor, the FAC alleges only the GMVPA claim.

The GMVPA is a New York City municipal law enacted on December 19, 2000 that established a civil cause of action for a "crime of violence motivated by gender" against anyone who "commits, directs, enables, participates in, or conspires in the commission of" that act.  N.Y.C. ADMIN. CODE § 10-1104.  The statute defines "crime of violence" as "an act … that would constitute a misdemeanor or felony … as defined in state or federal law."  *Id.* § 10-1103.  It also provides the following relief:   "[c]ompensatory and punitive damages;" "[i]njunctive and

declaratory relief;" and "[a]ttorney's fees and costs." *Id.* § 10-1104(a)-(c).  On its face, the GMVPA contains no provision that might extend it backwards in time so as to reach conduct preceding its enactment.

When the GMVPA was passed, it imposed a seven-year statute of limitations, which was extended to nine years for individuals who could not commence suit at the time of claim accrual due to infancy, injury, or disability.  *Id.* § 10-1105(a) (the "GMV Revival Amendment").  On January 9, 2022, the City Council amended this provision to revive claims, previously time-barred, so long as they were commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022."  *Id.*  As such, the revival window opened on March 1, 2023 and closes on March 1, 2025.  Like the provision of the GMVPA creating a new cause of action, the GMV Revival Amendment contains no provision purporting to extend its reach to conduct that predated its 2022 enactment *or* the 2000 GMVPA.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Facial plausibility" requires well-pled facts that together "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In assessing a claim's plausibility, a Court need not credit "mere conclusory statements," "[t]hreadbare recitals of the elements of a cause of action," or give "effect to legal conclusions couched as factual allegations." *Id.*; *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).  If the allegations have not "nudged [plaintiff's] claims across the line from conceivable to plausible," then the pleading is deficient. *Twombly*, 550 U.S. at 570; *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010).

On a Rule 12 motion, the "Court may take judicial notice of any publicly available documents." *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (judicially noticeable materials covered under Fed. R. Evid. 201). Courts may judicially notice "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

## ARGUMENT

## I.    DISMISSAL IS WARRANTED BECAUSE THE GMVPA DOES NOT APPLY RETROACTIVELY

Plaintiff's sole claim—a violation of the GMVPA—fails as a matter of law because the alleged assault purportedly occurred in September 2000, three months before the statute was enacted. Nothing in its text or legislative history reflects any intent at all to extend the statute's reach to conduct predating its enactment, let alone an unequivocal requirement, which is an essential predicate for overcoming the strong presumption against retroactivity. Giving it that effect now would violate the Due Process and Ex Post Facto Clauses of the Constitution in light of the statute's punitive nature. Dismissal with prejudice is therefore warranted.

It is axiomatic that "[r]etroactivity is not favored in the law." *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 438 (S.D.N.Y. 2016) (Torres, J.) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). The presumption against retroactivity is triggered where a statute "creat[es] a new cause of action" or "substantially increas[es] the monetary liability of a private party." *Landgraf*, 511 U.S. at 283-84; *Regina Metro. Co., LLC v. N.Y.S. Div. of Hous. & Cmty. Renewal*, 35 NY.3d 332, 367-68 (2020) (same); *Aguaiza v. Vantage Props., LLC*, 69 A.D.3d 422, 424 (1st Dep't 2010) (statute that "specifically created a new right of action that did not exist prior

to its enactment … applied prospectively only"). This presumption is "deeply rooted" in the American legal tradition and supported by "[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Regina* 35 NY.3d at 370; *see also Landgraf*, 511 U.S. at 265 ("presumption … embodies a legal doctrine centuries older than our Republic"). Courts therefore will not apply statutes retroactively unless "the language expressly or by necessary implication **requires** it." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998) (emphasis added); *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (2023) (same). That is not the case here.

### A. The GMVPA's Statutory Text Does Not Require Retroactive Application

***Every court*** that has considered this issue in this context has agreed the GMVPA does not apply retroactively. *See Bellino v. Tallarico*, 24-cv-00712, Dkt. No. 28 at 2 (S.D.N.Y. Apr. 26, 2024) (amendment futile because "[GMVPA] was not enacted until … after the alleged crime of violence occurred and ***does not even purport to be retroactive***") (emphasis added); *Louis v. Niederhoffer*, 2023 WL 8777015, *1 (S.D.N.Y. Dec. 19, 2023) (dismissing GMVPA claim for conduct pre-passage because it "does not provide for retroactive or immediate effectiveness"); *Stein v. Rockefeller Univ. Hosp.*, Index No. 1599/2023, Dkt. No. 44 (Sup. Ct. N.Y. Cnty. May 23, 2024) (similar); *Doe v. the Lee Strasberg Theatre & Film Institute*, 2023 WL 8895417, *2 (Sup. Ct. N.Y. Cnty. Dec. 21, 2023) (similar); *JL v. The Rockefeller University*, 2023 WL 3757389, *6 (Sup. Ct. N.Y. Cnty. May 25, 2023) (similar); *Adams v. Jenkins*, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) (dismissing GMVPA claim because it "is not the type of statute that would be given retroactive effect").[3]

---

[3]    The lone decision that had ever applied the GMVPA retroactively—*Cadiz-Jones v. Zambretti*—was confined to special circumstances and swamped by decades of New York Supreme Court and federal trial court decisions that disagreed. *See* 2002 WL 34697795 (Sup. Ct. N.Y. Cnty. Apr. 9, 2002). The *Cadiz-Jones* decision "is carefully tailored to the circumstances

This judicial consensus that the GMVPA does not apply retroactively follows from canons of statutory construction.  A court cannot "read a statute … to apply to conduct occurring before the statute's enactment"—unless the legislature has "clearly spoken" its contrary intent.  *Landgraf*, 511 U.S. at 284; *Jacobus v. Colgate*, 217 N.Y. 235, 240 (1916) ("clear expression of the legislative purpose [necessary] to justify … retroactive application").[4]  This approach serves to "assure[] that [the legislative body] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Regina*, 35 N.Y.3d at 370.  Because the "clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself."  *Ruth v. Elderwood at Amherst*, 209 A.D.3d 1281, 1287 (4th Dep't 2022) (cleaned up) (quoting *Majewski*, 91 N.Y.2d at 583); *Bryant v. Buffalo Exch., Ltd.*, 2024 WL 3675948, *3 (S.D.N.Y. Aug. 6, 2024) (same).  Where a "statute contains no … express command [concerning its proper reach], the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  *Landgraf*, 511 U.S. at 280.

**First**, nothing in the GMVPA's text signals an intent for retroactive application—let alone affords a "clear" expression of such intent.  N.Y.C. Admin. Code § 10-1104; L.L. 73/2000; L.L.

---

presented, involving a … claim brought under the federal VAWA," that was pending when VAWA was struck down.  *Adams*, 2005 WL 6584554, at *1; *see also Niederhoffer*, 2023 WL 8777015, at *2 n.2 (*Cadiz-Jones* "is not instructive" for reason articulated in *Adams*).  Critically, the decision expressly exempted from its holding the issue presented to this Court:  "***the extent to which the [GMVPA] should be applied to claims that were not pending when the VAWA was struck down [in 2000]***."  2002 WL 34697795, at *1 (emphasis added).

[4]    VAWA, the GMVPA's federal inspiration, also did not apply retroactively.  *See e.g. Gross v. Weber*, 186 F.3d 1089, 1091 (8th Cir. 1999).

21/2022.[5]  This District and New York State courts agree on this critical point.  *JL*, 2023 WL 3757389, at *6 ("Neither the text nor legislative history of the GVA suggests … it was intended to apply retroactively."); *see also Niederhoffer*, 2023 WL 8777015, at *2 (same); *Adams*, 2005 WL 6584554 (same).  If anything, the statutory text indicates the opposite—stating it takes effect "immediately," without reference to retroactive application.  L.L. 7/2000; L.L. 7/2000.[6]  *See* N.Y. Stat. Law § 51 (McKinney) ("Where a statute by its terms directs that it is to take effect immediately, it does not have any retroactive operation or effect").  Had the City Council intended the statute to apply retroactively, it would have clearly said so.  *Mojica v. Reno*, 970 F. Supp. 130, 172 (E.D.N.Y. 1997) (when a legislating body "purposely enacts provisions explicitly meant to have retroactive effect, [it] has no trouble finding the words to do so").  Consistent with the presumption against retroactivity, the City Council has used unmistakable language when it intends such an extraordinary result.  *See, e.g.*, L.L. 6/2001 § 2 ("law … ***shall be retroactive*** to … December 1, 2000," despite February 2, 2001 enactment) (emphasis added);  L.L. 126/2022 § 2 ("law… ***is retroactive to*** … July 1, 2022," despite December 29, 2022 enactment) (emphasis added); L.L. 118/2013 § 2 (similar).  Indeed, just 11 days before the GMVPA's enactment, the New York City Council opted expressly for retroactivity when it passed a different law—Local Law 67/2000—stating that it "shall be ***retroactive to and deemed to have been in full force and***

---

[5]   Nor does the text of the GMV Revival Amendment contain any language evincing an express intent for retroactive application.  In any event, the Revival Amendment could not properly speak to the original statute's retroactive effect.  Indeed, its *sole* purpose is to revive otherwise viable claims—i.e., ones accruing after the statute's enactment—that were untimely under the GMVPA's statute of limitations.  *See Stein*, Index No. 1599/2023, Dkt. No. 44 at 3 ("Since the original GMVPA did not revive claims pre-dating its enactment, the [Revival Amendment] clearly does not include these claims to be revived either"); *see also Niederhoffer*, 2023 WL 8777015, at *2 (declining to apply GMVPA retroactively based on GMV Revival Amendment).

[6]    The GMV Revival Amendment contains identical language concerning its "immediate[]" effect.  *See* L.L. 21/2022.

*effect as of November 1, 2000*.” L.L. 67/2000 § 2 (emphasis added). Tellingly, no such language appears in the GMVPA's text.

***Second***, the GMVPA squarely triggers the presumption against retroactivity. As the Supreme Court and New York Court of Appeals have held, the presumption is triggered, where a statute “create[es] a new cause of action” or “substantially increase[es] the monetary liability of a private party.” *Landgraf*, 511 U.S. at 283; *Regina*, 35 N.Y.3d at 367 (same). Both criteria are met here. The GMVPA “creates a new substantive cause of action.” *Adams*, 2005 WL 6584554 at *1; *see also* N.Y.C. ADMIN. CODE § 10-1102 (“victims of gender-motivated violence ***should have a private right of action*** against perpetrators of offenses committed against them under the administrative code”) (emphasis added). And it expands the remedies available to survivors of gender-motivated violence by, among other things, “substantially increas[ing] the monetary liability” of alleged violators. *Landgraf*, 511 U.S. at 284; *Regina*, 35 N.Y.3d at 368 (same); *see also* N.Y.C. ADMIN. CODE § 10-1102 (statute provides “officially sanctioned and legitimate cause of action for seeking redress for injuries resulting from gender-motivated violence”). The Committee Report described it as “enhanc[ing] the relief” available by allowing previously unavailable “claims for compensatory and punitive damages, injunctive and declaratory relief, [and] attorney[’]s fees and costs.” (Ex. 21 (Nov. 30, 2000 Committee Report) at 3.)

The absence of statutory text clearly evincing a legislative intent for retroactivity should itself end the inquiry. *Boelter*, 192 F. Supp. 3d at 440 (Torres, J.) (“legislative interpretation begins with the plain text of the statute and, where the text is unambiguous, also ends there”) (quoting *Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 77 (2d Cir. 2014)). Heeding the presumption necessarily leaves the statute confined to its “immediate”—different from retrospective—application.

### B.      The GMVPA's Legislative History Does Not Support Retroactive Application

Although the Court need not consult the GMVPA's legislative history in the face of unambiguous statutory text, the history does not point in a direction different from the text.  *Id.* (legislative history "should only be considered when construing statutory text that is by itself unclear") (Torres, J.).    Retroactivity is ***never*** mentioned in the GMVPA—or its Revival Amendment's—legislative history.  (*See*, e.g., Ex. 21 (Nov. 30, 2000 Committee Report); Ex. 24 (Nov. 30, 2000 Hearing Transcript); Ex. 22 (Dec. 5, 2000 Hearing Transcript); Ex. 23 (Dec. 8, 2021 Committee Report).  It cannot be read into the legislative history now.  *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (law did not apply retroactively where "neither the text nor the legislative history mentions retroactivity"); *June-Il Kim v. SUK Inc.*, 2014 WL 842646, *6 n.4 (S.D.N.Y. Mar. 4, 2014) (same).

The GMVPA's general purpose of filling "the void left by the Supreme Court's decision" in *United States v. Morrison*, 529 U.S. 598 (2000) striking down VAWA, does not shine light on the specific, instant question of temporal scope. The GMVPA fulfills that basic purpose of establishing a cause of action to replace VAWA, but such a purpose "does not supply sufficient evidence of a clear [legislative] intent to overcome the presumption against statutory retroactivity." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994).  As the Supreme Court has explained, "[e]ven when Congress intends to supersede a rule of law embodied in one of our decisions … its intent to reach conduct preceding the 'corrective' amendment must clearly appear" before the statute can be retroactively applied.  *Id.*; *see Boss v. Bd. of Educ., Union Free Sch. Dist. No. 6 (Hauppauge)*, 798 F. Supp. 116, 119 (E.D.N.Y. 1992) (clear retroactive intent "cannot be derived 'solely from the circumstance that Congress acted to amend existing law in response to a Supreme Court opinion'").

### C.    Retroactive Application Would Contravene Due Process And Ex Post Facto Clause Protections

Construing the statute to apply retroactively would not only give it an effect the legislature did not intend, but would contravene protections under the Due Process and Ex Post Facto Clauses of the Constitution.  At minimum, reading retroactive effect into a statute that is silent on the question would raise grave constitutional concerns, which are to be avoided.  *See Golb v. N.Y.S. Atty. Gen.*, 870 F.3d 89, 103 (2d Cir. 2017) ("if an otherwise acceptable construction of a statute would raise serious constitutional problems, and [] an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems."); *Natural Resources Defense Council, Inc. U.S. Dep't of the Interior*, 478 F. Supp. 3d 469, 484-85 (S.D.N.Y. 2020) (noting that under one "version[] of constitutional avoidance … [courts should] constru[e] ambiguous statutes to 'avoid the need even to address serious questions about their constitutionality"); *U.S. v. Heicklen*, 858 F. Supp. 2d 256, 270 (S.D.N.Y. 2012) ("statute should be construed narrowly if the statute, construed broadly, would potentially violate the Constitution").  Constitutional considerations thus further fortify the consensus view that the GMVPA does not apply retroactively.

"The Due Process Clause … protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's *prospective* application under the Clause 'may not suffice' to warrant its *retroactive* application." *Landgraf*, 511 U.S. at 266 (emphasis added).  And "[t]he *Ex Post Facto* Clause prohibits the enactment of laws that either impose punishment for acts not punishable at the time they were committed or increase punishment over that previously prescribed." *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 971-72 (2d Cir. 1985).  While this prohibition typically "applies to criminal statutes, it may also be applied in civil cases where the civil disabilities disguise criminal

14

penalties." *Id.*  Here, although the GMVPA creates a private right of action, it provides relief for conduct that is criminal in nature and authorizes punitive damages.  N.Y.C. ADMIN. CODE § 10-1104 ("[c]ompensatory and punitive damages" available).  In these respects, the GMVPA permits relief akin to criminal sanctions.  Retroactive application would run afoul of constitutional protections.  *Landgraf*, 511 U.S. at 281 (subsection of Title VII permitting recovery of "punitive" or "exemplary damages" for discrimination "with malice or … reckless indifference … share[s] key characteristics of criminal sanctions"); *De Veau v. Braisted*, 363 U.S. 144, 160 (1960) ("The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts."); *Louis Vuitton*, 765 F.2d at 972 ("new punitive treble damages provision, if applied retroactively, would present a potential *ex post facto* problem" and "might also implicate the Due Process Clause of the Fifth Amendment").  These constitutional considerations afford all the more reason why the GMVPA cannot—and certainly should not—be read as retroactively transforming the legal import of conduct that preceded its enactment.

*  *  *

In short, there is *no* evidence that New York City's legislature intended the GMVPA to apply retroactively—let alone a clear expression of that intent.  The Court should not extend the statute's reach to create a cause of action for conduct that, as alleged by Plaintiff, would have occurred three months before it was passed.  Given that Plaintiff's sole cause of action is founded upon the GMVPA, any amendment would be futile and dismissal with prejudice is warranted.  *See e.g. Bellino v. Tallarico*, 24-cv-00712, Dkt. No. 28 at 2 (S.D.N.Y. Apr. 26, 2024) (amendment

futile because "[GMVPA] … does not even purport to be retroactive"); *see also supra* 9 (collecting cases dismissing GMVPA claims with prejudice).[7]

## II.    DISMISSAL IS PROPER BECAUSE THE GMVPA IS PREEMPTED BY THE CVA AND ASA'S REVIVAL PERIODS, RENDERING THE CLAIM UNTIMELY

Plaintiff attempts to bring her GMVPA claim more than two decades after the alleged events occurred under the statute's Revival Amendment.  But the regulatory scheme set up by the CVA and ASA[8] occupies the entire field of legislation for civil claims derived from state penal law covering sexual assault, including the revival of such claims.  And both State statutes' revival periods (closing in August 2021 and November 2023, respectively) conflict with that of the GMVPA, preempting its application.  Although Plaintiff's claim would have been timely if asserted under the CVA at any point before August 2021, she did not bring a claim until 2024.  By then it was time-barred.[9]

The doctrine of preemption places a "fundamental limitation" on a municipality's authority, pursuant to the so-called "home rule provision" of New York's Constitution, to legislate in certain fields that touch on matters of state concern.  *See* N.Y. CONST. ART. IX § 2(c)(10); *see also e.g.*, *Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018) (doctrine is "fundamental limitation on home rule powers"); *N.Y.S. Club Ass'n, Inc. v. City of New York*, 69

---

[7] Even assuming the statute were designed to apply retroactively—it is not—Plaintiff's claim would fail as wholly meritless, as the majority of the key facts going to the core of her GMVPA claim have already been refuted or called into serious question. (*See* Dkt. Nos. 61, 81.)

[8] Though Plaintiff could not avail herself of the ASA because she was a minor at the relevant time, its consideration in conjunction with the CVA underscores the state legislature's intent to occupy this field. *See e.g.*, *Parker v. Alexander*, 2025 WL 268436, *2-3 (S.D.N.Y. Jan. 22, 2025).

[9] This Circuit regularly grants dismissal if "dates in [the] complaint show that an action is barred by a statute of limitations." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see, e.g.*, *Meimaris v. Royce*, 2021 WL 5170725, *7 (2d Cir. Nov. 8, 2021) (limitations "can be decided on a Rule 12(b)(6) motion 'if the defense appears on the face of the complaint."); *Ackerman*, 2012 WL 407503, at *2 (dismissing claim as time-barred).

N.Y.2d 211, 217 (1987) (preemption places "firm restriction[]" on local governments), *aff'd*, 487 U.S. 1 (1988). State law may preempt local law by field or conflict preemption. *People v. Torres*, 37 N.Y.3d 256, 265 (2021). "Field preemption prohibits a local government from legislating in a field or area of the law where the 'legislature has assumed full regulatory responsibility.'" *Id.* (internal citation omitted); *see also New York Bankers Ass'n, Inc. v. City of New York*, 119 F. Supp. 3d 158, 183 (S.D.N.Y. 2015) (similar). "Conflict preemption prohibits a local government from adopting a law that is 'inconsistent with' state law." *Torres*, 37 N.Y.3d at 265. Importantly, the State's intent to preempt local law "need not be express." *N.Y.S. Club Ass'n*, 69 N.Y.2d at 217; *see also DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001). If "the direct consequences of a local ordinance" are inconsistent with state law, then state law must prevail. *Lansdown Ent. Corp. v. N.Y.C. Dep't of Consumer Affs.*, 74 N.Y.2d 761, 764 (1989). Here, both field and conflict preemption bar this action.

### A. New York State Law Comprises The Entire Field Of Revival For Civil Sexual Assault Regulation

Field preemption applies where, as here, a state legislature has "enacted a comprehensive and detailed regulatory scheme in a particular area," evincing an intent to occupy a field. *N.Y.S. Club Ass'n*, 69 N.Y.2d at 217; *Parker v. Alexander*, 2025 WL 268436, *2 (S.D.N.Y. Jan. 22, 2025). Such intent "preclude[s municipalities] from legislating on the same subject matter unless [they] ha[ve] received clear and explicit authority to the contrary." *DJL*, 96 N.Y.2d 91, 95 (2001); *see also Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377 (1989) ("Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest.").

In enacting the CVA and the ASA, the state legislature intended to occupy the field of revival of civil claims for sexual assault.  Both statutes contain the following, identical language, describing their reach:

> ***every*** civil claim or cause of action against any party … as a result of conduct which would constitute a sexual offense [under N.Y. Penal Code § 130 and certain other specified code provisions] … which is barred as of the effective date of this section because the applicable period of limitation has expired … is hereby revived…."

C.P.L.R. § 214-g (emphasis added); C.P.L.R. § 214-j.  They also specifically direct that the revival period will apply "[n]otwithstanding ***any provision of law*** which imposes a period of limitation ***to the contrary***."  *Id.* (emphasis added).  The statutes differ in only two respects:  (1) the class of plaintiffs to which they apply—the CVA, to child victims and the ASA, to adult victims; and (2) their revival windows—August 14, 2019 through August 14, 2021,[10] for the CVA and November 14, 2022 through November 14, 2023, for the ASA.

Judge Kaplan's recent decision in *Parker* is instructive.  There, the Court grappled with the precise issue presented here—whether the GMVPA was preempted by the CVA and the ASA. 2025 WL 268436, at *2-5.[11]  Concluding that it was, Judge Kaplan analyzed the statutes' combined import and held that, together, they encompasses "a comprehensive and detailed regulatory scheme."  *Id.* at *2.[12]  The Court found the statutes comprehensive because they collectively "apply

---

[10]    In 2019, the CVA created a revival window of one year that was amended in 2020, extending it for an additional year.  *See Parker*, 2025 WL 268436, at *2.

[11]    The Court's analysis focused primarily on the preemption of the GMVPA by the ASA, as the plaintiff was an adult at the time of the alleged assault, but recognized it was appropriate to account for both the CVA and ASA as signaling the legislature's overall intent.  *Parker*, 2025 WL 268436, at *2, 4.

[12]    The CVA was also specifically enacted as part of a larger regulatory overhaul of state statutes of limitations applicable to child sexual assault and sexual abuse claims, further underscoring its comprehensive nature.  *Chwick v. Mulvey*, 81 A.D.3d 161, 171 (2d Dep't 2010) ("complete and detailed nature of the State scheme" is strong "evidence of the intent to pre-empt"). Indeed, in addition to passing the CVA, the State also: (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18 (*see* N.Y. CRIM. P. LAW

to all civil claims by child and adult victims for personal injuries arising from conduct constituting sexual offenses defined by Article 130 of the New York Penal Law," and specify broad application "*notwithstanding*" any contrary limitations period.  *Id.* at *2-3.  Judge Kaplan also concluded that the statutes were detailed, as they prescribed specific and limited time frames under which otherwise stale claims would be revived.  *Id.*  All told, the Court held the statutes preempt "local laws like the [GMVPA] to the extent they purport to revive the same category of claims."  *Id.*

The CVA and GMVPA purport to "revive the same category of claims."  The GMVPA applies to "crime[s] of violence motivated by gender," including "acts that would constitute a misdemeanor or felony against the person as defined in state [] law."  N.Y.C. ADMIN. CODE § 10-1103.  The CVA applies to claims concerning conduct that would constitute a crime under Article 130 of New York's Penal Law[13] committed against a child.  C.P.L.R. § 214-g.  Plaintiff alleges that the conduct giving rise to her GMVPA claim is child rape (FAC ¶ 54-56), which constitutes a predicate sexual offense under Article 130.  *See e.g.*, N.Y. PENAL LAW § 130.30 (defining rape in the second degree as vaginal or oral "sexual contact with another person less than fifteen years old").  Because Plaintiff's allegations are based on Article 130 offenses, her GMVPA "claims are within the scope of the CVA."  *Doe v. Gonzalez*, 2023 WL 5979182, *1 n.1 (E.D.N.Y. Aug. 4, 2023) (GMVPA claim within CVA's scope where allegations plaintiff was "[sexually assaulted] … when she was a minor"), *report and recommendation adopted in part*, 2023 WL 6211023 (Sept. 25, 2023) (emphasis added); *see also Parker*, 2025 WL 268436, at *5 (allegations "giving rise to

---

§ 30.10(3)(f)); (2) extended the time in which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years old (*see* C.P.L.R. § 208(b)); (3) instructed the judiciary to promulgate rules for the timely adjudication of these revived claims (*see* N.Y. JUDICIARY LAW § 219-d); and (4) made numerous related changes.  N.Y. LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440).

[13]    Article 130 of New York State's Penal Law defines various "Sex Offenses" against both adults and minors, including rape.  N.Y. PENAL LAW § 130.00 *et seq*.

liability under the [GMVPA]" covered by ASA and CVA).  It follows that the GMVPA must yield to the state legislature's intent to "assume full regulatory responsibility."  *Police Benevolent Ass'n*, 40 N.Y.3d at 423; *People v. De Jesus*, 54 N.Y.2d 465, 468 (1981) (ultimate "fount of the [legislative] power" for municipalities is "sovereign State").  Field preemption applies.  *See Parker*, 2025 WL 268436, at *2 (GMVPA field preempted by CVA and ASA); *Bellino v. Tallarico*, 2024 WL 13440705, *1 (S.D.N.Y. Feb. 21, 2024) (same).

### B.    The GMVPA's Revival Period Conflicts With That Of The CVA And ASA

Conflict preemption precludes "the City Council [from] exercise[ing] its police power to adopt a law ... which is inconsistent with a state statute."  *See N.Y.C. Health & Hosps. Corp. v. Council of City of New York*, 303 A.D.2d 69, 74 (1st Dep't 2003); *Nat'l Ass'n of Tobacco Outlets, Inc. v. City of New York*, 27 F. Supp. 3d 415, 427 (S.D.N.Y. 2014) (same); *Patrolmen's Benev. Ass'n of City of New York, Inc. v. City of New York*, 142 A.D.3d 53, 58 (1st Dep't 2016) (municipalities accorded broad police powers, "provided [they] … adopt[] laws … []consistent with the Constitution or state statutes").  The doctrine applies where the state law "permit[s] the conduct the local law prohibits or provide[s] 'some other indication that deviation from state law is prohibited.'"  *Torres*, 37 N.Y.3d at 268.  Such a conflict arises here.

The GMV's Revival Amendment contains language inconsistent with the CVA and ASA.  Its introductory clause states that the Revival Amendment applies "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary."  N.Y.C. ADMIN. CODE § 10-1105(a).  This provision is ***identical*** to and therefore at odds with the same provision in the CVA and ASA.  *See* C.P.L.R. § 214-g; C.P.L.R. § 214-j.  Had the State intended to carve out certain claims from the revival periods of either statute—like a GMVPA claim—it would have said so.  *Parker*, 2025 WL 268436, at *2 ("legislature could have stated that the ASA applies notwithstanding any *more restrictive* limitations period," but did not).  Allowing the City Council

20

to disregard the revival period set by the legislature would undercut the State's authority and subordinate police powers that deserve supremacy.

The preemptive force of the State's judgment is particularly evident here. Beyond merely setting set default windows for initiating claims, the state statutes take the extraordinary step of reviving otherwise stale claims. As the New York Court of appeals has recognized, "[r]evival is an extreme exercise of legislative power … [and] [u]ncertainties [with respect to revival must be] resolved against consequences so drastic." *Regina*, 35 N.Y.3d at 371; *see also Anonymous v. Castagnola*, 210 A.D.3d 940, 942 (2d Dep't 2022) (laws "that revive causes of action are extreme examples of legislative power and are narrowly construed."). State-wide uniformity is especially imperative when limiting the revival of time-barred claims—a delicate exercise that requires balancing victims' ability to seek justice alongside defendants' due process rights. The state legislature created a tailored window for revival of civil claims arising from alleged violations of enumerated state sex crimes: across all 63 of New York's municipalities, the deadline to file a lawsuit alleging such claims was November 2023 for adult survivors and August 2021 for child survivors. Thereafter, it was not within the prerogatives of New York City to strike a conflicting balance via the GMVPA.

\* \* \*

The CVA and ASA have already revived time-barred claims like Plaintiff's. The GMVPA cannot act as a *de facto* extension of those statutes' revival windows to resurrect *again* a claim that has already expired. Because Plaintiff did not bring her claim before August 2021 when the CVA revival period closed, it is time-barred. This outcome vindicates the policy considerations underpinning statutes of limitations, particularly because Plaintiff seeks to stretch back in time over ***24+ years***, implicating all the problems associated with stale claims, including lost evidence,

faded memories, and of the inability to identify and locate witnesses. *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (statutes of limitations protect against these circumstances). These concerns are particularly apparent here, because Plaintiff admits to not having a ***single*** corroborating witness over the last 24 years (including her father), and has already admitted to making serious factual errors, including with respect to how she purportedly watched the VMAs, whom she spoke with outside Radio City and at the alleged party, how long it took to get to the party, and even how she got home. (*See generally* Dkt. No. 61 (demonstrating that she did not watch VMAs on a Jumbotron, could not have spoken to limousine drivers *outside* of Radio City, and that her father denied recalling picking her up, among others).) Dismissal would therefore comport with law and justice alike.

## III.    DISMISSAL IS PROPER BECAUSE PLAINTIFF FAILED TO PLAUSIBLY PLEAD THAT THE VIOLATIVE CONDUCT OCCURRED IN NEW YORK CITY

Should the Court apply the GMVPA retroactively *and* decide that it is not preempted by the CVA and ASA, the FAC should still be dismissed because it does not allege that the unlawful conduct—*i.e.*, the purported assault—occurred in New York City.

To prevail, Plaintiff must plead and prove that the relevant conduct occurred in New York City because its Code does not apply extraterritorially. *Beverley v. 1115 Health Bens. Fund*, 420 F. Supp. 2d 47, 56 n.2 (E.D.N.Y. 2005) ("Code [] 'applies only to *acts* occurring within the boundaries of New York City.'") (emphasis in original); *Duffy v. Drake Beam Morin*, 1998 WL 252063, *11 (S.D.N.Y. May 19, 1998) (same); *Gottwald v. Sebert*, 2016 WL 1365969, *9 (Sup. Ct. N.Y. Cnty. Apr. 6, 2016) ("jurisdiction and powers of the City are limited to its geographical borders"). That requires the Plaintiff to allege, concretely and plausibly, that the conduct prohibited by the GMVPA—i.e., an act of gender-motivated violence—"occur[ed] in New York City." *Bensky v. Indyke*, 2024 WL 3676819, *12 (S.D.N.Y. Aug. 5, 2024); *see also Salvatore v.*

*KLM Royal Dutch Airlines*, 1999 WL 796172, *16 (S.D.N.Y. Sept. 30, 1999) (same); *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 455 (S.D.N.Y. 2024) (plaintiff's burden to establish "requisite nexus to New York City"). Doing so through mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." *Melvin v. Cnty. of Westchester*, 2016 WL 1254394, *3 (S.D.N.Y. Mar. 29, 2016). The FAC's allegations fall short.

*First*, Plaintiff fails to adequately plead the requisite nexus to New York City. The conduct Plaintiff purports gives rise to her GMVPA claim is "forced sexual contact." (FAC ¶ 63).[14] And she asserts that she was driven "approximately twenty-minutes" from Radio City to what she described as "a large white residence with a gated U-shaped driveway." (*Id.* ¶¶ 41–44.) That residence is where the alleged assault occurred. (*Id.* ¶¶ 53–57.) But the FAC does not even allege where the residence was located, much less that it was within the territorial boundaries of New York City. *See e.g.*, *Doe*, 2023 WL 6259390, at *12 (dismissing GMVPA claim absent "allegations connecting … to the State of New York or New York City"); *Gottwald*, 2016 WL 1365969, at *9 (dismissing GMVPA claim because complaint "*does not allege any violent acts that occurred in New York City*") (emphasis added); *c.f. Bensky*, 2024 WL 3676819, at *12 (GMVPA surviving dismissal because allegations of "abuse[] in Manhattan" and that 'the majority of … abuse … occurred in New York City"). The FAC's assertion that "a substantial part of the events or omissions giving rise to the claims occurred in this District," does not change the

---

[14] Any argument that the nexus is properly pled because Plaintiff's conversation with the unidentified limousine driver constituted part of the "offense" would be unavailing. Plaintiff's own FAC pleads that the alleged "crime of violence"—the basis for the claim—is "forc[ed] sexual conduct," (FAC ¶ 63), which took place outside of New York City and cannot reasonably constitute the "whole or substantial part" of the conduct giving rise to the claim. *Salvatore v. KLM Royal Dutch Airlines*, 1999 WL 796172, *17 (S.D.N.Y. Sept. 30, 1999) (Plaintiff must show "whole or substantial part of the discrimination occurred in New York City"). In any event, Plaintiff did not allege that Mr. Carter had any connection to or relationship with this individual or that he participated in or had knowledge of this conversation.

calculus. (*Id.* ¶ 36.) That allegation is conclusory, does not specifically allege that the *assault* took place in New York City (or even in SDNY), and concerns venue only. In any event, the boundaries of SDNY extend beyond those of New York City.[15]

**Second**, compounding on the factual allegations already proven demonstrably false, the alleged assault could not have plausibly occurred in New York City. Of the counties included in SDNY, only New York and Bronx County exist within New York City's geographical territory. The residence where the alleged assault occurred *must* be located in one of these two boroughs in order for the claim to proceed. But public records confirm that no residence meeting Plaintiff's description—i.e., "large white residence," "gated," and "with a U-shaped driveway" within "twenty minutes" of Radio City—exists.

As an initial matter, public property records show Mr. Combs, the host of this purported party, did not then own a home matching this description.[16] As discussed *supra* 5, Mr. Combs owned only one home within New York City's territorial boundaries, a Manhattan townhouse. (Ex. 1.) But it does not remotely fit the picture the FAC paints—not a large residence, not gated, no U-shaped driveway. (*Id.*) The other homes Mr. Combs owned do not meet the FAC's description: the only one he owned in 2000 was in East Hampton, **106 miles** away from Radio City, an over two hour drive (Exs. 2, 5); and the remaining two were in New Jersey, but neither

---

[15]    United States District Court, Southern District of New York, nysd.uscourts.gov (last visited Jan. 7, 2025) (SDNY includes "counties of New York, Bronx, Westchester, Rockland, Putnam, Orange, Dutchess, and Sullivan").

[16]    Federal courts regularly take judicial notice of public property records in adjudicating motions to dismiss. *See, e.g.*, *Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 628 (S.D.N.Y. 2022) ("Court … takes judicial notice of public documents relating to the Property"); *Cummins* v. *Select Portfolio Servicing, Inc.*, 2016 WL 4766237, *1 n.2 (E.D.N.Y. Sept. 13, 2016) (accessing and taking judicial notice of publicly available ACRIS records).

was owned in 2000.  (Ex. 3-4.)  The purported assault *could not* have plausibly occurred at any of his homes.

Plaintiff's claim cannot proceed unless it occurred in a residence—not owned by Mr. Combs[17]—that meets the physical description provided in the FAC *and* is located within twenty minutes of Radio City.  But no such house exists.  Public information establishes that whether the limousine left Manhattan via the West Side Highway or the FDR Drive, there was insufficient time to arrive at a neighborhood in which a residence as Plaintiff describes would be located.  As described *supra* 6, it would have taken a minimum of seven minutes just to reach the West Side Highway or the FDR Drive from Radio City.  (Exs. 6-7.)[18][19]  Either way, that would leave only thirteen minutes to arrive at the location where the purported assault occurred.  But that amount of time suffices only to reach the following neighborhoods in the Bronx:  Highbridge, Mt. Eden, Morris Heights, Mott Haven, and the South Bronx.  (Ex. 8.)  A large white residence with a gated U-shaped driveway simply does not exist in any of these neighborhoods.  (*Id.*)[20]

In sum, assuming the allegations describing the appearance of the residence are true, Plaintiff's vague allegation as to its location is necessarily false.  Dismissal is appropriate for this reason, too.

---

[17]  It is unlikely that Plaintiff was invited to and attended a so-called "afterparty" that was hosted by Mr. Combs, but took place in a home that he did not own.

[18]  Distances between locations and public maps can be judicially noticed on a motion to dismiss.  *Kuhl v. U.S. Bank Tr. Nat'l Assoc*, 2020 WL 5775092, *1 n.1 (S.D.N.Y. Sept. 28, 2020) (taking judicial notice of Google Maps); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 691–92 (S.D.N.Y. 2011) ("judicial notice of village and town maps" proper).

[19]  All drive times reflect conservative estimates.  Assuming Plaintiff's allegations are true, she would almost certainly have encountered substantial traffic leaving the VMAs, as it was a large event that took place on a Thursday evening in midtown Manhattan.

[20]  Nor is it located in Manhattan.  On review of public records, only 13 addresses exist in Manhattan with a "u-shaped driveway," the most distinctive feature in the FAC.  One of those is Gracie Mansion, and the majority of the remainder are multi-family homes or apartment buildings, and none of these addresses have "gated" driveways.  (*See* Exs. 9 - 20.)

## **CONCLUSION**

For the foregoing reasons, Mr. Carter respectfully requests that the Court grant his motion

and dismiss the First Amended Complaint, with prejudice.


Dated:  February 4, 2025                    QUINN EMANUEL URQUHART &
       New York, New York                    SULLIVAN, LLP

                         By:

                         Alex Spiro

                         51 Madison Avenue, 22nd Floor
                         New York, New York 10010
                         Telephone: (212) 849-7000
                         alexspiro@quinnemanuel.com

                         *Attorney for Defendant Shawn Carter*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(D) of Judge Analisa Torres' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 8,722 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(D) of Judge Torres' Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 4th day of February, 2025 in New York, New York.


   */s/ Alex Spiro*
   Alex Spiro

27